**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANAY E. GARRICK, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | CASE NO. _____ |
| v. | ) | |
| | ) | Jury Trial Demanded |
| MOODY BIBLE INSTITUTE and | ) | |
| BOARD OF TRUSTEES FOR THE | ) | |
| MOODY BIBLE INSTITUTE, | ) | |
| | ) | |
| *Defendants.* | ) | |

**COMPLAINT**

The plaintiff, Janay E. Garrick, brings this Complaint against defendants Moody Bible Institute and the Board of Trustees for the Moody Bible Institute for retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, retaliatory discharge, and breach of contract.

**THE PARTIES**

1.     Defendant Moody Bible Institute is a post-secondary religious educational institution that offers both undergraduate and graduate courses of study. It is a not-for-profit corporation incorporated in the state of Illinois.

2.     Defendant Board of Trustees for the Moody Bible Institute is the governing board of Moody Bible Institute.

3.     Collectively, the defendants are referred to as "MBI" or "Moody."

4.     MBI's primary campus is located in downtown Chicago, IL.

5.     MBI has accepted federal financial aid funds pursuant to Title IV of the Higher Education Act since at least 2012.

6.     As of the date of this filing, MBI has not submitted a request to the Office of Civil Rights of the U.S. Department of Education for a religious exemption to the requirements of Title IX.

7.     Plaintiff Janay E. Garrick was employed by MBI at its Chicago campus as an Instructor of Communications from December 1, 2014 until December 31, 2017.

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction over the plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

9.     This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

11.     The Northern District of Illinois has personal jurisdiction over the defendants because they reside in and/or and maintain offices in this District and/or do business in Illinois.

## FACTS SUPPORTING THE PLAINTIFF'S CLAIMS

12.     Ms. Garrick is an ordained minister. She has a Master's Degree in Cross-Cultural Studies and a Bachelor's Degree in Creative Writing and Speech Communications, and she is working on a second Master's Degree in Creative Nonfiction. Ms. Garrick has worked in the field of communications for 15 years.

13.     Ms. Garrick was hired by MBI on December 1, 2014 as an Instructor of Communications in MBI's Communications Program, which is one of two programs in its Music and Media Arts Division.

14. Ms. Garrick informed MBI during the interview process that she was an "egalitarian Christian" and believed in gender equality in the ministry. MBI hired her with full knowledge of her beliefs and renewed her contract twice with this knowledge.

15. Ms. Garrick's direct supervisor was Brian Kammerzelt, the Communications Program Head. Terry Strandt, Chair of the Music and Media Arts Division, was responsible for her performance reviews. Ms. Garrick also reported to Larry Davidhizar, Vice President and Associate Provost of Faculty. Other MBI administrators at the time included James Spencer, Vice President and Dean; Junias Venugopal, Provost; Debbie Zelinski, Vice President of Human Resources; Clive Craigen, Faculty Advocate; Tim Arens, Dean of Student Life; and Bryan O'Neal, Dean of the Undergraduate Faculty.

### Campus-Wide Hostility Toward Women

16. Ms. Garrick quickly learned that MBI both tolerated and cultivated an environment that was hostile to female faculty and students.

17. For example, in October 2014, shortly before her campus interview, Ms. Garrick was told by Mr. Davidhizar to remove the reference to being an ordained minister from her resume. Later, it became clear that MBI believed that the office of pastor is reserved exclusively for male candidates and did not want her to represent herself as an ordained minister.

18. Ms. Garrick was disadvantaged by this demand. When she was hired, she was not told by administration that ordained ministers could claim a tax deduction for their housing costs. After a male professor informed her of this, Ms. Garrick took steps to file her ordination license with MBI in order to claim the deduction, but she lost the opportunity to take the deduction for a full year.

19.     Female instructors were confined to certain programs, like the one in which Ms. Garrick was hired, while the more prestigious Bible and Theology Programs were staffed exclusively by men.

20.     In late 2015, Ms. Garrick was asked to assist in forming a committee to address women's concerns on campus, which she did. The group, called Respect for Women Personally and Ministerially, was viewed with suspicion and hostility from the beginning. Ms. Garrick was explicitly told by the administration that any changes resulting from the committee's work should be "small and incremental."

21.     The faculty workroom that Ms. Garrick used was otherwise all-male, and her male colleagues treated her with antagonism. For example, they ignored her when she spoke to them, left the room abruptly when she entered, and openly ridiculed her. When Ms. Garrick tried to suggest solutions to the problem, she was told by MBI administration to simply avoid the workroom and to get her own printer so that she could work in her office.

### Advocacy on Behalf of Students

22.     In February 2015, Ms. Garrick was approached by a lesbian student who was struggling with MBI's hostility toward her sexual orientation. Ms. Garrick brought the student's concerns to Dean Tim Arens. His response was to ask what she said and did in response to the student and to warn her that MBI had "community living standards." The female student was later expelled from MBI.

23.     In October 2015, a female student informed Ms. Garrick that she wanted to enter the Pastoral Ministry program but that it was closed to women. Ms. Garrick was shocked and began to investigate MBI's stance on barring women from access to its programs.

24.     In January 2016, another female student came to Ms. Garrick for help with the same problem. The student wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender.

25.     Ms. Garrick discovered that MBI's website at the time stated that the program was only open to male students. She contacted her own faculty mentor and the head of the program to ask about the exclusion of women, and they confirmed that it was true.

26.     MBI was accepting federal financial aid funds during this time and, on information and belief, was reporting to the Department of Education that it met all the relevant criteria, including the prohibition against discriminating on the basis of sex.

27.     Ms. Garrick helped this student lodge the first Title IX complaint ever brought at MBI.

28.     On February 17, 2016, the first meeting of the Respect for Women Personally and Ministerially group was held. Ms. Garrick was rebuked when she told the participants that she was assisting a student who had been barred from an MBI program because of her sex. Immediately after the meeting, Ms. Garrick's faculty mentor called her into a closed-door meeting and attacked her further, asking "how can you have any integrity?"

29.     After Ms. Garrick brought her concerns to several other MBI personnel, the second Respect for Women Personally and Ministerially meeting was cancelled.

30.     On February 23, 2016, Ms. Garrick met with Mr. Davidhizar and Bryan O'Neal about the student's complaint and about the hostility Ms. Garrick herself was facing. Rather than seeking solutions to the concerns raised by Ms. Garrick, the administrators suggested she might not be able to continue in the faculty and told her she should voluntarily leave MBI.

31. Ms. Garrick decided to stay and fight.

32. Throughout the spring of 2016, Ms. Garrick continued to work with the student to advance her Title IX complaint against MBI.

33. At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website explicitly limited the degree program to male students. Then MBI tried to convince the student to take courses in another program, presenting her with false and misleading information about its offerings. Ultimately, despite its attempts to muddy the waters, it became clear that MBI had been discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

34. Despite this admission, MBI denied the student's complaint, stating that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." In its denial letter, MBI purported to have misunderstood the nature of the student's complaint – which was untrue, as Ms. Garrick and the student had made it clear numerous times.

35. With Ms. Garrick's help, the student appealed. In response, professors made disparaging comments to the student such as "don't you know the image of God is male?" and "what makes you think you have the right to preach?"

36. The student and Ms. Garrick continued to push MBI to open the program to all women. As a result, on April 20, 2016, MBI announced that it intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women (though it failed to notify the student herself until mid-May 2016, and even then continued to equivocate about its position).

37.    Even after this decision, MBI continued, and, on information and belief, continues to discourage women from applying to the Pastoral Ministry program. There are currently just three women in a program of approximately 60 students. It is unclear whether MBI has officially opened the program to all women.

38.    Throughout the summer and fall of 2016, Ms. Garrick continued to experience hostility and opposition from MBI's faculty and administration.

39.    Ms. Garrick also assisted a transgender student with her hostile environment concerns, which Ms. Garrick reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

40.    In September 2016, a male theology professor at MBI drafted a proposal that would require all students to sign a statement affirming their belief in and adherence to a biblically orthodox position on human sexuality. Ms. Garrick spoke out at an all-faculty and administration meeting and told a story about a student who came to Ms. Garrick in tears over being told one could not be gay and "saved." She submitted and co-presented (with a male faculty member) a counter-proposal with an inclusive message.

41.    In response, Mr. Davidhizar pulled Ms. Garrick into his office the next day and told her that the speech was "inflammatory rhetoric" and that she was "not a Moody fit." The male faculty member who co-presented the proposal was never the subject of any disciplinary treatment.

*Retaliatory Denial of Promotion*

42.    On November 1, 2016, after two years as an Instructor at MBI, Ms. Garrick submitted a written application for an increase in rank to Assistant Professor.

43.    The position of Instructor is the lowest-paid and lowest-status position at MBI.

44.     To become an Assistant Professor, MBI requires the faculty member to have a Master's Degree or equivalent and a minimum of 12 years of full time experience in a field directly related to his or her primary teaching responsibilities. Once those requirements are met, MBI reviews three sets of criteria to determine whether to issue a promotion to a faculty member: Teaching Performance, Professional/Scholarly Status, and Service. Within each criterion.

45.     Ms. Garrick's background and performance fully qualified her for a promotion to Assistant Professor under all of MBI's requirements. She had a Master's Degree (and began working on a second advanced degree in 2016). She also had 15 years of experience in the Communications field.

46.     During her two years as an Instructor, Ms. Garrick was required to perform work at the level of an Assistant Professor. Among many other duties, she developed and implemented six courses, including upper-level electives; created institution-wide initiatives like the publication of a new art and theology journal; developed an educational plan for ESL students; fulfilled all of her academic and professional duties; and actively participated in her department and the wider institution. Such duties were beyond the scope of the Instructor rank, based on Moody's own written policies.

47.     Nevertheless, MBI denied Ms. Garrick's application, stating that she needed to "improve her fit within the division" – a clear reference to the hostility against Ms. Garrick as a result of her opposition to discrimination at the institution.

48.     MBI's retaliatory denial of Ms. Garrick's promotion application resulted in both a loss of income and the loss of professional development opportunities.

49.     Shortly thereafter, Ms. Garrick received an informal performance review from Mr. Strandt in which he congratulated her on "two years of excellent service" and stated that she was "concise, clear and engaging with the students" during a class he had observed her teaching. Mr. Strandt's glowing review further highlighted the disconnect between Ms. Garrick's excellent performance and MBI's denial of her application for a promotion.

*Retaliatory Discharge*

50.     In early 2017, Ms. Garrick was due to receive her formal two-year performance review. She initially met with Mr. Kammerzelt, who asked her if she wanted to stay at MBI. She responded that she did.

51.     This led to a series of meetings, cancelled meetings, and emails with MBI administrators regarding Ms. Garrick's performance. Mr. Davidhizar told her she had "performance and interpersonal issues," despite a lack of evidence of either. Mr. Kammerzelt told her she had been found to be performing "below standards" by Mr. Strandt, despite his earlier glowing reports. Mr. Kammerzelt also threatened to demote Ms. Garrick to teaching only General Education courses and to shift three of the courses she had developed into the hands of another full Communications professor.

52.     Finally, on March 30, 2017, Ms. Garrick met with Mr. Strandt for a final, formal performance review. He handed her a negative written performance evaluation – the first written criticism of her performance she had ever received at MBI – that was filled with inaccuracies and was not based on direct observations of her work. There was no mention of Ms. Garrick being non-aligned with the gender provisions of MBI's doctrinal statement.

53.     On April 12, 2017, Ms. Garrick met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told her that she did not fit in and that she was not aligned

with MBI's doctrinal statement as it related to gender roles in ministry. Mr. Davidhizar admitted that he heard Ms. Garrick state her egalitarian position during her October 2014 panel interview prior to MBI's decision to hire her.

54. On April 17, 2017, Ms. Garrick was officially terminated. MBI stated that she was required to continue teaching classes and performing her other job duties until the end of that semester, then stay on as a non-teaching faculty member for the Fall 2017 semester. Her last day of pay was December 31, 2017. On April 26, 2017, after Ms. Garrick spoke to students and student reporters about her termination, MBI asked her to leave campus early and to turn in her computer and keys, stating that it would close out the semester for her.

55. Ms. Garrick filed an internal grievance on May 17, 2017 and went through MBI's grievance process in the summer of 2017. In her grievance document, she pointed out that MBI had hired her in 2014, renewed her contract for 2015, and renewed her contract for 2016 – all the while apparently pleased with her performance. It was only after she began advocating for female students who alleged violations of Title IX that MBI began to pressure her to quit, then fired her, purportedly because it had just realized she held an "egalitarian" view of Christianity.

56. In fact, as alleged above, MBI knew from her resume and interviews that Ms. Garrick held an egalitarian view before it even hired her. MBI's decision was pretext for its true motives – discrimination and retaliation.

57. MBI engaged in a variety of tactics to thwart any chance of Ms. Garrick succeeding in the grievance process. In her grievance document, she fully documented the discrimination and retaliation she had been subjected to. She also presented written testimony from 12 female students who reported violations ranging from sexual assault to harassment in the

classroom and on the campus by both faculty members and fellow students. MBI ignored these testimonials and took no action to follow up.

58.     MBI denied Ms. Garrick's grievance on July 24, 2017. After Ms. Garrick's termination, MBI also terminated a female Full Professor and a female Assistant Professor who were members of Ms. Garrick's grievance committee and who had challenged MBI during that process.

### FIRST CLAIM FOR RELIEF

**Retaliation in Violation of Title IX of the
Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.**

59.     The plaintiff realleges each of the paragraphs set forth above.

60.     Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX"), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …."

61.     Title IX also prohibits employment discrimination on the basis of sex at educational institutions receiving federal assistance.

62.     MBI is subject to the requirements of Title IX.

63.     Because Congress enacted Title IX to prevent use of federal dollars to support discriminatory practices, reporting incidents of discrimination is integral to Title IX enforcement.

64.     Accordingly, persons who complain about sex discrimination have protection against retaliation and are provided a private right of action as part of the Title IX enforcement scheme.

65.    Title IX prohibits retaliation against individuals who engage in protected activity, including good faith complaints of sex discrimination, opposing discriminatory practices through internal channels, and voicing concerns to superiors at the educational institution.

66.    Ms. Garrick engaged in activity protected by Title IX, as alleged above.

67.    MBI retaliated against Ms. Garrick because of her protected activity, as alleged above, including, but not limited to, subjecting her to a hostile environment; subjecting her to discriminatory disciplinary action; denying her a promotion; and unlawfully terminating her.

68.    MBI's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

69.    Exemplary damages are warranted to prevent similar unlawful conduct by MBI, which is likely to recur.

70.    The plaintiff was severely damaged by MBI's conduct.

## SECOND CLAIM FOR RELIEF

### Retaliatory Discharge under Illinois Law

71.    The plaintiff realleges each of the paragraphs set forth above.

72.    In Illinois, it is unlawful for an employer to discharge an employee in retaliation for activities if such discharge is a violation of a clear mandate of public policy.

73.    The tort of retaliatory discharge is an exception to the "at will" employment doctrine that otherwise applies to Illinois employees.

74.    The foundation of the tort of retaliatory discharge is the protection of public policy.

75.     Ms. Garrick was terminated by MBI, in whole or in part, in retaliation for assisting MBI students with their complaints of discrimination, advocating on their behalf to the administration, complaining about courses being barred to female students, and reporting incidents of sex discrimination and harassment of both faculty and students to MBI.

76.     It is contrary to Illinois public policy for an educational institution to participate in, perpetuate, condone, cover up, or ignore sex discrimination and retaliation against its students or faculty. It is also against Illinois public policy for an educational institution to bar female students from participating in its courses of study.

77.     MBI's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Garrick's rights.

78.     Exemplary damages are warranted to prevent similar unlawful conduct by MBI, which is likely to recur.

79.     Ms. Garrick was severely damaged by MBI's conduct.

## THIRD CLAIM FOR RELIEF

### Breach of Contract under Illinois Law

80.     The plaintiff realleges each of the paragraphs set forth above.

81.     The terms of Ms. Garrick's employment were governed by a valid and enforceable Faculty Contract, which was entered into by both Ms. Garrick and MBI on a yearly basis. See Exhibit A (2017 Faculty Contract).

82.     The Faculty Contract explicitly incorporates by reference two additional documents: MBI's Faculty Manual and MBI's Employee Information Guide.

83.     The Faculty Manual and Employee Information Guide are promises by MBI to abide by a set of rules that benefit the employee. They were disseminated to Ms. Garrick in the manner of an offer, which she accepted when she entered into the Faculty Contract with MBI.

84.     The Faculty Contract states that "MBI and the faculty member mutually agree that this contract will be binding on both parties except as modified by the mutual consent of the Trustees and/or the President and the faculty member, or unless terminated for cause, in which case the procedures of termination stated in the current Faculty Manual and Employee Information Guide will be followed by both parties." See Exhibit A.

85.     In turn, the Faculty Manual's section designated "Termination" states as follows: "[i]f for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for such serious violations of Institute policy which may result in immediate termination." See Exhibit B (excerpt from Faculty Manual).

86.     On April 18, 2017, MBI informed Ms. Garrick that it had decided not to renew her contract for the next academic year, but that she would continue to be employed until December 31, 2017. She was informed that she was expected to continue teaching her classes until the end of the semester.

87.     Because Ms. Garrick was not terminated "immediately," MBI was contractually obliged to follow the termination provisions set forth in the Faculty Manual by informing her by the last Friday in November prior to a Spring termination.

88.     MBI failed to do so.

89.     MBI therefore breached its contract with Ms. Garrick by failing to notify her by the last Friday in November of the fall semester prior to her last Spring semester of employment, as required by the termination provisions of the Faculty Manual.

90.     MBI cannot contend that Ms. Garrick engaged in a violation of its policy that warranted "immediate termination," as it retained her for several months after its decision not to renew her contract, requiring her to teach classes and otherwise continue to perform her job duties for a period of time.

91.     Under the terms of the Faculty Contract and the termination provisions of the Faculty Manual referenced and incorporated therein, MBI is obligated to pay Ms. Garrick for two additional semesters she is owed under the contractual terms.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Janay E Garrick, prays for relief as to all counts of this Complaint as follows:

A.     An order declaring that MBI violated Title IX and Illinois law;

B.     An order enjoining future violations by MBI;

C.     Injunctive relief sufficient to eliminate unlawful and discriminatory policies and procedures at MBI;

D.     Payment of all costs of implementing and monitoring such injunctive relief;

E.     Payment of the plaintiff's lost past and future wages, benefits, and any other income and/or monetary or monetized benefits of employment that she would have been entitled to absent MBI's unlawful acts;

F.     Payment of her contract damages;

G.     All other compensatory and consequential damages proven by the plaintiff;

H.     Punitive damages sufficient to punish MBI for its unlawful behavior and to deter future discriminatory conduct;

I.     Payment of the plaintiff's attorneys' fees and all costs of litigation (including any expert witness fees);

J.     Pre-and post-judgment interest; and

K.     All other and relief, whether legal or equitable, that the Court may deem appropriate.

## JURY DEMAND

The plaintiff demands a trial by jury on all counts.

Electronically Filed on January 25, 2018          Respectfully submitted,

                                                  /s/ Jamie S. Franklin
                                                  Jamie S. Franklin

Jamie S. Franklin, ARDC No. 6242916
THE FRANKLIN LAW FIRM LLC
53 W. Jackson Blvd., Ste. 803
Chicago, IL 60604
(312) 662-1008
(312) 662-1015 (fax)
jsf@thefranklinlawfirm.com

# Exhibit A

 **MOODY BIBLE INSTITUTE**

---

# *FACULTY CONTRACT*

---

Moody Bible Institute (hereinafter referred to as "MBI") enters into this agreement with

**Ms. Janay Garrick**

(hereinafter referred to as "the faculty member"), who agrees to accept and fill the position(s) of

**Instructor, Department of Communications**

at MBI for the school year beginning July 1, 2016 and ending June 30, 2017.

MBI agrees to pay the faculty member a salary of $ 53,520  (plus or minus any budget or rank adjustment and including, if appropriate, a housing allowance to be approved annually by the board of trustees). The salary will be paid in 12 monthly installments on the last business day of each of the 12 months in the contract year, subject to deductions as required by law, and other deductions, if any, as authorized by the faculty member. Benefits as determined by MBI are provided to eligible faculty. If the faculty member performs year-round administrative responsibilities, MBI agrees to grant the faculty member   N/A   weeks vacation with pay.

The faculty member agrees (a) to perform diligently and faithfully, under the supervision of the provost and dean of education, and the appropriate dean, the responsibilities prescribed for this position, and (b) to adhere faithfully to the standards, policies, and procedures established by the *Faculty Manual* and the *Employee Information Guide*. The faculty member's specific responsibilities will be determined by his/her department chairman and the appropriate dean.

The faculty member also agrees to read the attached *Doctrinal Statement* and *Institutional Positions Related to the Moody Bible Institute Doctrinal Statement (1928)* and the final Addendum and, by returning this contract dated and signed, affirms that he/she agrees with, personally adheres to, and supports each and every statement.

MBI and the faculty member mutually agree that this contract will be binding on both parties except as modified by the mutual consent of the Trustees and/or the President and the faculty member, or unless terminated for cause, in which case the procedures of termination stated in the current *Faculty Manual* and the *Employee Information Guide* will be followed by both parties.

| | |
|---|---|
| Provost and Dean of Education | 2/1/16 — Date |
| Vice President and Dean of the Undergraduate School | 2/1/16 — Date |
| Faculty Member | 2/3/16 — Date |

# Exhibit B



Teaching loads for those in Sacred Music, Missionary Aviation and Lifetime Fitness and Sports Ministry Department are formulated differently. Faculty members should consult with the department Chair about specific requirements.

Overloads

Undergraduate faculty may be invited to teach overloads in their own department or in other undergraduate departments when such needs arise. All such assignments must be cleared through the faculty member's department chair. Faculty members should guard against becoming overextended.

Adjuncting

Undergraduate faculty may be invited to teach in either the Graduate Division or the External Studies Division within the Education Group. All such overtures must be cleared by the faculty member with the department chair before any commitment is made. Formal exchange arrangements of faculty between Graduate and Undergraduate Division have been established. All such initiatives must be cleared in advance with the graduate and undergraduate deans and the department chair.

# TERMINATION



If for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for serious violations of Institute policy which may result in immediate termination.

# WRITING
## (For Outside Publications)

When articles prepared by faculty members appear in outside publications, the author shall request that the official connection with the Institute be indicated giving the official position, or stating simply "a member of the faculty of Moody Bible Institute." It is also appropriate to use faculty rank.

Official connection with any publication is governed by the policies already stated under the section entitled "Boards."

