IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK,<br><br>       Plaintiff,<br><br> v.<br><br>MOODY BIBLE INSTITUTE and the<br>BOARD OF TRUSTEES FOR THE<br>MOODY BIBLE INSTITUTE,<br><br>       Defendants. | Case No. 1:18-cv-00573<br><br>Judge John Lee<br>Magistrate Judge Young Kim |

**DEFENDANT MOODY BIBLE INSTITUTE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**

TABLE OF CONTENTS

I.   ALLEGATIONS OF THE COMPLAINT AND OTHER FACTS THIS COURT MAY CONSIDER ................................................................................................................. 1

II.   ARGUMENT ........................................................................................................................ 6

  A.   All of Garrick's Claims Are Barred by the U.S. Constitution's Protection of Religious Freedom, Including Under the "Ministerial Exception" ........................ 6

  B.   Garrick's Title IX Claim Is Barred by Title IX's Religious Exemption ................. 9

  C.   Garrick's Title IX Claim Is Preempted by Title VII ............................................. 10

  D.   Garrick's Illinois Retaliatory Discharge Claim Fails for Several Other Reasons 10

  E.   Garrick's Breach-of-Contract Claim Fails for Several Other Reasons ................. 13

III.   CONCLUSION .................................................................................................................. 15

11528967.3

Seeking to involve this Court in the impermissible adjudication of a religious dispute between the parties, Plaintiff, Janay Garrick ("Garrick"), brought this action against Defendant, The Moody Bible Institute of Chicago ("Moody"), challenging Moody's religiously motivated decision not to renew her faculty contract due to her clear lack of alignment with Moody's religious mission and theological beliefs, in her role as one of its faculty "ministers." The constitutionally required "ministerial exception" and related doctrines bar all of Garrick's claims, and her claims fail for more typical reasons as well. Thus, pursuant to Rules 12(b)(1) and 12(b)(6), Moody asks that the Court dismiss Garrick's Complaint with prejudice.

I.  ALLEGATIONS OF THE COMPLAINT AND OTHER FACTS THIS COURT MAY CONSIDER[1]

Moody is a religious institution that educates students for full-time Christian ministry.

---

[1] Under Moody's Rule 12(b)(6) motion, this Court considers the allegations of the Complaint, the documents attached to the Complaint, and the documents attached to this motion that are referred to in Garrick's Complaint and are central to her claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." [internal quotations omitted]); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (a court may properly consider a document in ruling on a motion to dismiss "even if the document [is] merely referred to in the complaint, provided it [is] a concededly authentic document central to plaintiff's claim (the usual example is a contract, in a suit for breach of contract)"). For example, Garrick's breach-of-contract claim alleges that her Faculty Contract (Compl. Ex. A) "incorporates by reference two additional documents: MBI's Faculty Manual and MBI's Employee Information Guide." (Compl. ¶ 82; *see also id*. ¶ 91.) Garrick's Complaint also references Moody's Doctrinal Statement, her April 17, 2017 termination letter, and her post-separation internal grievance. (*See* Compl. ¶¶ 52-55, 57-58, 86; Compl. Ex. A, B.) Thus, the Court may consider these documents in ruling on this motion under Rule 12(b)(6). *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244 (7th Cir. 1994) (court may properly consider on a motion to dismiss the relevant contract documents even if the plaintiff does not attach them to the complaint).
    Under Moody's Rule 12(b)(1) motion, the Court may of course go beyond the pleadings in determining whether it has the authority to adjudicate this matter. *See Silha v. Act, Inc.*, 807 F. 3d 169, 173 (7th Cir. 2015). In support of Moody's constitutional/jurisdictional arguments, it has attached the following additional documents that were drafted and/or signed by Garrick and are therefore unquestionably admissible against her: her employment application, Spring 2015 Contract, 2015-16 Contract, Certifications as to the Doctrinal Statement, Certifications as to the ministerial housing allowance, and EEOC Charge.
    The provisions of an admittedly authentic document control over contrary allegations in the Complaint. *See Northern Ind. Gun & Outdoor Shows, Inc. v. South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

(*See* Compl. ¶ 1 & Compl. Ex. A; Ex. A [Faculty Manual; the "Manual"] at 1-10, 11-12, 37, & Man. Ex. G; Ex. B [Employee Information Guide; the "Guide"] at 1-2, 4-6.) According to its mission statement, "Moody exists to equip people with the truth of God's Word to be maturing followers of Christ who are making disciples around the world." (Ex. A at 1; Ex. B at 1.) The Guide plainly requires faculty members' full alignment with Moody's beliefs (Ex. B at 4):

> Employment at Moody presupposes that each employee has committed his or her life to Jesus Christ for salvation and Christian Service. A lifestyle in accordance with biblical principles is essential to demonstrate that commitment to fellow employees, to MBI students, and to the outside world.

Because Moody's objective is to train students for Christian ministry, Moody considers every faculty member to be serving in a "ministerial" role and to have religious duties. The job description for faculty members is replete with references to the religious nature of the position:

> The Undergraduate school of the Moody Bible Institute exists to provide a Bible-centered education that enables students to know Christ and serve Him through His church in vocational ministry. . . . Therefore, Moody seeks to attract and retain faculty who are committed to the focus and mission of the Institute. . . . . Each faculty member should demonstrate a life of service to the Institute, the community, the church and the profession. . . . [A] faculty member must demonstrate the following skills and aptitudes:
> - Desire to grow in their spiritual lives and develop as mentors of students; . . . .
> - An understanding of and commitment to the authority of Scripture, our theology and mission, and our relationship within broader evangelicalism;
> - A commitment to combining academic excellence and biblical truth with practical ministry preparation; . . .

(Ex. A at 37 & Man. Ex. G.) Faculty members typically open class with prayer, often lead devotions in class, and pray and discuss spiritual matters with students outside of class. (*See generally* Ex. A at 11-12 & Man. Ex. G.) As a central feature of its mission, Moody has a detailed Doctrinal Statement. (*See* Ex. C, D.) Faculty members are required to certify in writing

2

their alignment and agreement with the Doctrinal Statement during the employment application process and in each annual faculty contract.

Garrick is an ordained minister and was hired by Moody to perform "ministerial" services in the form of integrating Christian faith and doctrine in training students for Christian ministry. (Compl. ¶¶ 12-13, 17; Ex. A at 1-10 & Man. Ex. G; Ex. B at 1-2, 4-5.) Garrick herself emphasized in her employment application her central role in providing *religious* education:

> I'm a school nerd and a Jesus lover. . . . Now, while I love learning and believe in the power of education to shape and change lives, I believe in the power of the gospel to shape and change lives more. Western education – even a Biblically-based education – must never be elevated above the transforming power of the gospel. . . . Education—human wisdom—must remain inextricably bound to the spiritual formation of each student. Christ being formed in us, or a growing, intimate relationship with Jesus, must remain at the center of the message I communicate as a professor of communications. I recognize that I would not simply be a purveyor of information, but a model of discipleship.

(Ex. D at 5.) As an example of the integration of faith and academic pursuits, Garrick pleads that she worked on "publication of a new art and theology journal." (Compl. ¶ 46.) When Garrick applied for employment in October 2014, she certified in her application that she fully agreed with and supported Moody's Doctrinal Statement. (Ex. D at 2.) In the Faculty Contracts she signed each year, Garrick again certified her alignment with the Doctrinal Statement:

> The faculty member also agrees to read the attached *Doctrinal Statement* and *Institutional Positions Related to the Moody Bible Institute Doctrinal Statement (1928)* and, by returning this contract dated and signed, affirms that he/she agrees with, personally adheres to, and supports each and every statement.

(Compl. ¶ 81; Compl. Ex. A; Ex. E, F; *see also* Ex. G, H.)

Garrick's Complaint pleads that as an ordained minister she was eligible for (and received) a significant federal tax benefit, the ministerial housing allowance. (Compl. ¶ 18.) To obtain that several-thousand-dollar housing allowance, Garrick had to represent (and did

3

represent) that she was an "ordained minister" and that the teaching she did for Moody qualified as "ministerial services" under specified federal tax laws. (*See* Ex. K.)

In late 2016 and early 2017, statements and actions by Garrick began indicating her nonalignment with Moody's Doctrinal Statement. Thus, on April 12, 2017, Dr. Larry Davidhizar, Vice President and Associate Provost of Faculty, held a meeting with Garrick, and, after a discussion of Garrick's religious views, Davidhizar communicated that Garrick "was not aligned with [Moody's] doctrinal statement as it related to gender roles in ministry."[2] (Compl. ¶ 53; Ex. I.) On April 17, 2017, Garrick was "officially terminated," and Moody's hand-delivered letter communicated that she would not be extended another Faculty Contract because her views on the role of women in religious ministry were not aligned with Moody's, as required. (Compl. ¶ 54; Ex. I.) Garrick expressly pleads that Moody "fired her, purportedly because it had just realized she held an 'egalitarian' view of Christianity."[3] (Compl. ¶ 55.)

Garrick's post-separation grievance (on which Garrick's Complaint relies, *see* Compl. ¶¶ 55, 57-58) openly confirmed her complete disagreement with Moody's theological position:

> I had hoped that Moody Bible Institute in 2017 would have been able to show a greater degree of openness to theological differences in the nonessentials of the faith such as female gender roles in ministry/leadership. Unfortunately, . . . [my faculty contract was not renewed] as I demonstrably began to act upon my belief that women should have equal access to all areas of the institution in

---

[2] As discussed below, the Court must defer to Moody's views regarding the doctrinal dispute between Garrick and Moody, but for the Court's reference, the primary point of dispute involved the "Gender Roles in Ministry" component of the Doctrinal Statement, which holds that "consistent with [Moody's] understanding of Scripture[,] [certain] church offices should be limited to the male gender." (*See* Ex. C at 4.)

[3] Garrick's reference in her Complaint to her "egalitarian" position is a reference to the general doctrinal position that men and women hold equal status with respect to the particular role under discussion (e.g., pastoral roles, ministry roles, marriage roles, Christian leadership roles, etc.). *See generally* Wikipedia, Egalitarianism (https://en.wikipedia.org/wiki/Egalitarianism). The opposing doctrinal view is often termed the "complementarian" view, under which men and women serve in different, complementary roles. *See generally* Wikipedia, Complementarianism (https://en.wikipedia.org/wiki/Complementarianism). Of course, the "complementarian" view is a fully protected religious belief. *See Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1035, 1042 (7th Cir. 2006) ("women of course cannot be priests").

4

> acquiring theological education. . . . I truly believe such an "alternative" [theology] stands at the door of MBI and knocks: this alternative looks like the full, embodied inclusion of women as pastors, theologians, voices of assent and dissent; women as leaders and fully-empowered, equipped citizens of the Kingdom of God.
> . . . .
> [T]here is a deep sexism and misogyny imbedded in the heart of this institution. This goes beyond my recent non-contract renewal. This sexism goes as far back as 1928 when the Gender Addendum was added to the school's Doctrinal Statement and women began to be excluded from educational preparations from the pastorate and the pulpit. . . . [T]he Gender Roles in Ministry Addendum [should] be removed from MBI's doctrinal statement."

(Ex. J [Cover Email at 1-2; Grievance at 56 (excerpts only, due to length].)

On January 5, 2018 (just days after Moody's generous severance pay ended[4]), Garrick filed a Charge of Discrimination with the EEOC in which she alleged: "I was terminated on April 17, 2017 in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., because of my gender (female) and my religion (egalitarian Christian)[,] [and was] retaliated against in violation of Title VII after I engaged in protected activity by complaining of discrimination." (Ex. L.) Garrick's Charge is under review by the EEOC.

On January 25, 2018, Garrick filed this lawsuit against Moody. In her Complaint, Garrick alleges that (1) she was fired because she "began advocating for female students who alleged violation of Title IX [of the Education Amendments of 1972]" (Compl. ¶ 55), in violation of Title IX (Count I); (2) she was discharged "in retaliation for assisting MBI students with their complaints of discrimination . . . and reporting incidents of sex discrimination and harassment of both faculty and students to MBI" (Compl. ¶ 75), which she contends constituted retaliatory discharge in violation of Illinois public policy (Count II); and (3) her termination

---

[4] Even though Moody did not require Garrick to perform any duties after classes ended in early May 2017 (*see* Compl. ¶ 86; Ex. I), and even though Garrick's Contract term ended June 30, 2017 (*see* Compl. Ex. A), Moody paid Garrick severance pay for six additional months (until December 31, 2017), without any obligation to do so (*see* Compl. ¶ 54; Ex. I).

5

constituted a breach of her 2016-17 Faculty Contract, under which she contends that she was entitled to additional notice of termination and therefore six more months of pay (Count III).

II.     ARGUMENT

      A.     *All of Garrick's Claims Are Barred by the U.S. Constitution's Protection of Religious Freedom, Including Under the "Ministerial Exception"*

As a Bible institute that declined to renew Garrick's Faculty Contract (the "Contract") because she was admittedly not in alignment with Moody's religious beliefs, Moody is constitutionally immune from Garrick's claims of discrimination, retaliation, and breach of contract. The "ministerial exception," unanimously upheld by the Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171 (2012), bars Garrick's challenge to Moody's decision that Garrick was no longer an appropriate "minister" to carry out its religious mission. Additionally, the "deference rule" and related principles dictate that this Court has no authority to adjudicate Garrick's claims, which would necessarily intrude into matters of the selection and retention of a "minister" by Moody, a religious institution.

Before discussing the specifics, however, it is imperative to note that constitutionally-based religious liberty defenses like Moody's must be adjudicated at the outset of the matter to minimize the very court entanglement the defenses are designed to prevent. *See id.* at 181 ("Both Religion Clauses bar the government from interfering with the decision of a religious group to fire one of its ministers."); *id*. at 194-95 (the "[ministerial] exception instead ensures that the authority to select and control who will minister to the faithful—a matter "strictly ecclesiastical"—is the church's alone."). The U.S. Court of Appeals for the Seventh Circuit has also repeatedly emphasized that the ministerial exception deserves the district court's immediate attention. *See, e.g.*, *Schleicher v. Salvation Army*, 518 F.3d 472, 475 (7th Cir. 2008) (affirming dismissal based on ministerial exception); *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320

6

F.3d 698 (7th Cir. 2003) (affirming dismissal under Rule 12(b)(1) based on ministerial exception).[5] Thus, whether under Rule 12(b)(1) or 12(b)(6), the Court must determine if any of Garrick claims can clear the applicable First Amendment hurdles.

Regardless of how styled (Title IX violation, state-law retaliatory discharge, or breach of contract), all of Garrick's claims are barred by the ministerial exception. As discussed above, Moody's faculty members hold religious responsibilities crucial to carrying out its religious mission. (*See* Section I *supra*.) Thus, Moody's faculty members fall within the ministerial exception. *See* 565 U.S. at 199 (Alito, J. and Kagan, J., concurring) (ministerial exception applies to any employee who "serves as a messenger or teacher of its faith"; "If a religious group believes that the ability of such an employee to perform these key functions has been compromised, then the constitutional guarantee of religious freedom protects the group's right to remove the employee . . . ."). As demonstrated, Moody expected Garrick to integrate her Christian faith (which had to be aligned with Moody's Doctrinal Statement) into all of her teaching and service at Moody. (Compl. ¶¶ 12-13, 17; Ex. A at 1-10 & Man. Ex. G; Ex. B at 1-2, 4-5.) And Garrick herself admitted the religious nature of her employment, promoted her

---

[5] Numerous other courts have held the same. *See, e.g., Conlon v. Intervarsity Christian Fellowship/USA*, 777 F.3d 829, 833 (6th Cir. 2015) ("The ministerial exception is an affirmative defense that [defendants] should first assert in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"; affirming dismissal under Rule 12(b)(6)); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191-92 (4th Cir. 2011) (reversing, on interlocutory appeal, the denial of religious employer's entitlement to Title VII's religious-employer exemption); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1039 (7th Cir. 2006) (the Religion Clauses' "concern is that in investigating employment discrimination claims by ministers against their church, secular authorities would necessarily intrude into church governance in a manner that would be inherently coercive, even if the alleged discrimination were purely nondoctrinal" [internal quotations omitted]; affirming dismissal based on ministerial exception); *Sterlinski v. Catholic Bishop of Chicago*, 203 F. Supp. 3d 908 (N.D. Ill. Aug. 23, 2016) (dismissing claims as barred by ministerial exception under Rule 12(b)(6); the only relevant issue is "that of the appropriate characterization of [the plaintiff's job] position," not the disputed reasons for the termination).
Prior to *Hosanna-Tabor*, the Seventh Circuit (and other circuit courts) had held that the ministerial exception is a jurisdictional bar to suit. *See, e.g.*, *Tomic*, 442 F.3d at 1038. In *Hosanna-Tabor*, the Court clarified that the defense is not jurisdictional per se, but is nevertheless a defense requiring the court's immediate attention if asserted. *See* 565 U.S. at 194-95 & n.4.

status as an "ordained minister," and enjoyed tax-favored status because she was engaged in "ministerial service" at Moody. (*See* Compl. ¶¶ 12-13, 17-18; Ex. D-H, J- K.) Thus, Garrick's claims fall squarely within the ministerial exception and must be dismissed. *See* 565 U.S. at 191-92; *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655 (7th Cir. 2018) (ADA claims of teacher at Jewish elementary school barred by ministerial exception, even though school did not require teachers to be Jewish; because teacher was involved in shaping the practice of Jewish faith for students, she was a "minister" within the exception). Nor does it matter that Garrick has alleged that Moody's religious reasons for her separation are "pretext for its true motives—discrimination and retaliation." (Compl. ¶ 56.) Pretext is irrelevant when the ministerial exception applies since the exception is based on the religious nature of the position rather than alleged illegal motives or reasons. *See* 565 U.S. at 194-95 (courts cannot proceed to analyze alleged pretext, because that "misses the point of the ministerial exception").[6] Finally, the ministerial exception applies to statutory, tort, and contract claims alike. *See* 565 U.S. at 180-81, 196 (ministerial exception barred ADA retaliation claims by elementary teacher at Lutheran school); *Conlon*, 777 F.3d at 836-37 (affirming 12(b)(6) dismissal of state-law discrimination claims under ministerial exception); *Friedlander v. Port Jewish Ctr.*, 347 Fed. App'x 654, 655 (2d Cir. 2009) (affirming 12(b)(1) dismissal of breach-of-contract claim based on ministerial exception; evaluation of rabbi's job performance "would involve impermissible judicial inquiry into religious matters.").[7]

---

[6] *See also Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 202-04 (2d Cir. 2017) (the religious employer's given reason for the adverse action is irrelevant if the employee was a "minister" within the meaning of the ministerial exception); *Sterlinski*, 203 F. Supp. 3d at 915 (the religious "employer's alleged reason for the adverse employment action plays no role in the [ministerial] exception's applicability"); *Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d 668, 673 (N.D. Ill. 2012) (the reasons for the religious employer's adverse action are immaterial if the ministerial exception applies).

[7] *See also Schleicher*, 518 F.3d at 475 (ministerial exception barred claims for minimum wage and overtime violations); *Starkman v. Evans*, 198 F.3d 173, 175-77 (5th Cir. 1999) (ministerial exception

In addition to being barred by the ministerial exception, Garrick's claims are also barred by the variously described "ecclesiastical abstention," "church-autonomy," and "deference" doctrines. *See Fratello*, 863 F.3d at 197, n.15, 202, n.25, 203 (if religious employer offers a religious reason for the termination, courts may not adjudicate the matter because courts have no authority to evaluate the genuineness of religious reasons or pretext; dismissal of claims brought Catholic school principal affirmed); *Korte v. Sebelius*, 735 F.3d 654, 677-78 (7th Cir. 2013) (reversing the denial of preliminary injunctions sought under the Religious Freedom Restoration Act; "where it applies, the church-autonomy principle operates as a complete immunity, or very nearly so"); *Lee*, 2017 WL 3608140, at *30-35 ("deference rule" barred court from considering pastor's claims that he was terminated without "cause" under his employment agreement); *Warnick v. All Saints Episcopal Church*, No. 01539, 2014 WL 11210513, at *10 (Pa. Com. Pl. Apr. 15, 2014) ("deference rule" and ministerial exception barred breach-of-contract claim by pastor over demotion to part-time ministry), *aff'd*, 116 A.3d 684 (Pa. Super. Ct. 2014). Permitting this case to run the typical course of litigation before Moody's religious defenses are decided would violate Moody's constitutional rights under the Religion Clauses of the First Amendment. *See Tomic*, 442 F.3d at 1038 (affirming religious organizations' right "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine" [internal quotations omitted]). Thus, Garrick's claims should be dismissed under these doctrines also.

 B. *Garrick's Title IX Claim Is Barred by Title IX's Religious Exemption*

---

barred state-law retaliatory discharge claim by choir director); *Lee v. Sixth Mount Zion Baptist Church*, No. 15-1599, 2017 WL 3608140, at *35 (W.D. Pa. Aug. 22, 2017) (ministerial exception barred pastor's claim for breach of employment contract; "the very process of inquiry into church motives and good faith as it relates to the mission of the church can impinge on rights guaranteed by the First Amendment"); *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 120 (D.D.C. 2007) (dismissing for lack of subject matter jurisdiction missionary's breach-of-contract claims as barred by ministerial exception).

9

Garrick's Title IX claim is also barred by Title IX's statutory religious exemption, which makes Title IX inapplicable when its application "would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3). As shown above, the heart of Garrick's Title IX claim is her disagreement with, and opposition to, Moody's application of its biblical views about the role of women in ministry. Applying Title IX to require Moody to retain a faculty member who not only strongly disagreed with, but openly advocated against, Moody's religious views is plainly an application that "would not be consistent with the religious tenets of [Moody]." *See id.* Thus, Garrick has no Title IX claim.

C. *Garrick's Title IX Claim Is Preempted by Title VII*

Garrick's Title IX claim is also preempted by Title VII of the Civil Rights Act of 1964. As noted, Garrick has asserted in her sworn EEOC Charge that Moody's alleged discrimination and retaliation violated Title VII. (*See* Ex. L.) And even in the absence of an asserted Title VII claim, if Title VII provides a remedy for the conduct alleged to have (also) violated Title IX, Title VII bars the Title IX claim. *See Slabisak v. Univ. of Tex. Health Sci. Ctr.*, No. 4:17-CV-597, 2018 WL 1072511 at *2-3 (E.D. Tex. Feb. 27, 2018).

For all of the above reasons, Garrick's Title IX claim (Count I) should be dismissed.[8]

D. *Garrick's Illinois Retaliatory Discharge Claim Fails for Several Other Reasons*

Garrick also attempts to challenge her discharge by bringing a state law tort claim for retaliatory discharge in violation of public policy ("RD"). Garrick alleges that her faculty contract was not renewed in retaliation for assisting Moody students with Title IX complaints,

---

[8] If the Court dismisses Garrick's Title IX claim but is not inclined to dismiss Garrick's two state law claims on the merits, the Court could dismiss the state-law claims for lack of supplemental jurisdiction under 28 U.S.C. § 1367. (*See* Compl. ¶ 9.)

10

"complaining about courses being barred to female students," and "reporting incidents of sex discrimination and harassment." (Compl. ¶ 75.) Garrick's RD claim fails for several reasons.

First, as Garrick's Complaint readily admits (Compl. ¶ 73), a RD claim is only available to an *at-will* employee (i.e., an employee who has no contract with her employer and can be terminated at any time without cause and without notice). *See Wynn v. Ill. Dep't of Human Serv.*, 2017 IL App (1st) 160344, ¶¶ 46-49 (collecting cases which hold that termination of, or non-renewal of, an employment contract cannot give rise to a RD claim); *Darchak v. City of Chicago Bd. of Educ.,* 580 F.3d 622, 628 (7th Cir. 2009) (teacher with one-year renewable contract had no RD claim; "Illinois appellate courts have expressly refused to extend the reach of the retaliatory discharge tort to cover the nonrenewal of a fixed term contract").[9] Yet Garrick expressly pleads that she held an *employment contract* with Moody: "the terms of Ms. Garrick's employment were governed by a valid and enforceable Faculty Contract entered into by both Ms. Garrick and MBI on a yearly basis. See Exhibit A (2017 Faculty Contract)." (Compl. ¶ 81; Compl. Ex. A.) Because Garrick was not an at-will employee (or, alternatively, because Garrick's claim is based on the nonrenewal of her contract), she cannot state a RD claim.

Second, "[r]etaliatory discharge claims are a narrow exception to the general rule that employees are at-will" and require a showing that the plaintiff's "discharge violates a clear mandate of public policy." *Michael v. Precision Alliance Grp., LLC*, 2014 IL 117376 ¶¶ 31, 39; *see also* Compl. ¶ 72 ("clear mandate of public policy" required for tort). The public policy at issue must be specifically pleaded and must be a matter of well-settled law, which is an issue of

---

[9] *See also Bajalo v. Northwestern Univ.*, 369 Ill. App. 3d 576, 584, 860 N.E.2d 556 (1st Dist. 2006) (rejecting university employee's RD claim based on the retaliatory nonrenewal of her employment contract because the RD tort does not extend to nonrenewal); *Krum v. Chicago Nat'l League Ball Club, Inc.*, 365 Ill. App. 3d 785, 788-90, 851 N.E.2d 621 (1st Dist. 2006) (dismissal of RD claim affirmed; "an at-will employee [is] a noncontracted employee [who] serves at the employer's will" [internal quotations omitted]; "contractual employees, such as [plaintiff], cannot bring a claim for retaliatory discharge when employers fail to renew an employment contract").

law for the court to determine.  *Turner v. Mem. Med. Ctr.*, 233 Ill. 2d 494, 500-03, 505, 911 N.E.2d 369 (2009) (affirming dismissal of retaliatory discharge claim based complaints about improper medical recordkeeping and patient safety because discharge did not violate clearly mandated public policy).  Here, Garrick alleges that she complained about, and assisted students with complaints about, alleged gender discrimination driven by Moody's religious views relating to the role of women in Christian ministry.  Given the robust constitutional and statutory religious freedom rights Moody enjoys and Moody's nonrenewal of Garrick's contract based on her doctrinal positions (*see* Section I), Garrick's claim falls well short of pleading a violation of "clearly mandated public policy."  Moody has not located an Illinois case that comes close to supporting Garrick's claim, and RD claims under much more compelling circumstances have been found *not* to state a claim.  *See Turner*, 233 Ill. 2d at 503, 911 N.E.2d 369 (identifying the "right to marry," "product safety," "quality health care," and "the Hippocratic Oath" as insufficient bases for a RD claim); *Sullivan v. Progressive Cas. Ins. Co.*, No. 03C8487, 2004 WL 1687123 (N.D. Ill. July 27, 2004) (granting Rule 12(b)(6) motion as to RD claim based on taking FMLA leave).

   Third, Garrick's claim is barred because other statutes already arguably provide a remedy.  Courts have regularly held that, due to the very narrow scope of the RD tort, the tort does not extend to conduct that is arguably covered by another federal or state statute.  *See, e.g.*, *Cromley v. Bd. of Educ.*, 699 F. Supp. 1283, 1296-98 (N.D. Ill. 1988) (RD claim based on school's termination of plaintiff in order to suppress her First-Amendment-protected speech was barred because 42 U.S.C. § 1983 provided an adequate remedy); *Gutierrez v. City of Chicago*, 605 F. Supp. 973, 980 (N.D. Ill. 1985) (dismissing RD claim because "[b]oth Title VII and 42 U.S.C. § 1983 provide causes of action for wrongful discharge based on political activity or on

racial discrimination"). Garrick pleads a Title IX claim (Count I) and filed an EEOC Charge under Title VII (*see* Ex. L) based on the same alleged retaliation that is the basis of her RD claim, so she obviously believes she has a remedy under existing statutory schemes, which means her RD claim must be dismissed pursuant to Rule 12(b)(6).[10]

### E. Garrick's Breach-of-Contract Claim Fails for Several Other Reasons

In Count III, Garrick alleges a breach-of-contract claim based on Moody's alleged failure to comply with a notice provision applicable to terminations *without cause* that appears in the Faculty *Manual*, which Garrick contends is incorporated by reference into her Faculty *Contract*.[11] (*See* Compl. ¶¶ 81-91 & Ex. A-B.) To state a breach-of-contract claim under Illinois law, Garrick must plead: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Roberts v. Columbia Coll. Chicago*, 821 F.3d 855, 863 (7th Cir. 2016) (internal quotations omitted). The alleged breach must be of a term in the contract that is definite and certain. *See Wald v. Chicago Shippers Ass'n*, 175 Ill. App. 3d 607, 617, 529 N.E.2d 1138, 1145 (1st Dist. 1988).

There are several problems with Garrick's claim. First, the only alleged breach of contract is based the following provision in the Manual:

---

[10] Even if all of the above did not require dismissal of Garrick's RD claim, her claim would need to be dismissed because her Complaint does not allege a sufficient temporal relationship between her protected activity and the nonrenewal of her contract to state a claim. She alleges assistance to the complaining student only as late as April 2016 (Compl. ¶¶ 32, 36) and her last arguably protected activity in September 2016 (*see* Compl. ¶¶ 40-41), but Moody did not decide not to renew her Contract until April 17, 2017 (*see* Compl. ¶ 54). A multi-month gap between the alleged protected activity and the adverse employment action is never adequate to state a claim. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (temporal proximity must be at most a few months to suggest causation); *Reid v. Neighborhood Assistance Corp.*, 749 F.3d 581 (7th Cir. 2014) (termination of plaintiffs just days after their protected activity still did not permit inference of causation); *Teruggi v. CIT Group/Capital Finance, Inc.,* 709 F.3d 654 (7th Cir. 2013) (the RD causation element was lacking where protected activity occurred 18 months prior to adverse action); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval was insufficient to create a material issue regarding causation).

[11] Garrick's Contract refers to the Manual as follows: ". . . this contract will be binding on both parties . . . unless terminated for cause, in which case the procedures of termination stated in the current *Faculty Manual* and *Employee Information Guide* will be followed by both parties." (Compl. Ex. A.)

13

> If for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for such serious violations of Institute policy which may result in immediate termination.

(Compl. ¶ 85 & Ex. B) (hereinafter the "FM Notice Provision").[12] But the FM Notice Provision is merely a statement of what Moody's expects its general practice will be; it is hortatory, not promissory, and thus Garrick fails to plead the breach of an explicit bargained-for exchange. *See Wald*, 175 Ill. App. 3d at 617-18, 529 N.E.2d at 1145. Second, even if the FM Notice Provision did apply, Garrick would have no rights under it. The FM Notice Provision states that notice of nonrenewal will be provided in November *except for* terminations related to "serious violations of Institute policy which may result in immediate termination" (i.e., for-cause terminations). Doctrinal nonalignment is plainly a "serious violation" for which termination may result; the Contract itself, in its brief (nine-sentence) text, required Garrick to "affirm[] that []she agrees with, personally adheres to, and supports each and every statement" in the Doctrinal Statement. (*See* Compl. Ex. A.) Because Garrick's pleads that Moody's stated reason for her discharge was her doctrinal nonalignment (Compl. ¶¶ 53, 55-56), Moody had no obligation to notify Garrick in November that her Contract would not be renewed. Third, the FM Notice Provision necessarily applies only when Moody knows (or possibly should have known) in the fall semester that a faculty member "is not to be retained after the Spring semester," which Garrick does not allege. Fourth, the FM Notice Provision expressly states that immediate termination "*may*" result for "serious violations of Institute policy"; "immediate" termination was not required by the FM Notice Provision, it was simply an option available to Moody in such circumstances. Finally,

---

[12] Garrick's Complaint incorrectly attaches a page from an outdated/superseded Faculty Manual, and the provision in the correct Manual reads quite differently from Garrick's outdated version: "If for some reason a faculty member is not to be retained after the spring semester, *effort will be made* to advise the teacher of this no later than December of the fall semester, except for serious violations of Institute policy which may result in immediate termination" (emphasis added). But for purposes of this motion, Moody addresses the inaccurate provision on which Garrick relies.

14

and perhaps most importantly, no breach-of-contract claim can be based on the FM Notice Provision because the cover page of the Manual expressly disclaimed all potential contract rights: "This information or any other document published by MBI *is not, nor is it intended to be, a contract of employment*." (Ex. A at 1 [emphasis added].)

In sum, because contract interpretation is a matter of law for the Court, *see Wald*, 175 Ill. App. 3d at 617-18, 529 N.E.2d at 1145, this Court may apply standard contract law principles in dismissing Garrick's contract claim pursuant to Rule 12(b)(6).

### III. CONCLUSION

For the reasons stated above, Moody asks that Garrick's Complaint be dismissed with prejudice.[13]

Dated: April 6, 2018

Respectfully submitted,

s/ Christian Poland
One of the Attorneys for Defendant
Moody Bible Institute

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

---

[13] If this motion to dismiss is not granted in its entirety, the Court should limit the discovery that proceeds to the narrow question of the application of the ministerial exception and Moody's other religious defenses, as courts regularly require. *See Fratello*, 863 F.3d at 198 (district court appropriately ordered discovery limited to whether employee was a "minister" for purposes of ministerial exception); *Defendant Moody Bible Institute's Motion to Stay Discovery* (Dkt. 15) at n.6 (citing cases). And discovery should clearly *not* extend to the intrusive and overbroad questions of whether Moody's stated reason for Garrick's separation was "pretextual" (which is Garrick's view); whether Moody had "sound" reasons for its decision; whether similarly situated employees were treated more favorably; or to any other questions that are not directed to Moody's religious defenses. *See Hosanna-Tabor*, 565 U.S. at 194-95 (courts cannot proceed to analyze alleged pretext, because that "misses the point of the ministerial exception").

15

CERTIFICATE OF SERVICE

Christian Poland, one of the attorneys for Defendant Moody Bible Institute states that on April 6, 2018, he served a true and correct copy of the foregoing *Defendant Moody Bible Institute's Memorandum of Law in Support of Its Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6)* upon counsel for Plaintiff by causing said document to be delivered to her via the Court's ECF system, addressed as follows:

>Jamie S. Franklin
>The Franklin Law Firm LLC
>53 W. Jackson Blvd., Ste. 803
>Chicago, IL  60604
>jsf@thefranklinlawfirm.com

>s/ Christian Poland