IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK,<br><br>      Plaintiff,<br><br> v.<br><br>MOODY BIBLE INSTITUTE and the<br>BOARD OF TRUSTEES FOR THE<br>MOODY BIBLE INSTITUTE,<br><br>      Defendants. | Case No. 1:18-cv-00573<br><br>Judge John Lee<br>Magistrate Judge Young Kim |

## DEFENDANT MOODY BIBLE INSTITUTE'S
## ANSWER AND AFFIRMATIVE/ADDITIONAL DEFENSES
## TO PLAINTIFF'S COMPLAINT

Defendant The Moody Bible Institute of Chicago (incorrectly named as "Moody Bible Institute") ("Moody"), responds to the Complaint ("Complaint") of Plaintiff, Janay Garrick ("Garrick"), as follows.

1. <u>Complaint</u>:  Defendant Moody Bible Institute is a post-secondary religious educational institution that offers both undergraduate and graduate courses of study. It is a not-for-profit corporation incorporated in the state of Illinois.

<u>ANSWER</u>:  Moody admits the allegations of this paragraph.

2. <u>Complaint</u>:  Defendant Board of Trustees for the Moody Bible Institute is the governing board of Moody Bible Institute.

<u>ANSWER</u>: Moody admits that the board of trustees for Moody is the governing board of Moody, but denies that the board is a proper defendant in this matter.

3. <u>Complaint</u>:  Collectively, the defendants are referred to as "MBI" or "Moody."

<u>ANSWER</u>:  Moody admits that Garrick's Complaint purports to collectively refer to Moody and its board of trustees as "MBI" or "Moody," but conflating Moody and its board of

trustees for purposes of pleading in the Complaint is imprecise, confusing, and improper,

including because it fails to specifically identify the person or entity to which or to whom the

allegations of the Complaint pertain, and Moody therefore objects to Garrick's stated practice in

her Complaint and responds to the allegations of the Complaint as if they pertain only to Moody.

4.      <u>Complaint</u>:  MBI's primary campus is located in downtown Chicago, IL.

<u>ANSWER</u>:  Moody admits the allegations of this paragraph.

5.      <u>Complaint</u>:  MBI has accepted federal financial aid funds pursuant to Title IV of the Higher Education Act since at least 2012.

<u>ANSWER</u>:  Moody admits that since at least 2012, it has participated in certain student

financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as

amended.  Except as specifically admitted, Moody denies the allegations of this paragraph.

6.      <u>Complaint</u>:  As of the date of this filing, MBI has not submitted a request to the Office of Civil Rights of the U.S. Department of Education for a religious exemption to the requirements of Title IX.

<u>ANSWER</u>:  Moody admits that as of the date of Garrick's filing of her Complaint,

Moody had not submitted a formal request to the Office of Civil Rights of the U.S. Department

of Education for a religious exemption to the requirements of Title IX, but denies it was required

to do so to be exempt from Title IX on religious grounds.  Except as specifically admitted,

Moody denies the allegations of this paragraph.

7.      <u>Complaint</u>:  Plaintiff Janay E. Garrick was employed by MBI at its Chicago campus as an Instructor of Communications from December 1, 2014 until December 31, 2017.

<u>ANSWER</u>:  Moody admits that Garrick was employed by Moody at its Chicago campus

as an Instructor of Communications, beginning December 1, 2014.  Except as specifically

admitted, Moody denies the allegations of this paragraph.

8.      <u>Complaint</u>:  This Court has federal question jurisdiction over the plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

ANSWER:  Moody admits that this Court would otherwise have federal question jurisdiction over Garrick's Title IX claim pursuant to 28 U.S.C. § 1331, but Moody states that this Court lacks jurisdiction or authority to adjudicate Garrick's claims because of Moody's constitutional defenses (see Moody's motion to dismiss, filed contemporaneously herewith), and Moody denies that Garrick's Title IX claim states a claim upon which relief can be granted. Except as specifically admitted, Moody denies the allegations of this paragraph.

9.      Complaint:  This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

ANSWER:  Moody admits that this Court would otherwise have supplemental jurisdiction over Garrick's state law claims pursuant to 28 U.S.C. § 1367(a), but Moody states that this Court lacks jurisdiction or authority to adjudicate Garrick's claims because of Moody's constitutional defenses (see Moody's motion to dismiss, filed contemporaneously herewith), and Moody denies that Garrick's state law claims state a claim upon which relief can be granted. Except as specifically admitted, Moody denies the allegations of this paragraph.

10.      Complaint:  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

ANSWER:  Moody admits that venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Moody resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.  Except as specifically admitted, Moody denies the allegations of this paragraph.

11.      Complaint:  The Northern District of Illinois has personal jurisdiction over the defendants because they reside in and/or and maintain offices in this District and/or do business in Illinois.

ANSWER:  Moody admits that the Northern District of Illinois has personal jurisdiction over Moody because it is located in and maintains an office in this District and does business in Illinois.  Except as specifically admitted, Moody denies the allegations of this paragraph.

12.     Complaint:  Ms. Garrick is an ordained minister. She has a Master's Degree in Cross-Cultural Studies and a Bachelor's Degree in Creative Writing and Speech Communications, and she is working on a second Master's Degree in Creative Nonfiction. Ms. Garrick has worked in the field of communications for 15 years.

ANSWER:  Moody is without personal knowledge or personal information sufficient to know whether the pleaded facts are in fact true, but Moody admits that Garrick communicated to Moody that she is an ordained minister, has a master's degree in Cross-Cultural Studies from Fuller Theological Seminary, has a bachelor's degree in Creative Writing and with a Speech minor from Pepperdine University, is working on a second master's degree in Creative Nonfiction, and has worked in the field of communications for several years.  Except as specifically admitted, Moody denies the allegations of this paragraph.

13.     Complaint:  Ms. Garrick was hired by MBI on December 1, 2014 as an Instructor of Communications in MBI's Communications Program, which is one of two programs in its Music and Media Arts Division.

ANSWER:  Moody admits that Garrick was hired by Moody effective December 1, 2014, as an Instructor of Communications, and that the Communications major is presently a programs offered within Moody's Music and Media Arts Division.  Except as specifically admitted, Moody denies the allegations of this paragraph.

14.     Complaint:  Ms. Garrick informed MBI during the interview process that she was an "egalitarian Christian" and believed in gender equality in the ministry. MBI hired her with full knowledge of her beliefs and renewed her contract twice with this knowledge.

ANSWER:  Moody admits that it renewed Garrick's employment contract twice, which was based in part on her written confirmation that her religious beliefs were in full alignment

4

with Moody's doctrinal statement.  Except as specifically admitted, Moody denies the allegations of this paragraph.

15.     Complaint:  Ms. Garrick's direct supervisor was Brian Kammerzelt, the Communications Program Head. Terry Strandt, Chair of the Music and Media Arts Division, was responsible for her performance reviews. Ms. Garrick also reported to Larry Davidhizar, Vice President and Associate Provost of Faculty. Other MBI administrators at the time included James Spencer, Vice President and Dean; Junias Venugopal, Provost; Debbie Zelinski, Vice President of Human Resources; Clive Craigen, Faculty Advocate; Tim Arens, Dean of Student Life; and Bryan O'Neal, Dean of the Undergraduate Faculty.

ANSWER:  Moody admits that (1) for part of her employment, Garrick's direct

supervisor was Brian Kammerzelt ("Kammerzelt"), who is currently the Communications

Program Head, and (2) Terry Strandt ("Strandt"), Chair of the Music and Media Arts Division,

prepared her annual written performance evaluation in early 2017.  Moody is without knowledge

or information sufficient to form a belief as to how Garrick is using the word "administrator" in

this paragraph and so is unable to admit or deny whether the identified persons are

"administrators," but Moody admits that it employed the following persons with the following

titles during some or all of Garrick's employment:  James Spencer, Vice President and Dean;

Junias Venugopal, Provost; Debbie Zelinski ("Zelinski"), Vice President of Human Resources;

Clive Craigen, Associate Professor, Urban Ministries; Tim Arens ("Arens"), Vice President and

Dean of Student Life; and Bryan O'Neal ("O'Neal"), former Dean of the Undergraduate Faculty

and currently Vice President, Moody Distance Learning.  Except as specifically admitted,

Moody denies the allegations of this paragraph.

16.     Complaint:  Ms. Garrick quickly learned that MBI both tolerated and cultivated an environment that was hostile to female faculty and students.

ANSWER:  Moody denies the allegations of this paragraph.

17.     Complaint:  For example, in October 2014, shortly before her campus interview, Ms. Garrick was told by Mr. Davidhizar to remove the reference to being an ordained minister from her resume. Later, it became clear that MBI believed that the office of pastor is reserved exclusively for male candidates and did not want her to represent herself as an ordained minister.

<u>ANSWER</u>:  Moody admits that it holds the following, biblically based belief regarding the role of women in religious ministry, as stated in its *Institutional Positions in Addition to the Elaboration of The Moody Bible Institute Doctrinal Statement (1928) Addendum*:

> Gender Roles in Ministry
> The Moody Bible Institute values the worth and dignity of all persons without distinction as created in God's image.  We affirm the priesthood of all believers and the responsibility of every Christian woman and man to take an active role in edifying the Church.  For that purpose, the Holy Spirit distributes ministry gifts to believers without distinction of any kind.  That reality imposes the responsibility on every believer to fulfill ministry consistent with God's grace.
> The Institute distinguishes between ministry function and church office.  While upholding the necessity of mutual respect and affirmation as those subject to the Word of God, Moody Bible Institute understands that the biblical office of elder/pastor in the early church was gender specific.  Therefore it maintains that it is consistent with that understanding of Scripture that those church offices should be limited to the male gender.

Except as specifically admitted, Moody denies the allegations of this paragraph.

18.    <u>Complaint</u>:  Ms. Garrick was disadvantaged by this demand. When she was hired, she was not told by administration that ordained ministers could claim a tax deduction for their housing costs. After a male professor informed her of this, Ms. Garrick took steps to file her ordination license with MBI in order to claim the deduction, but she lost the opportunity to take the deduction for a full year.

<u>ANSWER</u>:  Moody admits that Garrick submitted to it in 2015 (1) her completed Housing Allowance Application 2016 Calendar Year, (2) her completed Application for Housing Allowance and Indemnification, and (3) her Certificate of License from Christian Church of Thousand Oaks, in support of her application for treatment of certain of her compensation as a ministerial housing allowance, and based on her certification that she was an "ordained minister" and was performing "ministerial services" within the meaning of the federal tax laws.  Moody is without knowledge or information sufficient to form a belief as to the truth of Garrick's allegation that a "male professor" informed Garrick about the federal ministerial housing allowance.  Except as specifically admitted, Moody denies the allegations of this paragraph.

6

19.     Complaint:  Female instructors were confined to certain programs, like the one in which Ms. Garrick was hired, while the more prestigious Bible and Theology Programs were staffed exclusively by men.

ANSWER:  Moody denies the allegations of this paragraph.

20.     Complaint:  In late 2015, Ms. Garrick was asked to assist in forming a committee to address women's concerns on campus, which she did. The group, called Respect for Women Personally and Ministerially, was viewed with suspicion and hostility from the beginning. Ms. Garrick was explicitly told by the administration that any changes resulting from the committee's work should be "small and incremental."

ANSWER:  Moody admits that Garrick participated in a committee to address women's issues on campus called Respect for Women Personally and Ministerially.  Except as specifically admitted, Moody denies the allegations of this paragraph.

21.     Complaint:  The faculty workroom that Ms. Garrick used was otherwise all-male, and her male colleagues treated her with antagonism. For example, they ignored her when she spoke to them, left the room abruptly when she entered, and openly ridiculed her. When Ms. Garrick tried to suggest solutions to the problem, she was told by MBI administration to simply avoid the workroom and to get her own printer so that she could work in her office.

ANSWER:  Moody denies the allegations of this paragraph.

22.     Complaint:  In February 2015, Ms. Garrick was approached by a lesbian student who was struggling with MBI's hostility toward her sexual orientation. Ms. Garrick brought the student's concerns to Dean Tim Arens. His response was to ask what she said and did in response to the student and to warn her that MBI had "community living standards." The female student was later expelled from MBI.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, including because Garrick does not identify the student at issue.

23.     Complaint:  In October 2015, a female student informed Ms. Garrick that she wanted to enter the Pastoral Ministry program but that it was closed to women. Ms. Garrick was shocked and began to investigate MBI's stance on barring women from access to its programs.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, including because Garrick does not identify the student at issue.

24.     Complaint:  In January 2016, another female student came to Ms. Garrick for help with the same problem. The student wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, including because Garrick does not identify the student at issue.

25.     Complaint:  Ms. Garrick discovered that MBI's website at the time stated that the program was only open to male students. She contacted her own faculty mentor and the head of the program to ask about the exclusion of women, and they confirmed that it was true.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

26.     Complaint:  MBI was accepting federal financial aid funds during this time and, on information and belief, was reporting to the Department of Education that it met all the relevant criteria, including the prohibition against discriminating on the basis of sex.

ANSWER:  Moody admits that in or about January 2016 it was participating in student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended.  Except as specifically admitted, Moody denies the allegations of this paragraph.

27.     Complaint:  Ms. Garrick helped this student lodge the first Title IX complaint ever brought at MBI.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, including because Garrick does not identify the student at issue.

28.     Complaint:  On February 17, 2016, the first meeting of the Respect for Women Personally and Ministerially group was held. Ms. Garrick was rebuked when she told the participants that she was assisting a student who had been barred from an MBI program because of her sex. Immediately after the meeting, Ms. Garrick's faculty mentor called her into a closed-door meeting and attacked her further, asking "how can you have any integrity?"

ANSWER:  Moody admits that on or about February 17, 2016, the first meeting of the Respect for Women Personally and Ministerially group was held.  Except as specifically admitted, Moody denies the allegations of this paragraph.

29.    Complaint:  After Ms. Garrick brought her concerns to several other MBI personnel, the second Respect for Women Personally and Ministerially meeting was cancelled.

ANSWER:  Moody admits that a second Respect for Women Personally and Ministerially meeting was not held.  Except as specifically admitted, Moody denies the allegations of this paragraph.

30.    Complaint:  On February 23, 2016, Ms. Garrick met with Mr. Davidhizar and Bryan O'Neal about the student's complaint and about the hostility Ms. Garrick herself was facing. Rather than seeking solutions to the concerns raised by Ms. Garrick, the administrators suggested she might not be able to continue in the faculty and told her she should voluntarily leave MBI.

ANSWER:  Moody admits that on or about February 23, 2016, Garrick met with Davidhizar and O'Neal.  Except as specifically admitted, Moody denies the allegations of this paragraph.

31.    Complaint:  Ms. Garrick decided to stay and fight.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to what Garrick decided to do at the referenced point in time, but admits that Garrick remained employed for over one year after her February 2016 meeting and admits that Garrick's tone, approach, and communications at times were adversarial and inappropriate, which would be consistent with her stated decision to "stay and fight."

32.    Complaint:  Throughout the spring of 2016, Ms. Garrick continued to work with the student to advance her Title IX complaint against MBI.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, including because Garrick does not identify the student at issue.

9

11534777.2

33.     Complaint:  At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website explicitly limited the degree program to male students. Then MBI tried to convince the student to take courses in another program, presenting her with false and misleading information about its offerings. Ultimately, despite its attempts to muddy the waters, it became clear that MBI had been discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

ANSWER:  Moody denies the allegations of this paragraph.

34.     Complaint:  Despite this admission, MBI denied the student's complaint, stating that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." In its denial letter, MBI purported to have misunderstood the nature of the student's complaint – which was untrue, as Ms. Garrick and the student had made it clear numerous times.

ANSWER:   Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, including because Garrick does not identify the student at issue.

35.     Complaint:  With Ms. Garrick's help, the student appealed. In response, professors made disparaging comments to the student such as "don't you know the image of God is male?" and "what makes you think you have the right to preach?"

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, including because Garrick does not identify the student or "professors" at issue.

36.     Complaint:  The student and Ms. Garrick continued to push MBI to open the program to all women. As a result, on April 20, 2016, MBI announced that it intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women (though it failed to notify the student herself until mid-May 2016, and even then continued to equivocate about its position).

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to the truth of the allegations that "the student and Ms. Garrick continued to push MBI to open the program to all women" and that it "failed to notify the student herself until mid-May 2016," including because Garrick does not identify the student at issue.  Moody denies the remaining allegations of this paragraph.

37.     Complaint:  Even after this decision, MBI continued, and, on information and belief, continues to discourage women from applying to the Pastoral Ministry program. There are currently just three women in a program of approximately 60 students. It is unclear whether MBI has officially opened the program to all women.

ANSWER:  Moody denies the allegations of this paragraph.

38.     Complaint:  Throughout the summer and fall of 2016, Ms. Garrick continued to experience hostility and opposition from MBI's faculty and administration.

ANSWER:  Moody denies the allegations of this paragraph.

39.     Complaint:  Ms. Garrick also assisted a transgender student with her hostile environment concerns, which Ms. Garrick reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

ANSWER:  Moody is without knowledge or information sufficient to form a belief as to

the truth of the allegations that "Garrick also assisted a transgender student with her hostile

environment concerns," that "Garrick reported [such issues] to faculty and administrators," and

"the student left [Moody]," including because Garrick does not identify the student, faculty, or

administrators at issue.  Moody denies the remaining allegations of this paragraph.

40.     Complaint:  In September 2016, a male theology professor at MBI drafted a proposal that would require all students to sign a statement affirming their belief in and adherence to a biblically orthodox position on human sexuality. Ms. Garrick spoke out at an all-faculty and administration meeting and told a story about a student who came to Ms. Garrick in tears over being told one could not be gay and "saved." She submitted and co-presented (with a male faculty member) a counter-proposal with an inclusive message.

ANSWER:   Moody admits that in or around October 2016, Garrick submitted and orally

advocated for a proposal related to Moody's religious position on human sexuality.  Except as

specifically admitted, Moody denies the allegations of this paragraph.

41.     Complaint:  In response, Mr. Davidhizar pulled Ms. Garrick into his office the next day and told her that the speech was "inflammatory rhetoric" and that she was "not a Moody fit." The male faculty member who co-presented the proposal was never the subject of any disciplinary treatment.

ANSWER:  Moody admits that (1) after the faculty meeting at which Garrick advocated

for her proposal related to Moody's religious position on human sexuality, Davidhizar met with

Garrick, and (2) the male signatory to the written proposal was not the subject of any disciplinary

treatment. Except as specifically admitted, Moody denies the allegations of this paragraph.

42.     Complaint: On November 1, 2016, after two years as an Instructor at MBI, Ms. Garrick submitted a written application for an increase in rank to Assistant Professor.

ANSWER: Moody denies the allegations of this paragraph.

43.     Complaint: The position of Instructor is the lowest-paid and lowest-status position at MBI.

ANSWER: Moody denies the allegations of this paragraph.

44.     Complaint: To become an Assistant Professor, MBI requires the faculty member to have a Master's Degree or equivalent and a minimum of 12 years of full time experience in a field directly related to his or her primary teaching responsibilities. Once those requirements are met, MBI reviews three sets of criteria to determine whether to issue a promotion to a faculty member: Teaching Performance, Professional/Scholarly Status, and Service. Within each criterion.

ANSWER: Moody denies the allegations of this paragraph.

45.     Complaint: Ms. Garrick's background and performance fully qualified her for a promotion to Assistant Professor under all of MBI's requirements. She had a Master's Degree (and began working on a second advanced degree in 2016). She also had 15 years of experience in the Communications field.

ANSWER: Moody admits that Garrick communicated to Moody that she has a Master's

Degree, had begun working on a second Master's Degree in 2016, and had several years of non-

teaching experience in the communications field. Except as specifically admitted, Moody denies

the allegations of this paragraph.

46.     Complaint: During her two years as an Instructor, Ms. Garrick was required to perform work at the level of an Assistant Professor. Among many other duties, she developed and implemented six courses, including upper-level electives; created institution-wide initiatives like the publication of a new art and theology journal; developed an educational plan for ESL students; fulfilled all of her academic and professional duties; and actively participated in her department and the wider institution. Such duties were beyond the scope of the Instructor rank, based on Moody's own written policies.

ANSWER: Moody denies the allegations of this paragraph.

47.    Complaint:  Nevertheless, MBI denied Ms. Garrick's application, stating that she needed to "improve her fit within the division" – a clear reference to the hostility against Ms. Garrick as a result of her opposition to discrimination at the institution.

ANSWER:  Moody admits that it denied Garrick's request for accelerated consideration of an increase in rank to Assistant Professor in an email that stated, among other things, "This will also give you another year to improve your fit within the division, to develop collaboration skills, and to refine those areas that you have already managed once or twice."  Except as specifically admitted, Moody denies the allegations of this paragraph.

48.    Complaint:  MBI's retaliatory denial of Ms. Garrick's promotion application resulted in both a loss of income and the loss of professional development opportunities.

ANSWER:  Moody denies the allegations of this paragraph.

49.    Complaint:  Shortly thereafter, Ms. Garrick received an informal performance review from Mr. Strandt in which he congratulated her on "two years of excellent service" and stated that she was "concise, clear and engaging with the students" during a class he had observed her teaching. Mr. Strandt's glowing review further highlighted the disconnect between Ms. Garrick's excellent performance and MBI's denial of her application for a promotion.

ANSWER:  Moody admits that in late 2016, Strandt sent an email to Garrick "congratulating" her on "two years of excellent service" and stated that she was "concise, clear and engaging with the students" during a class he had observed her teaching.  Except as specifically admitted, Moody denies the allegations of this paragraph.

50.    Complaint:  In early 2017, Ms. Garrick was due to receive her formal two-year performance review. She initially met with Mr. Kammerzelt, who asked her if she wanted to stay at MBI. She responded that she did.

ANSWER:  Moody admits that in the first few months of 2017, Garrick was due to receive a formal performance review, and that she met with Kammerzelt, who asked her if she wanted to stay at Moody, in response to which Garrick said she did.  Except as specifically admitted, Moody denies the allegations of this paragraph.

51.    Complaint:  This led to a series of meetings, cancelled meetings, and emails with MBI administrators regarding Ms. Garrick's performance. Mr. Davidhizar told her she had

13

"performance and interpersonal issues," despite a lack of evidence of either. Mr. Kammerzelt told her she had been found to be performing "below standards" by Mr. Strandt, despite his earlier glowing reports. Mr. Kammerzelt also threatened to demote Ms. Garrick to teaching only General Education courses and to shift three of the courses she had developed into the hands of another full Communications professor.

ANSWER: Moody admits that Kammerzelt discussed Strandt's performance review of

Garrick with her in March or April 2017. Except as specifically admitted, Moody denies the

allegations of this paragraph.

52. Complaint: Finally, on March 30, 2017, Ms. Garrick met with Mr. Strandt for a final, formal performance review. He handed her a negative written performance evaluation – the first written criticism of her performance she had ever received at MBI – that was filled with inaccuracies and was not based on direct observations of her work. There was no mention of Ms. Garrick being non-aligned with the gender provisions of MBI's doctrinal statement.

ANSWER: Moody admits that (1) on or about March 30, 2017, Garrick met with Strandt

for a formal performance review, (2) Strandt handed to Garrick a performance evaluation that

included an overall rating of "Below Expectations," and (3) the performance evaluation did not

expressly mention Garrick's being non-aligned with the gender provisions of MBI's doctrinal

statement. Except as specifically admitted, Moody denies the allegations of this paragraph.

53. Complaint: On April 12, 2017, Ms. Garrick met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told her that she did not fit in and that she was not aligned with MBI's doctrinal statement as it related to gender roles in ministry. Mr. Davidhizar admitted that he heard Ms. Garrick state her egalitarian position during her October 2014 panel interview prior to MBI's decision to hire her.

ANSWER: Moody admits that on or about April 12, 2017, Garrick met with Davidhizar

and the Vice President of Human Resources and discussed Garrick's lack of alignment with

Moody's doctrinal statement as it related to gender roles in ministry. Except as specifically

admitted, Moody denies the allegations of this paragraph.

54. Complaint: On April 17, 2017, Ms. Garrick was officially terminated. MBI stated that she was required to continue teaching classes and performing her other job duties until the end of that semester, then stay on as a non-teaching faculty member for the Fall 2017 semester. Her last day of pay was December 31, 2017. On April 26, 2017, after Ms. Garrick spoke to

14

students and student reporters about her termination, MBI asked her to leave campus early and to turn in her computer and keys, stating that it would close out the semester for her.

ANSWER:   Moody admits that (1) on April 17, 2017, Garrick was informed that her Faculty Contract would not be renewed, (2) Moody initially asked Garrick to perform her teaching responsibilities until the end of the semester (i.e., early May), (3) in mid-April Garrick communicated to students and faculty about her termination, (4) Garrick requested that she be allowed to cancel, or have substitute teachers for, her remaining classes, (5) Moody granted Garrick's request to have substitute teachers for her remaining classes, permitted her to leave campus in late April, asked her to turn in her computer and keys, and required other faculty members to cover her duties through the end of the semester, and (6) without any legal obligation to do so, paid her severance pay through December 31, 2017.  Except as specifically admitted, Moody denies the allegations of this paragraph.

55.    Complaint:  Ms. Garrick filed an internal grievance on May 17, 2017 and went through MBI's grievance process in the summer of 2017. In her grievance document, she pointed out that MBI had hired her in 2014, renewed her contract for 2015, and renewed her contract for 2016 – all the while apparently pleased with her performance. It was only after she began advocating for female students who alleged violations of Title IX that MBI began to pressure her to quit, then fired her, purportedly because it had just realized she held an "egalitarian" view of Christianity.

ANSWER:   Moody admits that (1) Garrick filed an internal grievance on May 17, 2017, (2) Garrick went through Moody's grievance process in the summer of 2017, (3) in Garrick's grievance document, she pointed out that MBI had hired her in 2014, renewed her contract for the 2015-16 school year, and renewed her contract for the 2016-17.  Except as specifically admitted, Moody denies the allegations of this paragraph.

56.    Complaint: In fact, as alleged above, MBI knew from her resume and interviews that Ms. Garrick held an egalitarian view before it even hired her. MBI's decision was pretext for its true motives – discrimination and retaliation.

ANSWER:   Moody denies the allegations of this paragraph.

15

57.    Complaint:  MBI engaged in a variety of tactics to thwart any chance of Ms. Garrick succeeding in the grievance process. In her grievance document, she fully documented the discrimination and retaliation she had been subjected to. She also presented written testimony from 12 female students who reported violations ranging from sexual assault to harassment in the classroom and on the campus by both faculty members and fellow students. MBI ignored these testimonials and took no action to follow up.

ANSWER:  Moody denies the allegations of this paragraph.

58.    Complaint:  MBI denied Ms. Garrick's grievance on July 24, 2017. After Ms. Garrick's termination, MBI also terminated a female Full Professor and a female Assistant Professor who were members of Ms. Garrick's grievance committee and who had challenged MBI during that process.

ANSWER:  Moody admits that on July 24, 2017, Moody's President issued a memo

effectively denying Garrick's grievance at the final stage of review.  Except as specifically

admitted, Moody denies the allegations of this paragraph.

## FIRST CLAIM FOR RELIEF
### Retaliation in Violation of Title IX of the
### Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

59.    Complaint:  The plaintiff realleges each of the paragraphs set forth above.

ANSWER:  Moody realleges and incorporates by reference each of its responses to the

referenced paragraphs.

60.    Complaint:  Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...."

ANSWER:  Moody admits that 20 U.S.C. § 1681(a) begins, "No person in the United

States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under any education program or activity receiving Federal

financial assistance, except that . . ." and then lists numerous exceptions.  Except as specifically

admitted, Moody denies the allegations of this paragraph.

61.     Complaint:  Title IX also prohibits employment discrimination on the basis of sex at educational institutions receiving federal assistance.

ANSWER:  This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody denies that this paragraph accurately states the law as applicable to this case.

62.     Complaint:  MBI is subject to the requirements of Title IX.

ANSWER:  Moody is without knowledge of information sufficient to form a belief as to the truth of the allegations of this paragraph, including because Garrick does not identify to which "requirements of Title IX" she is alleging Moody is subject.  Further answering Moody denies that it is subject to or that it violated any provision of Title IX relevant to Garrick's claims.  Except as specifically admitted, Moody denies the allegations of this paragraph.

63.     Complaint:  Because Congress enacted Title IX to prevent use of federal dollars to support discriminatory practices, reporting incidents of discrimination is integral to Title IX enforcement.

ANSWER:  This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody denies that this paragraph accurately states the law as applicable to this case.

64.     Complaint:  Accordingly, persons who complain about sex discrimination have protection against retaliation and are provided a private right of action as part of the Title IX enforcement scheme.

ANSWER:  This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody denies that this paragraph accurately states the law as applicable to this case.

65.     Complaint:  Title IX prohibits retaliation against individuals who engage in protected activity, including good faith complaints of sex discrimination, opposing discriminatory practices through internal channels, and voicing concerns to superiors at the educational institution.

11534777.2

ANSWER:  This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody denies that this paragraph accurately states the law as applicable to this case.

66.  Complaint:  Ms. Garrick engaged in activity protected by Title IX, as alleged above.

ANSWER:  Moody denies the allegations of this paragraph.

67.  Complaint:  MBI retaliated against Ms. Garrick because of her protected activity, as alleged above, including, but not limited to, subjecting her to a hostile environment; subjecting her to discriminatory disciplinary action; denying her a promotion; and unlawfully terminating her.

ANSWER:  Moody denies the allegations of this paragraph.

68.  Complaint:  MBI's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

ANSWER:  Moody denies the allegations of this paragraph.

69.  Complaint:  Exemplary damages are warranted to prevent similar unlawful conduct by MBI, which is likely to recur.

ANSWER:  Moody denies the allegations of this paragraph.

70.  Complaint:  The plaintiff was severely damaged by MBI's conduct.

ANSWER:  Moody denies the allegations of this paragraph.

**SECOND CLAIM FOR RELIEF**
**Retaliatory Discharge under Illinois Law**

71.  Complaint:  The plaintiff realleges each of the paragraphs set forth above.

ANSWER:  Moody realleges and incorporates by reference each of its responses to the referenced paragraphs.

72.  Complaint:  In Illinois, it is unlawful for an employer to discharge an employee in retaliation for activities if such discharge is a violation of a clear mandate of public policy.

11534777.2

ANSWER: This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody denies that this paragraph accurately states the law as applicable to this case.

73.     Complaint: The tort of retaliatory discharge is an exception to the "at will" employment doctrine that otherwise applies to Illinois employees.

ANSWER: This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody admits the allegations of this paragraph.

74.     Complaint: The foundation of the tort of retaliatory discharge is the protection of public policy.

ANSWER: This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody denies that this paragraph accurately states the law as applicable to this case.

75.     Complaint: Ms. Garrick was terminated by MBI, in whole or in part, in retaliation for assisting MBI students with their complaints of discrimination, advocating on their behalf to the administration, complaining about courses being barred to female students, and reporting incidents of sex discrimination and harassment of both faculty and students to MBI.

ANSWER: Moody denies the allegations of this paragraph.

76.     Complaint: It is contrary to Illinois public policy for an educational institution to participate in, perpetuate, condone, cover up, or ignore sex discrimination and retaliation against its students or faculty. It is also against Illinois public policy for an educational institution to bar female students from participating in its courses of study.

ANSWER: This paragraph pleads a conclusion of law to which no response is required, but to the extent that a response is required, Moody denies that this paragraph accurately states the law as applicable to this case.

77.     Complaint: MBI's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Garrick's rights.

ANSWER: Moody denies the allegations of this paragraph.

78.     Complaint: Exemplary damages are warranted to prevent similar unlawful conduct by MBI, which is likely to recur.

ANSWER:  Moody denies the allegations of this paragraph.

79.     Complaint:  Ms. Garrick was severely damaged by MBI's conduct.

ANSWER:  Moody denies the allegations of this paragraph.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract under Illinois Law**

80.     Complaint:  The plaintiff realleges each of the paragraphs set forth above.

ANSWER:  Moody realleges and incorporates by reference each of its responses to the

referenced paragraphs.

81.     Complaint:  The terms of Ms. Garrick's employment were governed by a valid
and enforceable Faculty Contract, which was entered into by both Ms. Garrick and MBI on a
yearly basis. See Exhibit A (2017 Faculty Contract).

ANSWER:  Moody admits that the terms of Garrick's employment were governed in part

by a valid and enforceable Faculty Contract, which was entered into by both Ms. Garrick and

Moody for the periods of December 1, 2014 to June 30, 2015, of July 1, 2015 to June 30, 2016,

and of July 1, 2016 to June 30, 2017, and that Exhibit A to the Complaint is a copy of Garrick's

2016-17 Faculty Contract.  Except as specifically admitted, Moody denies the allegations of this

paragraph.

82.     Complaint:  The Faculty Contract explicitly incorporates by reference two
additional documents: MBI's Faculty Manual and MBI's Employee Information Guide.

ANSWER:  Moody admits that the Faculty Contract states that " . . . this contract will be

binding on both parties . . . unless terminated for cause, in which case the procedures of

termination stated in the current *Faculty Manual* and *Employee Information Guide* will be

followed by both parties."  Except as specifically admitted, Moody denies the allegations of this

paragraph.

83.     Complaint:  The Faculty Manual and Employee Information Guide are promises
by MBI to abide by a set of rules that benefit the employee. They were disseminated to Ms.

11534777.2

Garrick in the manner of an offer, which she accepted when she entered into the Faculty Contract with MBI.

ANSWER: Moody denies the allegations of this paragraph.

84. Complaint: The Faculty Contract states that "MBI and the faculty member mutually agree that this contract will be binding on both parties except as modified by the mutual consent of the Trustees and/or the President and the faculty member, or unless terminated for cause, in which case the procedures of termination stated in the current Faculty Manual and Employee Information Guide will be followed by both parties." See Exhibit A.

ANSWER: Moody admits the allegations of this paragraph.

85. Complaint: In turn, the Faculty Manual's section designated "Termination" states as follows: "[i]f for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for such serious violations of Institute policy which may result in immediate termination." See Exhibit B (excerpt from Faculty Manual).

ANSWER: Moody denies the allegations of this paragraph, including that the Faculty

Manual's section designated "Termination" states as quoted and that Exhibit B is a copy of the

applicable version of the Faculty Manual.

86. Complaint: On April 18, 2017, MBI informed Ms. Garrick that it had decided not to renew her contract for the next academic year, but that she would continue to be employed until December 31, 2017. She was informed that she was expected to continue teaching her classes until the end of the semester.

ANSWER: Moody admits that on April 18, 2017, MBI informed Garrick that it had

decided not to renew her contract for the next academic year and initially asked her to continue

teaching her classes until the end of the Spring semester (i.e., early May). Except as specifically

admitted, Moody denies the allegations of this paragraph.

87. Complaint: Because Ms. Garrick was not terminated "immediately," MBI was contractually obliged to follow the termination provisions set forth in the Faculty Manual by informing her by the last Friday in November prior to a Spring termination.

ANSWER: Moody denies the allegations of this paragraph.

88. Complaint: MBI failed to do so.

21

ANSWER:  Moody denies that it was contractually obliged to inform Garrick by the last

Friday in November prior to a Spring termination and therefore denies the allegations of this

paragraph.

89.     Complaint:  MBI therefore breached its contract with Ms. Garrick by failing to
notify her by the last Friday in November of the fall semester prior to her last Spring semester of
employment, as required by the termination provisions of the Faculty Manual.

ANSWER:  Moody denies the allegations of this paragraph.

90.     Complaint:  MBI cannot contend that Ms. Garrick engaged in a violation of its
policy that warranted "immediate termination," as it retained her for several months after its
decision not to renew her contract, requiring her to teach classes and otherwise continue to
perform her job duties for a period of time.

ANSWER:  Moody denies the allegations of this paragraph.

91.     Complaint:  Under the terms of the Faculty Contract and the termination
provisions of the Faculty Manual referenced and incorporated therein, MBI is obligated to pay
Ms. Garrick for two additional semesters she is owed under the contractual terms.

ANSWER:  Moody denies the allegations of this paragraph.

## AFFIRMATIVE AND/OR ADDITIONAL DEFENSES

Moody, for its affirmative and/or additional defenses in this action, alleges and states as

follows:

1.      Garrick's claims are barred by the Free Exercise Clause and the Establishment

Clause of the First Amendment to the U.S. Constitution.

2.      Garrick's claims are barred by the legal doctrines derived from the constitutional

protection of religious freedom, including, but not limited to, the "ministerial exception," the

"ecclesiastical abstention" doctrine, the "church-autonomy" doctrine, and the "deference rule"

doctrine.

3.      Garrick's claims are barred by the freedom of association protected by the First

Amendment to the U.S. Constitution.

4.      Garrick's claims are barred by the federal Religious Freedom Restoration Act.

5.      Garrick's claims are barred by the Religious Freedom provisions of the Illinois Constitution (Illinois Constitution of 1970, art. I, § 3; *see also* Preamble).

6.      Garrick's claims are barred by the Illinois Religious Freedom Restoration Act.

7.      Title IX violates the First Amendment of the United States Constitution to the extent that it purports to make Moody's alleged conduct unlawful.

8.      The regulations promulgated under Title IX are unconstitutional to the extent they purport to require Moody to apply for a religious exemption under Title IX.

9.      Garrick's Title IX claim is barred by Title IX's religious exemption.

10.     Garrick's Title IX claim is preempted by, or is barred because relief is otherwise provided under, Title VII of the Civil Rights Act of 1964.

11.     Garrick's Title IX claim is time-barred, in whole or in part, by the applicable statutes of limitation and/or by other time limitations imposed by law.

12.     Garrick's Title IX retaliation claim is barred because Garrick did not hold a reasonable belief that Moody engaged in any conduct that was unlawful under Title IX.

13.     Garrick's Title IX retaliation claim is barred because she never opposed any practices that she reasonably believed to be unlawful under Title IX.

14.     Garrick's Title IX retaliation claim is barred because the relevant decisionmaker(s) did not have knowledge that Garrick engaged in the alleged protected activity.

15.     Garrick's retaliatory discharge tort claim under Illinois law is barred because Garrick did not hold a reasonable belief that Moody engaged in any conduct that violated a clearly mandated public policy of Illinois.

16.     Garrick's retaliatory discharge tort claim under Illinois law is barred because she never opposed any practices that she reasonably believed to violate a clearly mandated public policy of Illinois or that rendered a related discharge a violation of a clearly mandated public policy.

17.     Garrick's retaliatory discharge tort claim under Illinois law is barred because the relevant decisionmaker(s) did not have knowledge that Garrick engaged in the alleged protected activity.

18.     Garrick's retaliatory discharge tort claim under Illinois law is barred because her exclusive remedy for the acts and harm alleged lies under the Illinois Human Rights Act.

19.     Garrick's retaliatory discharge tort claim under Illinois law is barred because statutory relief for the alleged wrongful conduct is arguably otherwise available.

20.     Garrick's retaliatory discharge tort claim under Illinois law is barred because she was employed under an employment contract with Moody and/or because her claim alleges the nonrenewal of an employment contract.

21.     Garrick failed to substantially perform under the Faculty Contract, thereby excusing Moody from any further obligations under the Faculty Contract.

22.     Garrick committed a material breach of the Faculty Contract, thereby excusing Moody from any further obligations under the Faculty Contract.

23.     Garrick's breach-of-contract claim is barred, in whole or in part, because Moody's duties, if any, had not yet been triggered as the result of one or more conditions precedent not occurring.

24.     Garrick's claims are barred, in whole or in part, under the doctrine of unclean hands.

24

25.    Garrick's claims are barred, in whole or in part, under the doctrine of waiver.

26.    Garrick's claims are barred, in whole or in part, under the doctrine of equitable estoppel.

27.    Garrick's claims are barred, in whole or in part, under the doctrine of judicial estoppel.

28.    Garrick's claims are barred, in whole or in part, under the doctrine of laches.

29.    Garrick's claims are barred, in whole or in part, because Garrick failed to exercise good faith in its dealings with Moody.

30.    Garrick's claims are barred, in whole or in part, because Moody acted reasonably and in good faith at all material times, based on the relevant facts and circumstances known by it at the time it acted.

31.    Even if it were determined that Moody impermissibly considered Garrick's gender, alleged protected activity, or any unlawful factor in its decision to take an adverse employment action with respect to Garrick, Moody nevertheless would have taken the same action in the absence of the impermissible motive(s), thus barring Garrick's claim in whole or in part.

32.    Moody exercised reasonable care to prevent and correct promptly any alleged unlawful harassment in the workplace, and Garrick unreasonably failed to take advantage of the preventative or corrective opportunities provided by Moody or to avoid the alleged harm otherwise.

33.    Garrick's claims are barred in whole or in part by the after-acquired evidence doctrine.

11534777.2

34.     Garrick's claims are barred in whole or in part because Moody would not have hired Garrick had she not misrepresented at the time of her hire her (lack of) alignment with Moody's Doctrinal Statement.

35.     Garrick's claims for damages are barred to the extent she failed to mitigate her damages.

36.     To the extent Garrick suffered any damages as alleged, such damages were caused or contributed to by Garrick's own actions or the actions of others over whom Moody exercised no control.

37.     Moody undertook good faith efforts to comply with the applicable law, including by making good faith efforts to enforce an anti-discrimination and anti-retaliation policy, thus barring Garrick's claim for punitive damages.

38.     Moody took prompt and adequate remedial action in response to any unlawful discrimination or harassment directed at Garrick.

Dated:  April 6, 2018                                    Respectfully submitted,

                                                        s/  Christian Poland
                                                        One of the Attorneys for Defendant
                                                        The Moody Bible Institute of Chicago

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

<u>CERTIFICATE OF SERVICE</u>

Christian Poland, one of the attorneys for Defendant The Moody Bible Institute of

Chicago states that on April 6, 2018, he served a true and correct copy of the foregoing

*Defendant Moody Bible Institute's Answer and Affirmative/Additional Defenses to Plaintiff's*

*Complaint* upon counsel for Plaintiff by causing said document to be delivered to her via the

Court's ECF system, addressed as follows:

> Jamie S. Franklin
> The Franklin Law Firm LLC
> 53 W. Jackson Blvd., Ste. 803
> Chicago, IL  60604
> jsf@thefranklinlawfirm.com


s/ Christian Poland_____