IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK,<br><br>                 Plaintiff,<br><br>v.<br><br>MOODY BIBLE INSTITUTE,<br><br>                 Defendant. | Case No. 1:18-cv-00573<br><br>Judge John Lee<br>Magistrate Judge Young Kim |

**DEFENDANT MOODY BIBLE INSTITUTE'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 1

    A. This Court May Properly Consider All of the Attachments to Moody's Motion to Dismiss Under Rule 12(b)(6) .................................................................................. 1

    B. Moody's Motion Is Also a Rule 12(b)(1) Motion as to Its Various First Amendment Defenses, and by Failing to Provide Any Rebuttal Material, Garrick Concedes the Facts Described in the Motion ............................................................ 3

    C. Garrick's Title IX Claim Is Barred by the Ministerial Exception ......................... 4

    D. Garrick's Title IX Claim Is Barred by Title IX's Religious Exemption ................ 8

    E. Garrick's Title IX Claim Is Preempted by Title VII ........................................... 10

    F. Garrick's Title IX Claim Fails Because She Has Not Adequately Pleaded the "Causal Connection" Element of Her Retaliation Claim ..................................... 11

    G. Garrick's Breach-of-Contract Claim Is Barred by the Ministerial Exception ...... 12

    H. Garrick's Breach-of-Contract Claim Also Fails Because Her Complaint Does Not Identify a Bargained-For Exchange or Plead Facts Defeating the Faculty Manual's Disclaimers ............................................................................................................ 15

III. CONCLUSION ................................................................................................................. 15

I.  INTRODUCTION

Garrick's response to Moody's Motion to Dismiss (the "Motion") tries mightily to avoid the constitutional bars to her claims, but fails. Garrick also fails to rebut the several other Rule 12(b)(6) problems with her Complaint. Finally, Garrick has appropriately agreed to the dismissal of her state-law retaliatory discharge claim (*see* Resp. at 15). Thus, Garrick's Complaint should be dismissed in full.

II.  ARGUMENT

    A.  *This Court May Properly Consider All of the Attachments to Moody's Motion to Dismiss Under Rule 12(b)(6)*

Garrick objects to the Court's consideration of documents other that her Complaint, but her reliance on Rule 12(d)'s statement that if "matters outside the pleadings" are considered the motion should be treated as one for summary judgment is misplaced. As the cases cited by Moody explain (*see* Mot. at 1 & n.1), documents that are referred to in the Complaint and are central to Garrick's claims are treated as *within* the pleadings and thus may be considered in full on a Rule 12(b)(6) motion. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." [quotation marks omitted]).[1]

Tellingly, Garrick does not contest the centrality, relevance, authenticity, or accuracy of the exhibits to Moody's motion. And correctly so. The documents are all important to her

---

[1] *See also Hecker v Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (in ruling on a motion to dismiss, district court did not err in relying on documents which were referred to in the complaint, which were publicly available, and/or which, while not referred to in the complaint, shed light on the relationship between the parties; the Seventh Circuit "has been relatively liberal in its approach to the rule articulated in *Tierney* and other cases"); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (a court may properly consider a document in ruling on a motion to dismiss "even if the document [is] merely referred to in the complaint, provided it [is] a concededly authentic document central to plaintiff's claim (the usual example is a contract, in a suit for breach of contract)"); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 734-35 (7th Cir. 2002) (district court properly considered liability limitation that was arguably incorporated by reference in contract in dispute).

1

claims (and Moody's defenses), and most of them were authored or signed by Garrick. In fact (and ironically), Garrick even relies in her response on the documents Moody attaches to its Motion—the very documents that she claims should not be considered. (*See* Resp. at 5, relying on Mot. Ex. C at 4 [the Doctrinal Statement]; Resp. at 8, relying on Mot. Ex. K at 2 [Garrick's Housing Allowance Application]; Resp. at 14, relying on Mot. Ex. E and F [Garrick's Faculty Contracts].) Thus, the documents are properly considered on Moody's Rule 12(b)(6) Motion.

Additionally, Garrick herself relies on various sources beyond the face of her Complaint in responding to Moody's motion. For example, at several points she relies on "archived pages from Moody's website" and contends the Court may take "judicial notice of [them] if the information 'can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned,'" citing *Hill v. Capital One Bank*. (Resp. at 5 & n.2; *see also id*. at 11.)

Finally, the fact that several cases involving the ministerial exception and other constitutional defenses have been decided on summary judgment (and after discovery) does not show that such is the *required* course, as Garrick argues (Resp. at 3 & n.1). Cases reach summary judgment for a variety of reasons, including because some defendants do not even move to dismiss claims under Rule 12. In any event, even if ministerial-exception defenses are not typically adjudicated on a Rule 12(b)(6) motion, this case satisfies Rule 12(b)(6)'s (and Rule 12(b)(1)'s) requirements.[2]

---

[2] Moody objects to the conversion of its motion to one for summary judgment. Thus, if the Court decides that it cannot grant Moody's motion based on Garrick's Complaint and the documents properly attached to Moody's motion to dismiss, the Court should order the parties to proceed with discovery limited to the constitutional defenses Moody has raised, after which Moody will file the appropriate motion on such defenses. *See Collette v. Archdiocese of Chicago*, 200 F. Supp. 3d 730, 735 (N.D. Ill. 2016) (after finding that it could not grant the defendants' motion to dismiss based on the ministerial exception, the court ordered a status hearing "to set a limited discovery and dispositive motion schedule on Defendants' ministerial-exception defense, in order to resolve that issue at the earliest opportunity"); *Crawford v. United States*, 796 F.2d 924, 927 (7th Cir. 1986) (improper to convert Rule 12(b)(1) motion to motion for summary judgment).

> B. *Moody's Motion Is Also a Rule 12(b)(1) Motion as to Its Various First Amendment Defenses, and by Failing to Provide Any Rebuttal Material, Garrick Concedes the Facts Described in the Motion*

Moody's motion to dismiss, which is also based on the "ecclesiastical abstention," "church-autonomy," and "deference" doctrines is appropriately brought under Rule 12(b)(1). Under such doctrines courts have *no jurisdiction* to adjudicate matters relating to religious doctrine, the termination of employees based on matters of religious belief, or the religiously motivated reasons for the termination of a religious organization's employee (or that such reasons are allegedly pretext for other reasons). *See Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 Fed. App'x 926, 927-29 (11th Cir. 2018) (former employee's breach-of-contract claim against church denomination for terminated retirement benefits was properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because ecclesiastical abstention doctrine prevented court from evaluating denomination's view of the propriety of plaintiff's conduct).[3] On a Rule 12(b)(1) motion, the plaintiff's complaint is *not* presumed to be true, and by failing to respond to Moody's Rule 12(b)(1) Motion with admissible rebuttal material, Garrick concedes the factual foundation offered for Moody's Motion. *See Global Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810, 814-15 (6th Cir. 2015); *Crawford v. United States*, 796 F.2d 924, 927 (7th Cir. 1986).

---

[3] *See also Kavanagh v. Zwilling*, 997 F. Supp. 2d 241 (S.D.N.Y. 2014) (priest's libel per se claim over press release stating he engaged in sexual abuse as determined by church court dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and under Rule 12(b)(6) based on ecclesiastical abstention doctrine; adjudicating claim would require evaluation of church's decisions regarding matter of church discipline; ecclesiastical abstention doctrine has typically been treated as a Rule 12(b)(1)/jurisdictional issue); *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 120 (D.D.C. 2007) (dismissing for lack of subject matter jurisdiction missionary's breach-of-contract claim because "[d]etermining whether [religious organization's] termination of [plaintiff] fell within the[] contractually-permitted parameters— or whether, as [plaintiff] alleges, her termination was motivated by other concerns—would involve inquiring into a core matter of ecclesiastical self-governance not subject to interference by a state"); Mot. at 8-9 & n.7 (citing additional cases).

3

C. *Garrick's Title IX Claim Is Barred by the Ministerial Exception*

Garrick's leading argument for why the ministerial exception does not bar her Title IX claim is that "Moody forbids women from acting as ministers . . . so it cannot invoke the ministerial exception as a defense." (Resp. at 5.) Her argument is factually, logically, and legally flawed. First, Garrick misdescribes Moody's specific theological view, which is only that the "church offices" of "elder/pastor" "should be limited to the male gender" (Mot. at 4 n.2 & Ex. C at 4). In fact, Garrick admits in her Complaint that Moody's view is simply that "the office of *pastor* is reserved for male candidates." (Compl. ¶ 17 [emphasis added].) A view that only men may serve as "elders" or "pastors" is quite different from the question of whom Moody considers to be engaged in its *religious ministry*, i.e. who is a "minister" for purposes of the "ministerial exception." *See Hosanna-Tabor*, 565 U.S. at 199 (Alito, J. and Kagan, J., concurring) (ministerial exception applies to any employee who "serves as a messenger or teacher of its faith"). Second, Garrick's argument illogically assumes that if a subset of "ministerial" positions (here, pastors) is theologically reserved for men, then the entire category of ministerial positions must be reserved for men. This is improper. *See Rayburn v. General Conf. of Seventh-Day Adventists*, 772 F.2d 1164 (4th Cir. 1985) (fact that religious denomination would only ordain men for certain religious positions did not mean female plaintiff's position could not be covered by ministerial exception; in fact, the dispute showed that religious issues would entangle the court if adjudication proceeded).[4] Third, Garrick's argument is legally flawed because Moody has not taken "inconsistent litigation positions" as Garrick claims (Resp. at 5). Moody has never before been in litigation on this issue or with Garrick, so it could hardly

---

[4] Garrick's argument is no different from positing that because only men can be priests in the Catholic Church, no other role within a Catholic entity can be covered by the ministerial exception. This is plainly not the case. *See, e.g., Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003) ) (Hispanic Communications Director's Title VII discrimination claims dismissed under Rule 12(b)(1) based on ministerial exception).

have taken a prior inconsistent litigation position.

Furthermore, when Garrick recognizes that the path required by *Hosanna-Tabor*, *Grussgott*, and other ministerial-exception cases does not lead to her desired destination, she quickly gets off track and seeks to chart a new course. Rather than follow well-established legal principles, she incorrectly asserts that a "four-step" analysis is required to determine whether the ministerial exception applies (Resp. at 4, 6). While *Hosanna-Tabor* discussed four important considerations in that case, it expressly declined to delineate a "rigid formula" for deciding when an employee is a minister. *See Hosanna-Tabor*, 565 U.S. at 190, 192. Additionally, the Seventh Circuit in *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655 (7th Cir. 2018), noted that "the same four considerations need not be present in every case" and cited approvingly a case finding that the ministerial exception applied when only two of the four considerations mentioned in *Hosanna-Tabor* were present. *See id*. at 658.

As to the application of the ministerial exception, Garrick misses the mark as well. Garrick criticizes Moody's reliance on its Faculty Manual and Employee Information Guide (the former of which is the foundation for Garrick's breach-of-contract claim and the latter of which she acknowledges applied to her as an employee) as not specific enough about the "work she actually performed." (Resp. at 6.) But *Hosanna-Tabor* counsels *against* a granular duties analysis under the ministerial exception. *See* 565 U.S. at 193-94. And, in fact, the Faculty Manual and Employee Information Guide unequivocally confirm the religious nature of the Moody's operations and programming and the central religious role that every faculty member plays at Moody. (*See* Mot. Ex. A at 1-7, 37 & Man. Ex. G; Mot. Ex. B at 1-2, 4-5.) Garrick also claims that the subjects she taught were "secular, not religious," that "her syllabi were not required to be reviewed or approved for religious content," and that "she never led a religious

5

service." (Resp. at 7.) These are the very arguments that the plaintiffs in *Hosanna-Tabor* (an elementary school teacher who taught nearly all "secular" subjects), *Grussgott* (a non-Jewish elementary school teacher who taught Jewish and Hebrew studies), and *Alicea-Hernandez* (the director of communications to the Hispanic community for the Catholic bishop) made, *and lost*. The ministerial exception depends not on quantitative analysis of the "secular" or "religious" nature of the duties performed or the volume of time spent on them, but on the *role* the employee plays in the religious employer's mission and ministry. *See* 565 U.S. at 193-94; *Corporation of Presiding Bishop of Church of Jesus Latter-day Saints v. Amos*, 483 U.S. 327, 343 (1987) ("What makes the application of a religious-secular distinction difficult is that the character of an activity is not self-evident."); *Grussgott*, 882 F.3d at 660 (rejecting non-Jewish teacher's contention that she only taught Jewish history and religious traditions from a "cultural" and "historical" perspective, not as a form of religious training).[5]

Garrick tries to downplay her highly relevant statements in her employment application about the inseparable nature of religious faith and even "secular" subjects for her and for Moody:

> Education—human wisdom [i.e., "secular" subjects]—must remain inextricably bound to the spiritual formation of each student. Christ being formed in us, or a growing, intimate relationship with Jesus, must remain at the center of the

---

[5] Garrick or her counsel (or both) gravely misunderstand (or misrepresent) the nature of Moody when the response asserts, without support, that "[i]t is undisputed that Moody had both a seminary and a secular undergraduate program of study." (Resp. at 6.) On the contrary, Moody is a *bible* school, has no "secular undergraduate program," trains all of its students for *Christian ministry*, and requires every one of its students, both undergraduate and graduate, to take a majority of all course work in theological or ministry-related classes. (*See* Mot. Ex. A at 2 ["The mission of the Undergraduate Division of Moody . . . is to provide a Bible-centered education that enables students to know Christ and serve Him through His Church in vocational ministry."]; Mot. Ex. A at 3-5 ["Undergraduate Values and Outcomes," which discusses the pervasive theological and spiritual content of the undergraduate program]; Mot. Ex. A at 6-8 ["Educational Philosophy," which also discusses the pervasive theological and spiritual content of the undergraduate program].)

Additionally, it is also odd for Garrick to argue that she "was not required to complete any religious course of study or to demonstrate any religious knowledge to be hired." (Resp. at 7.) As someone who identifies herself as an "ordained minister" and who holds a master's degree from *Fuller Theological Seminary* (*see* Ex. D at 6), Garrick plainly had completed an extensive religious course of study prior to her hiring.

6

> message I communicate as a professor of communications. I recognize that I would not simply be a purveyor of information, but a model of discipleship.

(Mot. Ex. D at 5; *see also* Mot. Ex. D at 6 [Garrick writes, "I no longer see a false dichotomy between creative writing and ministry, but understand that the two are actively integrated."].) Garrick claims this was merely a "descri[ption] [of] her background and interests" and "sheds no light on the factors the Supreme Court has asked lower courts to evaluate." (Resp. at 7.) In fact, however, this is one of the central types of evidence that is relevant. In *Hosanna-Tabor*, the Court expressly relied on the facts that the teacher "held herself out as a minister," said "God is leading me to serve in the teaching ministry," and "claimed a special housing allowance on her taxes that was only available to employees earning their compensation in the exercise of ministry." 565 U.S. at 191-92.

Garrick also tries to avoid the binding effect of her representations made in the context of her ministerial housing allowance under federal tax law by citing a provision in Moody's Housing Allowance Application which merely makes clear that Garrick, not Moody, would be the one "certif[ying] that the services performed by [Garrick] for Moody qualify as 'ministerial services' as defined by [the] Treasury Reg[ulations]." (Mot. Ex. K at 2.) The fact that Moody made this clear in its application cannot possibly be construed as an admission by Moody that all such persons were *not* engaged in "ministerial services," as Garrick seeks to argue (Resp. at 8). Garrick again appears desperate to avoid the implications of her representations, and loses credibility with illogical arguments like this one.

When Garrick attempts to dodge the case-controlling fact that Moody gave an unequivocally religious reason for not renewing her faculty contract (i.e., her clear lack of alignment with the Doctrinal Statement), she only further demonstrates how the ministerial exception applies. Her response is not (and has never been) that she was in fact in alignment

7

with Moody's views, so she concedes the validity of Moody's (religious) basis for her termination. (Resp. at 8-9.) Instead, Garrick argues that *three and a half years prior*, in her pre-hire interviews, she mentioned to some interviewers that she was an "egalitarian Christian" (Compl. ¶¶ 14, 53, 56), and from this she argues that Moody's reason for her termination is "pretextual" (Resp. at 9; Compl. ¶ 56).[6] But as shown at length in Moody's Motion, pretext cannot even be explored when a religious employer discharges an employee whose position it considers to be "ministerial." *See* 565 U.S. at 194-95 (courts cannot proceed to analyze alleged pretext, because that "misses the point of the ministerial exception").[7]

In sum, Garrick cannot avoid the application of the ministerial exception to her Title IX claim, and Moody's Motion should therefore be granted.

D.     *Garrick's Title IX Claim Is Barred by Title IX's Religious Exemption*

Garrick's main response to Moody's argument that Title IX's statutory religious exemption (20 U.S.C. § 1681(a)(3)) bars her Title IX claim is that 34 C.F.R. § 106.12 (the "Regulation") required Moody's President to submit a written statement to the Department of Education (DOE) stating how the present application of Title IX conflicts with Moody's religious tenets. (Resp. at 11.) There are five problems with Garrick's argument. First, the Regulation only applies to the similar exemption in the *regulations*; it does not purport to govern

---

[6] Note that Garrick does not even try to reconcile her statement that she verbally communicated a position contrary to the Doctrinal Statement during the interview process with the fact that she submitted a *signed written statement* in her employment application representing that she agreed in full with the Doctrinal Statement without "private reinterpretation, . . . disclaimers, clarification, or personal exceptions" (*see* Mot. Ex. D at 2), and her verification of the same in writing at least four times thereafter (*see* Mot. Ex. E-H).

[7] *See also Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 202-04 (2d Cir. 2017) (the religious employer's given reason for the adverse action is irrelevant if the employee was a "minister" within the meaning of the ministerial exception); *Sterlinski v. Catholic Bishop of Chicago*, 203 F. Supp. 3d 908 (N.D. Ill. Aug. 23, 2016) (the religious "employer's alleged reason for the adverse employment action plays no role in the [ministerial] exception's applicability"); *Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d 668, 673 (N.D. Ill. 2012) (the reasons for the religious employer's adverse action are immaterial if the ministerial exception applies).

the *statutory* exemption, which is the controlling law. *See Hall v. Lee College, Inc.*, 932 F. Supp. 1027, 1033 (E.D. Tenn. 1996). Second, the DOE's guidance makes clear that "[a]n institution's exempt status is not dependent upon its submission of a written statement to OCR [Office of Civil Rights]." U.S. DOE, Office of Civil Rights, Exemptions from Title IX, https://www2.ed.gov/about/offices/list/ocr/docs/t9-rel-exempt/index.html. Third, the Regulation does not apply (and could not logically apply) to *retaliation* claims. The Regulation states:

> (b) Exemption. An educational institution which wishes to claim the exemption set forth in paragraph (a) of this section, shall do so by submitting in writing to the Assistant Secretary a statement by the highest ranking official of the institution, *identifying the provisions of this part* which conflict with a specific tenet of the religious organization.

34 C.F.R. § 106.12 (emphasis added). As Garrick admits, her claim is one for *retaliation*, which is a court-created claim that the "Supreme Court first recognized in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005)." (Resp. at 10.) Thus, there is no regulatory (or statutory) "provision" of Title IX on which Garrick is relying as to which Moody supposedly should have submitted a written objection to the DOE, and thus the Regulation has no application.[8] Fourth, the Regulation was adopted in 1980 and thus it could not have been intended to require religious institutions to seek exemption from retaliation claims, which were not even recognized by the Supreme Court until 2005. Fifth, the Regulation is unconstitutional to the extent it purports to require religious institutions to "apply for" the constitutionally required religious exemption under Title IX. *Cf. Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (Free Exercise Clause protects religious persons from unnecessary burdens and unequal treatment). Therefore, the Regulation does not defeat Moody's entitlement to the protection of

---

[8] Garrick's view would have the bizarre result of requiring every religious institution to speculate in advance about all possible protected activity that its students or employees might assert was protected by Title IX and then send that lengthy list of possible issues to the DOE stating that if any student or employee were to raise such an issue, the institution would claim the religious institution exemption under Title IX.

Title IX's religious exemption.

As to Garrick's contention that "Moody's website concedes . . . that it 'expects members of the Moody community to comply with legal requirements' of Title IX" (Resp. at 11), a general statement of compliance with nondiscrimination laws does not in any way forfeit religious-freedom protections. *See, e.g., Grussgott*, 882 F.3d at 658 ("the school's nondiscrimination policy does not constitute a waiver of the ministerial exception's protections" and "a religious institution does not waive the ministerial exception by representing itself to be an equal-opportunity employer").[9]

Thus, given that Garrick's sole arguments regarding the applicability of Title IX's religious exemption are based on the inapplicable Regulation and Moody's general compliance with Title IX (Resp. at 11), the exemption bars her Title IX claim and it should be dismissed.

    E.    *Garrick's Title IX Claim Is Preempted by Title VII*

Garrick's response to Moody's preemption argument misses the mark in a few respects. First, she argues that preemption cannot apply because "She has not asserted a sex discrimination claim on her own right and has not brought a Title VII claim." (Resp. at 12.) But, as Garrick's EEOC Charge of Discrimination plainly shows, she is pursuing Title VII claims of sex discrimination, religious discrimination, and retaliation against Moody based on the same adverse employment actions raised in her Complaint. (*See* Mot. Ex. L.) If Garrick simply means that she has not (yet) asserted her Title VII claims *in this action*, such argument holds no water. Preemption does not depend upon whether the party has *asserted in the action* a claim under the statute which preempts the claim brought, but on the fact that the allegations asserted in the

---

[9] *See also Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006) (affirming 12(b)(6) dismissal of Title VII claims of gender discrimination and retaliation brought by female Catholic university chaplain, and rejecting the plaintiff's claims that "acceptance of state and federal funds with conditions limiting discrimination" and "publicly representing itself as an equal opportunity employer" constituted a waiver of institutions constitutional religious freedom protections).

action are *covered by* the statute that preempts it. *See Lakoski v. James*, 66 F.3d 751, 753, 755-58 (5th Cir. 1995) (preemption does not depend on whether the plaintiff has *asserted* a claim under the preempting statute; Title IX claim preempted by Title VII even though the plaintiff had not brought a Title VII claim in the court action or before the EEOC). If Garrick means that she has no bona fide claims to bring under Title VII, then she should immediately dismiss her EEOC Charge as unfounded. Second, Garrick apparently did not review the case cited by Moody when she claims that Moody is unable to provide "a single authority so holding" and that Moody's cited case "says nothing whatsoever about preemption." (Resp. at 12.) The *Slabisak* case cited by Moody does in fact deal with this exact issue, and a copy is attached for the Court's (and Garrick's) reference. *See Slabisak v. Univ. of Tex. Health Sci. Ctr.*, No. 4:17-CV-597, 2018 WL 1072511 at *2-3 (E.D. Tex. Feb. 27, 2018) (attached as Ex. M).[10] Other cases also hold that Title VII preempts employment-related Title IX claims. *See, e.g.*, *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995) (vacating jury award in favor of assistant professor denied tenure under Title IX because such claims are preempted by Title VII); *Howard v. Board of Educ. of Sycamore Community Unit Sch. Dist. No. 427,* 893 F. Supp. 808 (N.D. Ill. 1995) (teacher's Title IX claims of discrimination and retaliation were entirely preempted by Title VII).[11]

> F.      *Garrick's Title IX Claim Fails Because She Has Not Adequately Pleaded the "Causal Connection" Element of Her Retaliation Claim*

Garrick's response recites the elements of a Title IX claim, including that she must plead

---

[10] There appears to be a second decision in the *Slabsiak* case issued on the same day regarding a co-defendant, which Garrick's counsel may have erroneously pulled up on *Lexis* (*see* Resp. at 12 [citing a Lexis decision]), instead of pulling up the specific case cited by Moody on *Westlaw* (*see* Mot. at 10).

[11] Moody acknowledges that the district court *Burton* case cited by Garrick stands for the proposition that Title VII does not preempt a Title IX retaliation claim if the claim is based on protected activity that is barred by Title IX but not by Title VII, such as an internal complaint solely about discrimination against non-employee students. If this Court decides to follow *Burton*, it must still grant Moody's motion to dismiss as to any alleged protected activity that is about sex discrimination or harassment against Moody employees, which is covered by Title VII.

11

a causal connection between her alleged protected activity (i.e., assisting a student with an internal complaint) and the non-renewal of her faculty contract (Resp. at 10), but never addresses Moody's argument that she has not alleged an adequate "causal connection." All Garrick alleges is *temporal sequence* (i.e., the adverse action occurred after the protected activity); she does not allege that Moody communicated that the nonrenewal was because of her protected activity or any other evidentiary connection. (*See* Compl. ¶¶ 60-68.) To rely on temporal sequence alone to suggest causation, the temporal connection must be no more than a few months between the protected activity and the adverse employment action. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (temporal proximity must be at most a few months to suggest causation); *Reid v. Neighborhood Assistance Corp.*, 749 F.3d 581 (7th Cir. 2014) (termination of plaintiffs just days after their protected activity still did not permit inference of causation); *Teruggi v. CIT Group/Capital Finance, Inc.,* 709 F.3d 654 (7th Cir. 2013) (causation element was lacking where protected activity occurred 18 months prior to adverse action); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval was insufficient to create a material issue regarding causation). Here, Garrick alleges that she assisted the complaining student from January 2016 to April 2016 (*see* Compl. ¶¶ 24, 27, 32, 36), but Moody decided not to renew her Contract in April *2017* (*see* Compl. ¶ 54), which was *12 months after* her last assistance to the student. A multi-month gap between the alleged protected activity and the adverse employment action fails to state a claim as a matter of law.

      G.      *Garrick's Breach-of-Contract Claim Is Barred by the Ministerial Exception*

Garrick argues that her breach-of-contract claim is not barred by the ministerial exception because her claim "has nothing to do with MBI's reasons for firing her" and is just a "straightforward plea for wages due under the contract's termination clause." (Resp. at 13.) In so doing, she mischaracterizes her breach-of-contract claim. Garrick's claim rests entirely on a

12

provision of the Faculty Manual, which is only incorporated by reference by her Faculty Contract *if she was "terminated for cause"*:

> [Moody] and the faculty member mutually agree that this contract will be binding except as modified by . . . mutual consent . . . or *unless terminated for cause, in which case the procedures of termination stated in the current Faculty Manual and the Employee Information Guide will be followed by both parties.*

(Compl. Ex. A [2016-17 Faculty Contract] [emphasis added].) Consistent with this provision, Garrick's response admits that the Faculty Manual provision on which she relies only "governs Moody's actions when a faculty member is *terminated for cause*." (Resp. at 14 [emphasis added].) Yet Garrick's Complaint alleges that she was *not* terminated for cause (*see* Compl. ¶¶ 56, 67, 75, 86-90), thereby sinking her own claim. In any event, Moody contends that Garrick *was* terminated for cause, which means that Moody's constitutional defenses necessarily apply to her breach-of-contract claim; even the existence of a dispute over whether Moody had "cause" means that this Court would be adjudicating the "true" reasons for Garrick's discharge and whether Moody had "cause" for Garrick's termination, which will unquestionably result in this Court becoming unconstitutionally entangled in Moody's religious affairs, thus barring it from adjudicating Garrick's contract claim. *See Friedlander v. Port Jewish Ctr.*, 347 Fed. App'x 654, 655 (2d Cir. 2009) (affirming 12(b)(1) dismissal of breach-of-contract claim based on ministerial exception; evaluation of rabbi's job performance "would involve impermissible judicial inquiry into religious matters."); *Lee v. Sixth Mount Zion Baptist Church*, No. 15-1599, 2017 WL 3608140, at *35 (W.D. Pa. Aug. 22, 2017) (ministerial exception barred pastor's claim for breach of employment contract; "the very process of inquiry into church motives and good faith as it relates to the mission of the church can impinge on rights guaranteed by the First Amendment"); *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 120 (D.D.C. 2007)

(dismissing for lack of subject matter jurisdiction missionary's breach-of-contract claims).[12]

Even if the Faculty Manual provision did apply, Garrick could state no claim. As her own Complaint pleads, her claim is based on:

> the Faculty Manual's section designated "Termination[,]" [which] states as follows: "If for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, *except for such serious violations of Institute policy which may result in immediate termination*." See Exhibit B (excerpt from Faculty Manual).

(Compl. ¶ 85 [emphasis added]; Compl. Ex. B.)[13] This provision, by its own terms, does not apply if the reason for the nonrenewal is for a "serious violation[] of Institute policy." As clearly stated in Garrick's Faculty Contract, alignment with the Doctrinal Statement is a *sine qua non* to employment at Moody (*see* Compl. Ex. A), so Moody's stated reason for Garrick's termination was plainly a "serious violation" to Moody. In any case, if Garrick disputes that she was terminated for a "serious violation," her claim must be dismissed based on the cases cited above, because this Court would be called to make an unconstitutional determination as to the "true" reasons for Garrick's discharge and whether such reasons were a "serious violation" under Moody's religious beliefs. Nor does Garrick help her cause when she acknowledges Moody's stated reason for her discharge (open nonalignment with its religious beliefs) but says her Complaint "goes on to state that MBI's decision was pretext for its true motives—discrimination and retaliation." (Resp. at 14, citing Compl. ¶ 56.) Deciding issues of "pretext" is also off limits for this Court. (*See* discussion pp. 3-4, 8 & n.7 supra; Mot. at 8.) Accordingly, the ministerial

---

[12] The only two cases Garrick cites on this issue (Resp. at 13) did not involve deciding the reason for the plaintiff's termination, whether there was "cause" for the discharge, or issues of "pretext."

[13] Garrick complains that there is a "disputed issue of fact" as to which version of the Faculty Manual applies. (Resp. at 14 n.4.) But as Moody stated in its Motion, the Motion is based on the (outdated) version on which Garrick's Complaint relies (Mot. at 12), so this "disputed issue of fact" is irrelevant for present purposes.

14

exception bars Garrick's breach-of-contract claim.[14]

> H. *Garrick's Breach-of-Contract Claim Also Fails Because Her Complaint Does Not Identify a Bargained-For Exchange or Plead Facts Defeating the Faculty Manual's Disclaimers*

Garrick does not even respond to Moody's arguments that (1) a "breach" of a general statement in an employee policy manual does not state a valid breach-of-contract claim, because it identifies no bargained-for exchange, and (2) no breach-of-contract claim can be based on the Faculty Manual because the cover page of the Manual expressly disclaimed all potential contract rights. (*See* Mot. at 14-15, citing Mot. Ex. A at 1.) By failing to respond to these arguments, which are fatal to her claim, Garrick implicitly agrees that dismissal is appropriate.

III. CONCLUSION

For the reasons stated in its Motion and above, Moody asks that Garrick's Complaint be dismissed in full. And because Garrick does not request leave to amend her Complaint or suggest how an amended complaint could cure the deficiencies Moody's Motion has identified, dismissal should be with prejudice.

If the Court does not dismiss both of Garrick's remaining claims, Moody reiterates its request that discovery be limited at this point to the applicability of Moody's constitutional defenses. (*See* Dkt. 24 & 32.)

Dated: June 1, 2018

s/ Christian Poland
One of the Attorneys for Defendant
Moody Bible Institute

---

[14] Garrick's contract claim is also barred by the ministerial exception in light of the elements that Garrick must allege (and ultimately prove), which include the requirement that she "substantially performed" under the Contract before Moody's alleged breach. (*See* Mot. at 13.) Moody contends that Garrick was in clear breach of her Faculty Contract by not being aligned with the Doctrinal Statement, an express requirement of the Contract. If Garrick were to dispute that she breached the Contract by her nonalignment, here again the Court would necessarily become embroiled in a dispute as to whether Garrick was or was not in alignment with Moody's religious beliefs, an inquiry that this Court is neither qualified not permitted to handle.

15

Christian M. Poland  
Bryan Cave Leighton PaisnerLLP  
161 N. Clark Street, Suite 4300  
Chicago, IL 60601-3315  
312-602-5000  
Fax: 312-602-5050  
christian.poland@bclplaw.com

CERTIFICATE OF SERVICE

Christian Poland, one of the attorneys for Defendant Moody Bible Institute states that on June 1, 2018, he served a true and correct copy of the foregoing *Defendant Moody Bible Institute's Reply Memorandum of Law in Support of Its Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6)* upon counsel for Plaintiff by causing said document to be delivered to her via the Court's ECF system, addressed as follows:

>Jamie S. Franklin
>The Franklin Law Firm LLC
>53 W. Jackson Blvd., Ste. 803
>Chicago, IL  60604
>jsf@thefranklinlawfirm.com

s/ Christian Poland