

**FILED**

DEC 1 8 2018 *LA*

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Case No. 18-cv-00573 |
| v. | ) |
| | ) Judge John Lee |
| MOODY BIBLE INSTITUTE, | ) Magistrate Judge Young Kim |
| | ) |
| *Defendant.* | ) |

### PLAINTIFF'S SECOND MODIFIED FIRST AMENDED COMPLAINT

The plaintiff, Janay E. Garrick, brings this Complaint against defendants Moody Bible Institute and the Board of Trustees for the Moody Bible Institute for retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*., breach of contract, and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., gender discrimination (female), and religious discrimination (egalitarian Christian).

### THE PARTIES

1.      Defendant Moody Bible Institute is a post-secondary religious educational institution that offers both undergraduate and graduate courses of study. It is a not-for-profit corporation incorporated in the state of Illinois.

2.      Defendant Board of Trustees for the Moody Bible Institute is the governing board of Moody Bible Institute.

3.      Collectively, the defendants are referred to as "MBI" or "Moody."

4.      MBI's primary campus is located in downtown Chicago, IL.

5.      MBI has accepted federal financial aid funds pursuant to Title IV of the Higher Education Act since at least 2012.

6.     As of the date of this filing, MBI has not submitted a request to the Office of Civil Rights of the U.S. Department of Education for a religious exemption to the requirements of Title IX.

7.     Plaintiff Janay E. Garrick was employed by MBI at its Chicago campus as an Instructor of Communications from December 1, 2014 until December 31, 2017.

## PROCEDURAL BACKGROUND

8.     The Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on January 5, 2018.

9.     The Plaintiff's case was timely filed with the Federal Court on January 25, 2018.

10.     On September 24, 2018, the EEOC issued Ms. Garrick her Notice of Rights letter, which states that the Plaintiff must file a lawsuit "WITHIN 90 days of … receipt of this notice."

11.     On September 27, 2018, Plaintiff's counsel withdrew due to the Plaintiff's inability to continue paying out-of-pocket for her legal fees.

12.     After 45 days of trying to secure new counsel, contacting almost 200 law firms, organizations, and law professors, the Plaintiff was unable to do so.

13.     On October 16, 2018, during Ms. Garrick's 45-day period in which Plaintiff was seeking new counsel, the Defendant ("Moody") moved to dismiss, and the court ordered it to re-brief. The Defendant refused because it thought the Plaintiff was amending.

14.     On November 14, 2018, the Plaintiff was forced to proceed representing herself.

15.     Plaintiff has exhausted her remedies with the EEOC.

## JURISDICTION AND VENUE

16.  This Court has federal question jurisdiction over the plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

2

17. This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

19. The Northern District of Illinois has personal jurisdiction over the defendants because they reside in and/or and maintain offices in this District and/or do business in Illinois.

## FACTS SUPPORTING THE PLAINTIFF'S CLAIMS

20. Ms. Garrick is an ordained minister. She has a Master's Degree in Cross-Cultural Studies and a Bachelor's Degree in Creative Writing and Speech Communications, and she is working on a second Master's Degree in Creative Nonfiction. Ms. Garrick has worked in the field of communications for 15 years.

21. Ms. Garrick was hired by MBI on December 1, 2014 as an Instructor of Communications in MBI's Communications Program, which is one of two programs in its Music and Media Arts Division.

22. Ms. Garrick informed MBI during the interview process that she was an "egalitarian Christian" and believed in gender equality in the ministry. MBI hired her with full knowledge of her beliefs and renewed her contract twice with this knowledge.

23. Ms. Garrick's direct supervisor was Brian Kammerzelt, the Communications Program Head. Terry Strandt, Chair of the Music and Media Arts Division, was responsible for her performance reviews. Ms. Garrick also reported to Larry Davidhizar, Vice President and Associate Provost of Faculty. Other MBI administrators at the time included James Spencer, Vice President and Dean; Junias Venugopal, Provost; Debbie Zelinski, Vice President of

3

Human Resources; Clive Craigen, Faculty Advocate; Tim Arens, Dean of Student Life; and Bryan O'Neal, Dean of the Undergraduate Faculty.

### Campus-Wide Hostility Toward Women

24. Ms. Garrick quickly learned that MBI both tolerated and cultivated an environment that was hostile to female faculty and students.

25. For example, in October 2014, shortly before her campus interview, Ms. Garrick was told by Mr. Davidhizar to remove the reference to being an ordained minister from her resume. Later, it became clear that MBI believed that the office of pastor is reserved exclusively for male candidates and did not want her to represent herself as an ordained minister.

26. Ms. Garrick was disadvantaged by this demand. When she was hired, she was not told by administration that ordained ministers could claim a tax deduction for their housing costs. After a male professor informed her of this, Ms. Garrick took steps to file her ordination license with MBI in order to claim the deduction, but she lost the opportunity to take the deduction for a full year.

27. Female instructors were confined to certain programs, like the one in which Ms. Garrick was hired, while the more prestigious Bible and Theology Programs were staffed exclusively by men.

28. In late 2015, Ms. Garrick was asked to assist in forming a committee to address women's concerns on campus, which she did. The group, called Respect for Women Personally and Ministerially, was viewed with suspicion and hostility from the beginning. Ms. Garrick was explicitly told by the administration that any changes resulting from the committee's work should be "small and incremental."

29. The faculty workroom that Ms. Garrick used was otherwise all-male, and her male colleagues treated her with antagonism. For example, they ignored her when she spoke to them, left the room abruptly when she entered, and openly ridiculed her. When Ms. Garrick tried to suggest solutions to the problem, she was told by MBI administration to simply avoid the workroom and to get her own printer so that she could work in her office.

### *Advocacy on Behalf of Students*

30.    In February 2015, Ms. Garrick was approached by a lesbian student who was struggling with MBI's hostility toward her sexual orientation. Ms. Garrick brought the student's concerns to Dean Tim Arens. His response was to ask what she said and did in response to the student and to warn her that MBI had "community living standards." The female student was later expelled from MBI.

31.    In October 2015, a female student informed Ms. Garrick that she wanted to enter the Pastoral Ministry program but that it was closed to women. Ms. Garrick was shocked and began to investigate MBI's stance on barring women from access to its programs.

32.    In January 2016, another female student came to Ms. Garrick for help with the same problem. The student wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender.

33.    Ms. Garrick discovered that MBI's website at the time stated that the program was only open to male students. She contacted her own faculty mentor and the head of the program to ask about the exclusion of women, and they confirmed that it was true.

34.     MBI was accepting federal financial aid funds during this time and, on information and belief, was reporting to the Department of Education that it met all the relevant criteria, including the prohibition against discriminating on the basis of sex.

35.     Ms. Garrick helped this student lodge the first Title IX complaint ever brought at MBI.

36.     On February 17, 2016, the first meeting of the Respect for Women Personally and Ministerially group was held. Ms. Garrick was rebuked when she told the participants that she was assisting a student who had been barred from an MBI program because of her sex. Immediately after the meeting, Ms. Garrick's faculty mentor called her into a closed-door meeting and attacked her further, asking "how can you have any integrity?"

37.     After Ms. Garrick brought her concerns to several other MBI personnel, the second Respect for Women Personally and Ministerially meeting was cancelled.

38.     On February 23, 2016, Ms. Garrick met with Mr. Davidhizar and Bryan O'Neal about the student's complaint and about the hostility Ms. Garrick herself was facing. Rather than seeking solutions to the concerns raised by Ms. Garrick, the administrators suggested she might not be able to continue in the faculty and told her she should voluntarily leave MBI.

39.     Ms. Garrick decided to stay and fight.

40.     Throughout the spring of 2016, Ms. Garrick continued to work with the student to advance her Title IX complaint against MBI.

41.     At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website explicitly limited the degree program to male students. Then MBI tried to convince the student to take courses in another program, presenting her with false and misleading information about its offerings. Ultimately, despite its attempts to muddy the waters, it became

clear that MBI had been discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

42.     Despite this admission, MBI denied the student's complaint, stating that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." In its denial letter, MBI purported to have misunderstood the nature of the student's complaint – which was untrue, as Ms. Garrick and the student had made it clear numerous times.

43.     With Ms. Garrick's help, the student appealed. In response, professors made disparaging comments to the student such as "don't you know the image of God is male?" and "what makes you think you have the right to preach?"

44.     The student and Ms. Garrick continued to push MBI to open the program to all women. As a result, on April 20, 2016, MBI announced that it intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women (though it failed to notify the student herself until mid-May 2016, and even then continued to equivocate about its position).

45.     Even after this decision, MBI continued, and, on information and belief, continues to discourage women from applying to the Pastoral Ministry program. There are currently just three women in a program of approximately 60 students. It is unclear whether MBI has officially opened the program to all women.

46.     Throughout the summer and fall of 2016, Ms. Garrick continued to experience hostility and opposition from MBI's faculty and administration.

47.     Ms. Garrick also assisted a transgender student with her hostile environment concerns, which Ms. Garrick reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

48.    In September 2016, a male theology professor at MBI drafted a proposal that would require all students to sign a statement affirming their belief in and adherence to a biblically orthodox position on human sexuality. Ms. Garrick spoke out at an all-faculty and administration meeting and told a story about a student who came to Ms. Garrick in tears over being told one could not be gay and "saved." She submitted and co-presented (with a male faculty member) a counter-proposal with an inclusive message.

49.    In response, Mr. Davidhizar pulled Ms. Garrick into his office the next day and told her that the speech was "inflammatory rhetoric" and that she was "not a Moody fit." The male faculty member who co-presented the proposal was never the subject of any disciplinary treatment.

### Retaliatory Denial of Promotion

50.    On November 1, 2016, after two years as an Instructor at MBI, Ms. Garrick submitted a written application for an increase in rank to Assistant Professor.

51.    The position of Instructor is the lowest-paid and lowest-status position at MBI.

52.    To become an Assistant Professor, MBI requires the faculty member to have a Master's Degree or equivalent and a minimum of 12 years of full time experience in a field directly related to his or her primary teaching responsibilities. Once those requirements are met, MBI reviews three sets of criteria to determine whether to issue a promotion to a faculty member: Teaching Performance, Professional/Scholarly Status, and Service. Within each criterion.

53.    Ms. Garrick's background and performance fully qualified her for a promotion to Assistant Professor under all of MBI's requirements. She had a Master's Degree (and began working on a second advanced degree in 2016). She also had 15 years of experience in the Communications field.

54.     During her two years as an Instructor, Ms. Garrick was required to perform work at the level of an Assistant Professor. Among many other duties, she developed and implemented six courses, including upper-level electives; created institution-wide initiatives like the publication of a new art and theology journal; developed an educational plan for ESL students; fulfilled all of her academic and professional duties; and actively participated in her department and the wider institution. Such duties were beyond the scope of the Instructor rank, based on Moody's own written policies.

55.     Nevertheless, MBI denied Ms. Garrick's application, stating that she needed to "improve her fit within the division" – a clear reference to the hostility against Ms. Garrick as a result of her opposition to discrimination at the institution.

56.     MBI's retaliatory denial of Ms. Garrick's promotion application resulted in both a loss of income and the loss of professional development opportunities.

57.     Shortly thereafter, Ms. Garrick received an informal performance review from Mr. Strandt in which he congratulated her on "two years of excellent service" and stated that she was "concise, clear and engaging with the students" during a class he had observed her teaching. Mr. Strandt's glowing review further highlighted the disconnect between Ms. Garrick's excellent performance and MBI's denial of her application for a promotion.

### *Retaliatory Discharge*

58.     In early 2017, Ms. Garrick was due to receive her formal two-year performance review. She initially met with Mr. Kammerzelt, who asked her if she wanted to stay at MBI. She responded that she did.

59.     This led to a series of meetings, cancelled meetings, and emails with MBI administrators regarding Ms. Garrick's performance. Mr. Davidhizar told her she had "performance and

9

interpersonal issues," despite a lack of evidence of either. Mr. Kammerzelt told her she had been found to be performing "below standards" by Mr. Strandt, despite his earlier glowing reports. Mr. Kammerzelt also threatened to demote Ms. Garrick to teaching only General Education courses and to shift three of the courses she had developed into the hands of another full Communications professor.

60.   Finally, on March 30, 2017, Ms. Garrick met with Mr. Strandt for a final, formal performance review. He handed her a negative written performance evaluation – the first written criticism of her performance she had ever received at MBI – that was filled with inaccuracies and was not based on direct observations of her work. There was no mention of Ms. Garrick being non-aligned with the gender provisions of MBI's doctrinal statement.

61.   On April 12, 2017, Ms. Garrick met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told her that she did not fit in and that she was not aligned with MBI's doctrinal statement as it related to gender roles in ministry. Mr. Davidhizar admitted that he heard Ms. Garrick state her egalitarian position during her October 2014 panel interview prior to MBI's decision to hire her.

62.   On April 17, 2017, Ms. Garrick was officially terminated. MBI stated that she was required to continue teaching classes and performing her other job duties until the end of that semester, then stay on as a non-teaching faculty member for the Fall 2017 semester. Her last day of pay was December 31, 2017. On April 26, 2017, after Ms. Garrick spoke to students and student reporters about her termination, MBI asked her to leave campus early and to turn in her computer and keys, stating that it would close out the semester for her.

63.   Ms. Garrick filed an internal grievance on May 17, 2017 and went through MBI's grievance process in the summer of 2017. In her grievance document, she pointed out that MBI

had hired her in 2014, renewed her contract for 2015, and renewed her contract for 2016 – all the while apparently pleased with her performance. It was only after she began advocating for female students who alleged violations of Title IX that MBI began to pressure her to quit, then fired her, purportedly because it had just realized she held an "egalitarian" view of Christianity.

64.    In fact, as alleged above, MBI knew from her resume and interviews that Ms. Garrick held an egalitarian view before it even hired her. MBI's decision was pretext for its true motives – discrimination and retaliation.

65.    MBI engaged in a variety of tactics to thwart any chance of Ms. Garrick succeeding in the grievance process. In her grievance document, she fully documented the discrimination and retaliation she had been subjected to. She also presented written testimony from 12 female students who reported violations ranging from sexual assault to harassment in the classroom and on the campus by both faculty members and fellow students. MBI ignored these testimonials and took no action to follow up.

66.    MBI denied Ms. Garrick's grievance on July 24, 2017. After Ms. Garrick's termination, MBI also terminated a female Full Professor and a female Assistant Professor who were members of Ms. Garrick's grievance committee and who had challenged MBI during that process.

67.    The environment of pervasive gender discrimination at Moody contributed to a hostile work environment and created a male-dominated workplace culture in which the retaliatory firing of Ms. Garrick would be acceptable and routine. In 2012, the Higher Learning Commission, an independent accrediting body, critiqued Moody that its faculty looks "white male," and tasked it to diversify. The Defendant has created a hostile workplace by discriminating against females repeatedly, including the following acts, *inter alia*…

(a)  male students organized a student "walk out" when a female speaker took the stage at

11

Founder's Week (February 6-10, 2017). At a February 22, 2017 faculty meeting, a long-term male Bible Program faculty member argued: "I think it's time we addressed the misogyny and sexism at this institution,"

(b) Moody's annual Pastor's Conference had never included female speakers as main session speakers, leading to continued feelings of exclusion and disenfranchisement from females,

(c) there were a disproportionate number of male to female speakers at required student chapels,

(d) some Bible professors were known to be "overtly discouraging" to female students in their classes,

(e) there were zero female faculty teaching in the Bible Program,

(f) there were zero female faculty teaching in the Theology Program,

(g) there were a disproportionate number of male to female faculty,

(h) there were zero female administrators, and

(i) while Moody purportedly requires faculty to sign and adhere "without disclaimers, clarifications, or personal exceptions" to a "Gender Roles in Ministry" addendum included in the doctrinal statement at the time of contract renewal each year, Moody selectively enforces adherence, and this enforcement disproportionately affects female faculty who do not "align" or "adhere."

## COUNT I

### Retaliation in Violation of Title IX of the
### Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

68.  The plaintiff realleges each of the paragraphs set forth above.

69. Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX"), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …."

70. Title IX also prohibits employment discrimination on the basis of sex at educational institutions receiving federal assistance.

71. MBI is subject to the requirements of Title IX.

72. Because Congress enacted Title IX to prevent use of federal dollars to support discriminatory practices, reporting incidents of discrimination is integral to Title IX enforcement.

73. Accordingly, persons who complain about sex discrimination have protection against retaliation and are provided a private right of action as part of the Title IX enforcement scheme.

74. Title IX prohibits retaliation against individuals who engage in protected activity, including good faith complaints of sex discrimination, opposing discriminatory practices through internal channels, and voicing concerns to superiors at the educational institution.

75. Ms. Garrick engaged in activity protected by Title IX, as alleged above.

76. MBI retaliated against Ms. Garrick because of her protected activity, as alleged above, including, but not limited to, subjecting her to a hostile environment; subjecting her to discriminatory disciplinary action; denying her a promotion; and unlawfully terminating her.

77. MBI's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

78. Exemplary damages are warranted to prevent similar unlawful conduct by MBI, which is likely to recur.

79. The plaintiff was severely damaged by MBI's conduct.

## COUNT II

### Breach of Contract under Illinois Law

80.    The plaintiff realleges each of the paragraphs set forth above.

81.    The terms of Ms. Garrick's employment were governed by a valid and enforceable Faculty Contract, which was entered into by both Ms. Garrick and MBI on a yearly basis. See Exhibit A (2017 Faculty Contract).

82.    The Faculty Contract explicitly incorporates by reference two additional documents: MBI's Faculty Manual and MBI's Employee Information Guide.

83.    The Faculty Manual and Employee Information Guide are promises by MBI to abide by a set of rules that benefit the employee. They were disseminated to Ms. Garrick in the manner of an offer, which she accepted when she entered into the Faculty Contract with MBI.

84.    The Faculty Contract states that "MBI and the faculty member mutually agree that this contract will be binding on both parties except as modified by the mutual consent of the Trustees and/or the President and the faculty member, or unless terminated for cause, in which case the procedures of termination stated in the current Faculty Manual and Employee Information Guide will be followed by both parties." See Exhibit A.

85.    In turn, the Faculty Manual's section designated "Termination" states as follows: "[i]f for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for such serious violations of Institute policy which may result in immediate termination." See Exhibit B (excerpt from Faculty Manual).

86.    On April 18, 2017, MBI informed Ms. Garrick that it had decided not to renew her contract for the next academic year, but that she would continue to be employed until December

31, 2017. She was informed that she was expected to continue teaching her classes until the end of the semester.

87.    Because Ms. Garrick was not terminated "immediately," MBI was contractually obliged to follow the termination provisions set forth in the Faculty Manual by informing her by the last Friday in November prior to a Spring termination.

88.    MBI failed to do so.

89.    MBI therefore breached its contract with Ms. Garrick by failing to notify her by the last Friday in November of the fall semester prior to her last Spring semester of employment, as required by the termination provisions of the Faculty Manual.

90.    MBI cannot contend that Ms. Garrick engaged in a violation of its policy that warranted "immediate termination," as it retained her for several months after its decision not to renew her contract, requiring her to teach classes and otherwise continue to perform her job duties for a period of time.

91.    Under the terms of the Faculty Contract and the termination provisions of the Faculty Manual referenced and incorporated therein, MBI is obligated to pay Ms. Garrick for two additional semesters she is owed under the contractual terms.

## COUNT III

### Title VII, 42 U.S.C. § 2000e-2(a)
### Hostile Work Environment Based on Gender (Female)
### Against Ms. Garrick

92.   The Plaintiff realleges each of the paragraphs set forth above.

93.   Ms. Garrick was discriminated against and harassed based on gender (female) by administrators, supervisors, and coworkers.

94.   The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe

or pervasive, detrimentally affected Ms. Garrick, were viewed as subjectively hostile and abusive by Ms. Garrick, and would be viewed as objectively hostile and abusive to a reasonable person.

95.  During the relevant time period, Ms. Garrick and similarly situated female employees also were treated differently than coworkers of a different gender. For example, female faculty were subjected to the following acts, *inter alia…*

(a) denied the opportunity to speak at President's Chapel, and

(b)  excluded from teaching in the Bible and Theology Programs, while male faculty were permitted to do so.

96.  Ms. Garrick was denied the opportunity to speak at chapel although she twice requested to do so.

97.  Some other specific examples of the discrimination and harassment against Ms. Garrick and similarly-situated employees include the following acts, *inter alia…*

(a) two of the three outspoken female faculty members who served on Ms. Garrick's Grievance Committee, and who actively questioned Moody administration's actions concerning Ms. Garrick, were terminated following Ms. Garrick's termination, while the two male professors on the Grievance Committee were retained;

(b) Ms. Garrick was subject to peer reviews while similarly-situated male professors in the Communications Program were not;

(c) Ms. Garrick was disciplined for her "inflammatory rhetoric" at a faculty meeting, and told she needed "to learn how to speak around here" while a male professor (who wrote and presented their *joint* proposal) was not disciplined; and

(d) Ms. Garrick was not informed by Moody that she could receive a tax exemption for being an ordained minister while her male counterparts were informed of this benefit.

98. During the relevant time period, Ms. Garrick was denied a reduced teaching load at Moody while she completed a terminal degree in her field, while similarly-situated male faculty in terminal degree programs did receive reduced teaching loads.

99. During the relevant time period, Ms. Garrick was required to develop and create complete, from scratch, five new undergraduate courses beyond the scope of her Instructor position requirements while recently hired male Instructors received no similar assignments.

100. Moody's Title IX coordinator, in the presence of Ms. Garrick and the entire Communications Program faculty, snidely stated at a meeting that she would have been able to accomplish certain tasks had she not been occupied with a Title IX complaint.

101. The Defendant has created a hostile workplace by discriminating against females repeatedly, including the following acts, *inter alia*…

> (a) being ignored and shunned by male professors in common work space,
>
> (b) being told by a male professor how women in Moody's hiring process frequently need to be "walked through" the doctrinal statement,
>
> (c) disparaging comments about Ms. Garrick's dress ("What are you wearing?" remarked one male theology professor. "I thought you were a student"),
>
> (d) disparaging remarks about Ms. Garrick's undergraduate college and post-graduate seminary—"they believe anything and everything there,"
>
> (e) being told by Larry Davidhizar ("Mr. Davidhizar"), Moody's Associate Provost of Faculty, that she did not understand her theological positions even though she held an advanced seminary degree,
>
> (f) being shunned by a male Theology professor after Ms. Garrick spoke and wrote about "white privilege" on Moody's campus.

102.     Additionally, during the relevant time period, there were numerous reports of gender harassment and gender-based violence (sexual assault, rape) that went unaddressed or ignored by Moody administration contributing to an unsafe campus environment for female students and faculty to speak up and to report.

103.     Ms. Garrick complained numerous times to Moody administrators and supervisors about the discrimination and harassment, and Moody had actual or constructive knowledge of the ongoing discrimination and harassment.

104.     Moody failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Ms. Garrick.

105.     Moody discriminated against Ms. Garrick on the basis of gender in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

106.     As a direct and proximate result of said unlawful employment practices and in disregard of Ms. Garrick's rights and sensibilities, Ms. Garrick has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

### COUNT IV
### Gender Discrimination (Female) in Violation of Title VII of the
### Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

107.     The Plaintiff realleges each of the paragraphs set forth above.

108.     Ms. Garrick is a member of a protected class by gender. She is female.

109.     Ms. Garrick, in all respects, was performing her job in a manner that was consistent with Moody's legitimate business expectations.

110.     Defendant Moody's actions in its administrators and employees intentionally engaging in and condoning gender discrimination against Ms. Garrick has caused her great mental anguish,

humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

### COUNT V
### Title VII. 42 U.S. C. § 2000e-3(a)
### Retaliation Against Ms. Garrick for Engaging in Protected Activity

111.    The Plaintiff realleges each of the paragraphs set forth above.

112.    Ms. Garrick engaged in protected activity when she complained about discrimination and harassment based on gender.

113.    Ms. Garrick engaged in protected activity when she assisted a female student in filing and processing a Title IX complaint charging discrimination based on gender (for the student's exclusion from the all-male Pastoral Ministry undergraduate program).

114.    In retaliation for Ms. Garrick's complaints, the Defendant took the following actions, *inter alia...*

   (a) disciplined her,

   (b) threatened to demote her to teaching General Education courses and to assign her elective courses to another professor,

   (c) subjected her to an unfounded negative performance evaluation,

   (d) denied her a chance for promotion,

   (e) treated her poorly in her final days at Moody, and

   (f) terminated her employment.

115.    During the relevant time period, and in the middle of Ms. Garrick's assistance to a female student in filing a Title IX (gender discrimination) complaint, Moody administrators pressured Ms. Garrick to quit her job.

116.     During the relevant time period, Ms. Garrick experienced open hostility from some of the all-male faculty in the Bible and Theology Programs after it became known to them that in January 2016 she began assisting a female student in filing a Title IX complaint (for her exclusion from the all-male Pastoral Ministry undergraduate program). Their actions included the following, *inter alia*…

   (a)  shunning,

   (b)  silent treatment, and

   (c)  in February 2016, during a meeting of the Respect for Women Professionally and Ministerially group, a male Theology professor commented that he would rather have "a thousand Junias's" on this issue (of Ms. Garrick assisting a female student with filing a TIX complaint) than a TIX violation. Junias Venugopal was the Provost of Moody at the time.

117.     On February 17, 2016, Ms. Garrick was chastised by a faculty member (her faculty mentor) for lacking integrity in signing the doctrinal statement while holding to an egalitarian position.

118.     On February 17, 2016, at a Respect for Women Professionally and Ministerially meeting Ms. Garrick was openly rebuked by several faculty members for her activity in assisting a female student in filing a Title IX complaint.

119.     On February 19, 2016, Ms. Garrick requested a meeting with Debbie Zelinski ("Ms. Zelinski"), Vice President of Human Resources, to discuss the Title IX backlash and hostility she was experiencing from peer faculty.  Ms. Zelinski, *inter alia*, suggested that Ms. Garrick avoid the Sweeting 3 workroom and get a printer for her office.

120.    On February 23, 2016, in a meeting in which Ms. Garrick discussed the Title IX backlash and hostility she was experiencing from peer faculty, Mr. Davidhizar and Bryan O'Neal, Dean of Faculty, pressured Ms. Garrick to quit.

121.    Mr. Davidhizar also instructed Ms. Garrick to remove herself from her role in organizing and co-leading the Respect for Women Professionally and Ministerially group.

122.    Ms. Garrick reported this negative conversation with Moody administrators to Communications Program Head, Brian Kammerzelt ("Mr. Kammerzelt").

123.    In January 2017, at Ms. Garrick's two-year performance review, Mr. Kammerzelt praised her for "doing everything you were hired to do," and informed her that Larry Davidhizar wanted to know if she intended to stay. Ms. Garrick responded yes.

124.    On March 2, 2017, Mr. Davidhizar communicated with Ms. Garrick that she would not have a contract renewal in her mailbox when she returned from Spring Recess, and that if Moody renewed her contract, it would have expectations: "there are performance and interpersonal issues."

125.    The Defendant has retaliated against Ms. Garrick repeatedly, including the following acts, *inter alia*...

    (a)  subjecting Ms. Garrick to a falsified negative performance evaluation. On March 30, 2017, Ms. Garrick received a negative performance evaluation from Moody's Music and Media Arts Division Chair, Terry Strandt ("Mr. Strandt");

    (b)  in January 2017, two months prior to Ms. Garrick receiving a negative performance evaluation, Mr. Kammerzelt instructed her to add a new course to her teaching schedule (Debate) and to develop what would have been her fifth new course (Missions Journalism) slated for release in the fall 2017;

(c) on December 3, 2016, after two years of employment, Ms. Garrick received a glowing

review in writing by Mr. Strandt after he had observed one of her classes, Core Tools:

Words: "Dear Janay,  Congratulations on your two years of excellent service to

MBI.  Your Industry and enthusiasm is gratifying and contributing in a huge way to your

Program and the whole Division.  I enjoyed very much your class on Grant Writing for

NGO's.  You were concise, clear and engaging with the students.  I hope that God blesses

you with the same unexpected surprise our family received by finding a long-term home

at Moody.  Warmly, Terry." And just four months later, Mr. Strandt would deliver Ms.

Garrick a borderline "Below Standards" performance evaluation;

(d) on March 3, 2017, Mr. Kammerzelt stated that Ms. Garrick had been subjected to reviews

by her peer Communications professors. He stated further that she would have the

opportunity to similarly prepare reviews of her peers;

(e) on March 30, 2017, Mr. Strandt stated that peer reviews helped form the basis for his

negative evaluation of her;

(f) On April 5, 2017, when Ms. Garrick questioned Mr. Davidhizar about Mr. Standt's

negative conclusions regarding her work performance as well as his data collection

methods and information sources, Mr. Davidhizar responded: "This being his (Terry

Strandt's) first time has allowed for pure, unadulterated objectivity in all of his

reviews.  No one has had input into his evaluations of anyone including me.  My only

input back before Spring Break is when he mentioned that it would not be a strong review

I talked to him about what should be included in a 'Performance Improvement

Program'";

(g) Ms. Garrick was never given any information about the peer reviews even though she requested to see them. During the Grievance procedure, James Spencer, Vice President and Dean of Moody Bible Institute, stated that there were no peer reviews; and

(h) during her performance evaluation meeting with Mr. Strandt on March 30, 2017, he stated that he had no knowledge of Ms. Garrick's work performance and got all his information from Brian Kammerzelt, Larry Davidhizar, and peer reviews.

126. On April 5, 2017, in an email entitled "Performance Evaluation Follow-up Meeting | April 7 @ 1pm," Moody changed tactics for separating Ms. Garrick from her employment, Mr. Davidhizar stating that he would like to meet "to discuss (Ms. Garrick's) vocal non-alignment with the Institute's doctrinal statement as it relates to 'Gender Roles in Ministry.'"

127. On April 9, 2017, after fighting her negative performance evaluation, Moody raised Ms. Garrick's score from 2.57 (borderline "Below Standards") to 2.96 ("Meets Standards").

128. On April 18, 2017, Ms. Garrick was officially terminated from her employment at Moody. The reason given for termination was her egalitarian view on gender roles in ministry.

129. On April 25, 2017, after Ms. Garrick began to speak to students and student journalists about her termination, Ms. Garrick was dismissed from campus (instructed to turn in her keys and computer) before the semester's end.

130. Following her firing, Ms. Garrick was subjected to an impossible Grievance Hearing process that was lacking in any manner of reasonable due process. For example, retaliatory acts by the Defendant, *inter alia…*

(a) on April 18, 2018 when Ms. Garrick was given her notice of termination, Moody commented that she could file a grievance but that she would not have much time to do

so. The Defendant stated that summer break would make it all the more difficult to convene a Grievance Committee as faculty would not be on campus;

(b) in preparation for the Grievance Hearing, questions for witnesses had to be approved in advance by Moody, and Moody gave Ms. Garrick less than 24-hour notice about her ability to call witnesses (in the middle of the work week) to testify on her behalf; and

(c) at the July 7, 2017 Grievance Hearing, Moody would not allow any underlying discrimination or retaliation facts to be discussed.

131.    At the Grievance Hearing, Mr. Davidhizar admitted to hearing Ms. Garrick state her egalitarian position on gender roles in ministry during her Chicago campus interviews in October 2014.

132.    Desiree Hassler, the female Assistant Professor of Music and grievance committee member, who questioned Mr. Davidhizar on this point was later fired.

133.    Ms. Garrick was fired for assisting a female student in filing a Title IX complaint.

134.    There was a causal connection between Ms. Garrick's complaints and the materially adverse actions taken against Ms. Garrick by Moody.

135.    The retaliation endured by Ms. Garrick would dissuade a reasonable employee from making complaints of discrimination and harassment.

136.    Moody retaliated against Ms. Garrick for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

## COUNT VI

### Religious Discrimination (egalitarian Christian) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

137.    The Plaintiff realleges each of the paragraphs set forth above.

138.    Ms. Garrick was hired in December 2014 in spite of her known and stated

position/disagreement with Moody's "Gender Roles in Ministry" addendum included in its doctrinal statement.

139.     Ms. Garrick was offered two subsequent contract renewals (academic years 2015-16 and 2016-17) in spite of her stated position/disagreement with Moody's "Gender Roles in Ministry" addendum.

140.     After Ms. Garrick assisted a female student in filing a Title IX complaint, Ms. Garrick was terminated for her stated position/disagreement with Moody's "Gender Roles in Ministry" addendum included in its doctrinal statement, Defendant stating that she could not sign the doctrinal statement based on her holding to an egalitarian position (Moody holds to a complementarian position that excludes women from certain roles within the church due to their gender).

141.     During the relevant time period, there were key male Moody Radio personnel who did not affirm "without disclaimers, clarifications, or personal exceptions" the "Gender Roles in Ministry" addendum in Moody's doctrinal statement and therefore refused to sign the doctrinal statement but who remained employed by Moody.

142.     The Defendant has created a hostile workplace by discriminating against egalitarian Christians repeatedly, including the following acts, *inter alia…*

>    (a) At a Communications Program meeting, Ms. Garrick was slandered as a "liberal progressive" by a peer professor and informed by a Moody administrator that this peer professor "hates you."

>    (b) Ms. Garrick was terminated from employment for her "inability" to sign the doctrinal statement while other male faculty openly espoused egalitarian points of view and/or attended egalitarian churches and remained employed by Moody.

143. Ms. Garrick was terminated from employment for her "inability" to sign the doctrinal statement while male faculty openly espoused differing points of view from the doctrinal statement (for example, on gifts of the Spirit, inerrancy of Scripture, eschatology) and who remained employed by Moody.

144. Moody discriminated against Ms. Garrick on the basis of religion (egalitarian Christian) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Janay E Garrick, prays for relief as to all counts of this Complaint as follows:

A. An order declaring that MBI violated Title IX and Illinois law;

B. An order enjoining future violations by MBI;

C. Injunctive relief sufficient to eliminate unlawful and discriminatory policies and procedures at MBI;

D. Payment of all costs of implementing and monitoring such injunctive relief;

E. Payment of the plaintiff's lost past and future wages, benefits, and any other income and/or monetary or monetized benefits of employment that she would have been entitled to absent MBI's unlawful acts;

F. Payment of her contract damages;

G. All other compensatory and consequential damages proven by the plaintiff;

H. Punitive damages sufficient to punish MBI for its unlawful behavior and to deter future discriminatory conduct;

I. Payment of the plaintiff's attorneys' fees and all costs of litigation (including any expert witness fees);

J.      Pre-and post-judgment interest; and

K.      All other and relief, whether legal or equitable, that the Court may deem appropriate.

## **JURY DEMAND**

The plaintiff demands a trial by jury on all counts.

Dated: December 13, 2018                      Respectfully submitted,

/s/ Janay E. Garrick

Janay E. Garrick
PO BOX 1729
Orlando, FL 32802
(407) 803-3051
Janay.garrick@gmail.com

## CERTFICATE OF SERVICE

I, the undersigned, certify that on December 13, 2018, I had the foregoing document served by filing it with the Clerk's Office via USPS. On that day, I also served a true and correct copy of the foregoing *Plaintiff's Modified First Amended Complaint* upon Defendant by causing said document to be delivered to it via email, to which form of service it has consented, addressed as follows:

Christian Poland
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
christian.poland@bryancave.com

/s/ Janay E. Garrick

Service List:

Christian Poland
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
christian.poland@bryancave.com