IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK,<br><br>                    Plaintiff,<br><br>   v.<br><br>MOODY BIBLE INSTITUTE,<br><br>                    Defendant. | Case No. 1:18-cv-00573<br><br>Judge John Lee<br>Magistrate Judge Young Kim |

**DEFENDANT MOODY BIBLE INSTITUTE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................... 1

II.    ALLEGATIONS OF THE COMPLAINT ...................................................................... 1

III.   ARGUMENT .................................................................................................................. 7

     A.     All of Garrick's Claims Are Barred by the U.S. Constitution's Protection of Religious Freedom, Centrally Under the "Ministerial Exception" ........................ 7

     B.     Garrick's Title VII Claims Are All Barred by Title VII's Exemption for Religious Educational Institutions ....................................................................... 12

     C.     Garrick's Title IX Claim Is Barred by Title IX's Religious Exemption ............... 13

     D.     Garrick's Title IX Claim Is Preempted by Title VII ............................................. 13

     E.     Garrick's Title VII Claims Are All Time Barred .................................................. 14

     F.     Garrick's Title VII Retaliation Claim Fails Because She Pleads Retaliation for Assisting a Student With a Title IX Complaint, Which Is Not Protected Conduct Under Title VII ..................................................................................... 14

     G.     Garrick's Title VII and Title IX Retaliation Claims Fail Because Garrick Does Not Plead a Causal Connection Between Her Alleged Protected Activity and Her Termination Twelve Months Later ...................................................................... 15

     H.     Garrick's Breach-of-Contract Claim Must Be Dismissed ................................... 16

          1.     The Standards Applicable to, and the Allegations of, Garrick's Contract Claim ........................................................................................................ 16

          2.     Garrick's Contract Claim Fails Because Her Allegations Defeat the Application of the Provision She Contends Was Breached ..................... 17

          3.     Garrick's Contract Claim Fails Because Her Complaint Does Not Identify a Bargained-For Exchange or Plead Facts Defeating the Faculty Manual's Disclaimers .............................................................................................. 18

          4.     Garrick's Contract Claim Is Barred by the Ministerial Exception ........... 18

IV.   CONCLUSION .......................................................................................................... 19

i

I.       INTRODUCTION

Seeking to involve this Court in the impermissible adjudication of a religious dispute

between the parties, Plaintiff, Janay Garrick ("Garrick"), brought this action against Defendant,

The Moody Bible Institute of Chicago ("Moody"), challenging Moody's religiously motivated

decision not to renew her faculty contract due to her admitted lack of required alignment with

Moody's doctrinal statement and religious mission, in her role as one of its faculty "ministers."

Garrick openly pleads that her employment was terminated because of her religious beliefs, and

thus the constitutionally required "ministerial exception" and related doctrines bar all of

Garrick's claims.  In addition, if not completely barred by the applicable constitutional doctrines,

Garrick's claims fail for more typical reasons, such as the failure to plead the required elements

of the claims asserted, statutory exemptions that apply, preempted by other statutes, and pursuit

of claims outside the applicable statutes of limitation.  Therefore, Garrick's First Amended

Complaint ("FAC")[1] should be dismissed with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

II.      ALLEGATIONS OF THE COMPLAINT [2]

---

[1] Garrick's "third modified" (and most recent) version of her FAC, filed January 7, 2018 (Dkt. 67), is the operative FAC.

[2] Under Moody's Rule 12(b)(6) motion, this Court considers the allegations of the FAC, the documents attached to the FAC, and the documents attached to this motion that are referred to in Garrick's FAC and are central to her claims.  *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" [internal quotations omitted]; court could properly consider plaintiff's EEOC Charge even though not attached to the Complaint); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (a court may properly consider a document in ruling on a motion to dismiss "even if the document [is] merely referred to in the complaint, provided it [is] a concededly authentic document central to plaintiff's claim (the usual example is a contract, in a suit for breach of contract)").  Garrick's FAC attaches her Faculty Contract (FAC Ex. A), a portion of the Faculty Manual (FAC Ex. B), and her EEOC Charge (FAC Ex. C).  In addition, Garrick's FAC discusses the Faculty Manual, the Employee Information Guide, the hiring process, the Doctrinal Statement, her annual faculty contracts, the required certification of adherence to the Doctrinal Statement, her application for the ministerial housing allowance, the April 17, 2017 letter giving notice of her separation, and her post-separation internal grievance.  (*See* FAC ¶¶ 21-22, 25-26, 61-64, 65-66, 67(i), 81-85, 91, 97(d), 126-27, 135, 137 & 139.)  Thus, the Court may consider these documents, which are attached hereto, in ruling on this motion under Rule 12(b)(6).

12359712.3

Moody is a "private academic institution with a stated mission of training students for the Christian ministry." (FAC Ex. C [EEOC Charge ("Charge") at 2]; *see also* FAC ¶ 1 & Ex. A; Ex. A [Faculty Manual] at 1-12, 37, & Man. Ex. G; Ex. B [Employee Information Guide; the "Guide"] at 1-2, 4-6.) Moody's mission statement states that it "exists to equip people with the truth of God's Word to be maturing followers of Christ who are making disciples around the world." (Ex. B at 1; *see also* Ex. B at 1.)

"[Moody] has a doctrinal statement that all faculty members are required to sign. It holds that the role of women in ministry is 'complementary' . . ." (as compared to "egalitarian"). (FAC Ex. C [Charge at 2].) The Doctrinal Statement is a central feature of Moody's mission. (*See* Ex. C, D at 1.) Faculty members are required to certify in writing their alignment and agreement with the Doctrinal Statement during the hiring process and every year thereafter (including in each annual faculty contract). (*See* FAC Ex. C [Charge at 2]; Ex. A, D at 2, E, F, G, H.)

The Guide reiterates that doctrinal alignment is required of all faculty (Ex. B at 4):

> Employment at Moody presupposes that each employee has committed his or her life to Jesus Christ for salvation and Christian Service. A lifestyle in accordance with biblical principles is essential to demonstrate that commitment to fellow employees, to MBI students, and to the outside world.

Because Moody's objective is to train students for Christian ministry, Moody considers every faculty member to be serving in a "ministerial" role and to have religious duties. The job description for faculty members is replete with references to the religious nature of the position:

---

Under Moody's Rule 12(b)(1) motion, the Court may of course go beyond the pleadings in determining whether it has the jurisdictional authority to adjudicate this matter. *See Silha v. Act, Inc.*, 807 F. 3d 169, 173 (7th Cir. 2015). In support of its constitutional/jurisdictional arguments, Moody relies on the same documents referenced above, most of which were drafted and/or signed by Garrick and are therefore unquestionably admissible against her. In an abundance of caution, however, Moody has also attached declarations authenticating the documents on which it relies. (*See* Ex. L & M.)

The provisions of an admittedly authentic document control over contrary allegations in the Complaint. *See Northern Ind. Gun & Outdoor Shows, Inc. v. South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

12359712.3

> The Undergraduate school of the Moody Bible Institute exists to provide a Bible-centered education that enables students to know Christ and serve Him through His church in vocational ministry. . . . Therefore, Moody seeks to attract and retain faculty who are committed to the focus and mission of the Institute. . . . . Each faculty member should demonstrate a life of service to the Institute, the community, the church and the profession. . . . [A] faculty member must demonstrate the following skills and aptitudes:
>
>> - Desire to grow in their spiritual lives and develop as mentors of students; . . . .
>> - An understanding of and commitment to the authority of Scripture, our theology and mission, and our relationship within broader evangelicalism;
>> - A commitment to combining academic excellence and biblical truth with practical ministry preparation; . . .

(Ex. A at 37 & Man. Ex. G.)  Faculty members typically open class with prayer, often lead devotions in class, and pray and discuss spiritual matters with students outside of class.  (*See generally* Ex. A at 11-12 & Man. Ex. G.)

In January 2015, Garrick "was hired on a year-to-year basis to teach in the Communications Program."  (FAC Ex. C [Charge at 2].)  Garrick is an ordained minister and was hired by Moody to perform "ministerial" services in the form of integrating Christian faith and doctrine in training students for Christian ministry.  (FAC ¶¶ 20-21, 25; Ex. A at 1-10 & Man. Ex. G; Ex. B at 1-2, 4-5.)  Garrick herself emphasized in her employment application her central role in providing *religious* education:

> I'm a school nerd and a Jesus lover.  . . . Now, while I love learning and believe in the power of education to shape and change lives, I believe in the power of the gospel to shape and change lives more. Western education – even a Biblically-based education – must never be elevated above the transforming power of the gospel.  . . . Education—human wisdom—must remain inextricably bound to the spiritual formation of each student.  Christ being formed in us, or a growing, intimate relationship with Jesus, must remain at the center of the message I communicate as a professor of communications.  I recognize that I would not simply be a purveyor of information, but a model of discipleship.

(Ex. D at 5.)  As an example of the integration of faith and academics, Garrick pleads that she worked on "publication of a new art and theology journal."  (FAC ¶ 54.)  Garrick admits that for

professors at Moody there is no "secular" teaching: "I no longer see a false dichotomy between creative writing and ministry, but understand that the two are actively integrated." (Ex. D at 6.)

When Garrick applied for employment in October 2014, she certified in her application that she fully agreed with and supported Moody's Doctrinal Statement. (Ex. D at 2.) In the faculty contracts she signed each year, Garrick again certified her alignment:

> The faculty member also agrees to read the attached *Doctrinal Statement* and *Institutional Positions Related to the Moody Bible Institute Doctrinal Statement (1928)* and, by returning this contract dated and signed, affirms that he/she agrees with, personally adheres to, and supports each and every statement.

(FAC ¶¶ 81-83; FAC Ex. A; Ex. E, F; *see also* Ex. G, H.)

Garrick's FAC pleads that as an ordained minister she was eligible for (and received) a significant federal tax benefit, the ministerial housing allowance. (FAC ¶ 26.) To obtain that several-thousand-dollar housing allowance, Garrick had to represent (and did represent) that she was an "ordained minister" and that the teaching she did for Moody qualified as "ministerial services" under specified federal tax laws. (*See* Ex. K.) In addition, Garrick holds a master's degree from Fuller Theological Seminary. (Ex. D at 6.)

In late 2016 and early 2017, statements and actions by Garrick began indicating her nonalignment with Moody's Doctrinal Statement. Thus, on April 12, 2017, Dr. Larry Davidhizar, Vice President and Associate Provost of Faculty, held a meeting with Garrick, and, after a discussion of Garrick's religious views, Davidhizar communicated that Garrick "was not aligned with [Moody's] doctrinal statement as it related to gender roles in ministry."[3] (FAC ¶ 61; *see also* FAC Ex. C [Charge at 4]; Ex. I.) On April 17, 2017, Garrick was "officially

---

[3] As discussed below, the Court must defer to Moody's views regarding the doctrinal dispute between Garrick and Moody, but for the Court's reference, the primary point of dispute involved the "Gender Roles in Ministry" component of the Doctrinal Statement, which holds that "consistent with [Moody's] understanding of Scripture[,] [certain] church offices should be limited to the male gender." (*See* Ex. C at 4.) This "complementarian" view is a fully protected religious belief. *See, e.g., Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1035, 1042 (7th Cir. 2006) ("women of course cannot be priests").

terminated," and Moody's hand-delivered letter communicated that she would not be extended

another faculty contract because her nonalignment on the role of women in religious ministry.

(FAC ¶¶ 62, 124; Ex. I.)  *Garrick expressly pleads that Moody terminated her because of her*

*religious beliefs*:  "Garrick was terminated from employment for her 'inability' to sign the

doctrinal statement . . ."; "Moody discriminated against Ms. Garrick on the basis of religion

(egalitarian Christian)"; "The reason given for termination was her egalitarian view on gender

roles in ministry." [4]  (FAC ¶¶ 124, 136, 139-40; *see also id.* ¶¶ 61, 63.)

 Garrick's post-separation grievance (on which Garrick's FAC relies, *see* FAC ¶¶ 63, 65-

66) openly confirmed her complete disagreement with Moody's theological position:

> I had hoped that Moody Bible Institute in 2017 would have been able to
> show a greater degree of openness to theological differences in the nonessentials
> of the faith such as female gender roles in ministry/leadership.  Unfortunately, . . .
> [my faculty contract was not renewed] as I demonstrably began to act upon my
> belief that women should have equal access to all areas of the institution in
> acquiring theological education. . . .  I truly believe such an "alternative"
> [theology] stands at the door of MBI and knocks: this alternative looks like the
> full, embodied inclusion of women as pastors, theologians, voices of assent and
> dissent; women as leaders and fully-empowered, equipped citizens of the
> Kingdom of God.  . . . . [Ex. J (Cover Email at 1-2).]
> [T]here is a deep sexism and misogyny imbedded in the heart of this
> institution.  This goes beyond my recent non-contract renewal.  This sexism goes
> as far back as 1928 when the Gender Addendum was added to the school's
> Doctrinal Statement and women began to be excluded from educational
> preparations from the pastorate and the pulpit. . . . [T]he Gender Roles in Ministry
> Addendum [should] be removed from MBI's doctrinal statement."  [Ex. J
> Grievance at 56 [excerpts only attached, due to length).]

On January 5, 2018 (just days after Moody's generous severance pay ended[5]), Garrick

filed her EEOC Charge, in which she alleged that she was terminated in violation of Title VII of

---

[4] Garrick admitted the same religious motivations in her sworn Charge, in which she alleged that she was discriminated against based on "[her] religion (egalitarian Christian)" and because of "[her] form of Christianity," and that Moody's stated reason for the nonrenewal of her faculty contract was that she "was not aligned with the doctrinal statement."  (FAC Ex. C [Charge at 1, 4].)

[5] Even though Moody did not require Garrick to perform any duties after classes ended in early May 2017 (*see* FAC ¶¶ 62, 86, 124-25; Ex. I), and even though Garrick's Contract term ended June 30,

the Civil Rights Act of 1964 ("Title VII") because of her "religion (egalitarian Christian),"
because of her gender, and in retaliation for "complaining of discrimination." (FAC Ex. C
[Charge at 1].) The EEOC investigated the Charge, but found no evidence to establish that
Moody violated Title VII and therefore dismissed Garrick's Charge. (FAC Ex. C.)

On January 25, 2018, Garrick filed her original Complaint. (Dkt. 1.) Moody moved to
dismiss the entire Complaint, but before the Court had ruled on the motion, and following
Garrick's receipt of her right-to-sue notice from the EEOC in September 2018 (*see* FAC Ex. C),
Garrick sought leave to amend her Complaint to add new claims under Title VII. On December
14, 2018, the Court granted Garrick's request, and on January 7, 2019, Garrick filed her "third
modified" FAC against Moody, which is the operative Complaint. (Dkt. 67.) In her FAC,
Garrick alleges that (1) she was fired because she "began advocating for female students who
alleged violation of Title IX [of the Education Amendments of 1972]" (FAC ¶ 63), in violation
of Title IX (Count I); (2) her separation breached a provision of the Faculty Manual (Count II),
(3) she was "discriminated against and harassed based on gender" in violation of Title VII
(Count III), (4) Moody retaliated against her in violation of Title VII by not renewing her faculty
contract because she "assisted a female student in filing and processing a Title IX complaint . . .
(for the student's exclusion from the all-male Pastoral Ministry undergraduate program)" (Count
V), and (5) Moody discriminated against her based on her "egalitarian" religious position, which
was inconsistent with Moody's Doctrinal Statement (Count VI [FAC ¶¶ 133-40]).[6]

---

2017 (*see* FAC Ex. A), Moody paid Garrick severance pay for six additional months (until December 31,
2017), without any obligation to do so (*see* FAC ¶¶ 62, 86, 125; Ex. I).

[6] Garrick's FAC includes a heading for a Count IV related to gender discrimination under Title
VII, but the count has no allegations under it. As the Court will recall, Garrick's first proposed FAC had
a single paragraph of allegations (former Paragraph 91) under her Count IV (which she had labeled her
"Third Claim"), which did not themselves state any claim. Moody suggested, Garrick agreed, and the
Court ordered that the allegations of former Paragraph 91 be moved to a more appropriate location in her

III.    ARGUMENT

      *A.*    *All of Garrick's Claims Are Barred by the U.S. Constitution's Protection of Religious Freedom, Centrally Under the "Ministerial Exception"*

As a Bible institute that declined to renew Garrick's faculty contract because she was admittedly not in alignment with Moody's religious beliefs, Moody is constitutionally immune from Garrick's claims of discrimination, retaliation, and breach of contract.  The "ministerial exception," unanimously upheld by the Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171 (2012), bars Garrick's challenge to Moody's decision that Garrick was no longer an appropriate "minister" to carry out its religious mission. Additionally, related constitutional doctrines dictate that this Court has no authority to adjudicate Garrick's claims, which would necessarily intrude into matters of the selection and retention of an employee engaged in religious service at Moody.[7]

Before discussing the specifics, however, it is imperative to note that constitutionally based religious liberty defenses like Moody's must be adjudicated at the earliest possible stage (i.e., on a motion to dismiss) to minimize the very court entanglement the defenses are designed to prevent.  *See id.* at 181 ("Both Religion Clauses bar the government from interfering with the decision of a religious group to fire one of its ministers."); *id.* at 194-95 (the "[ministerial] exception instead ensures that the authority to select and control who will minister to the faithful—a matter "strictly ecclesiastical"—is the church's alone.").  The Seventh Circuit has also repeatedly emphasized that the ministerial exception deserves the district court's immediate

---

FAC.  (*See* Dkt. 64.)  Although Garrick moved the allegations of Paragraph 91, she left the stray heading in her FAC, for reasons that are unclear to Moody.

    [7] *See also Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. ___, 138 S. Ct. 1719 (2018) ("The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths" [quoting *Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015)] [p. 1727]; "In this country, the place of secular officials isn't to sit in judgment of religious beliefs, but only to protect their free exercise" [p. 1737] [Gorsuch, J., concurring]).

attention. *See, e.g.*, *Schleicher v. Salvation Army*, 518 F.3d 472, 475 (7th Cir. 2008) (affirming dismissal based on ministerial exception); *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003) (affirming dismissal under Rule 12(b)(1) based on ministerial exception).[8] Thus, whether under Rule 12(b)(1) or 12(b)(6), the Court must determine if any of Garrick claims can clear the applicable First Amendment hurdles.

Regardless of how styled (religious discrimination, gender discrimination, retaliation, or breach of contract), all of Garrick's claims are barred by the ministerial exception. As discussed above, Moody's faculty members hold religious responsibilities crucial to carrying out its religious mission. (*See* Section II *supra*.) Thus, Moody's faculty members fall within the ministerial exception. *See* 565 U.S. at 199 (Alito, J. and Kagan, J., concurring) (ministerial exception applies to any employee who "serves as a messenger or teacher of its faith"; "If a religious group believes that the ability of such an employee to perform these key functions has been compromised, then the constitutional guarantee of religious freedom protects the group's right to remove the employee . . . ."). Moody expected Garrick to integrate her Christian faith (which had to be aligned with Moody's Doctrinal Statement) into her teaching and service at

---

[8] Numerous other courts have held the same. *See, e.g., Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1039 (7th Cir. 2006) (the Religion Clauses' "concern is that in investigating employment discrimination claims by ministers against their church, secular authorities would necessarily intrude into church governance in a manner that would be inherently coercive, even if the alleged discrimination were purely nondoctrinal" [internal quotations omitted]; affirming dismissal based on ministerial exception); *Conlon v. Intervarsity Christian Fellowship/USA*, 777 F.3d 829, 833 (6th Cir. 2015) ("The ministerial exception is an affirmative defense that [defendants] should first assert in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"; affirming dismissal under Rule 12(b)(6)); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191-92 (4th Cir. 2011) (reversing, on interlocutory appeal, the denial of religious employer's entitlement to Title VII's religious-employer exemption); *Sterlinski v. Catholic Bishop of Chicago*, 203 F. Supp. 3d 908 (N.D. Ill. Aug. 23, 2016) (dismissing claims as barred by ministerial exception under Rule 12(b)(6); the only relevant issue is "that of the appropriate characterization of [the plaintiff's job] position," not the disputed reasons for the termination).

Prior to *Hosanna-Tabor*, the Seventh Circuit (and other circuit courts) had held that the ministerial exception is a jurisdictional bar to suit. *See, e.g.*, *Tomic*, 442 F.3d at 1038. In *Hosanna-Tabor*, the Court clarified that the defense is not jurisdictional per se, but is nevertheless a defense requiring the court's immediate attention if asserted. *See* 565 U.S. at 194-95 & n.4.

8

Moody.  (FAC ¶¶ 20-21, 54, 61-62, 67(i), 99; FAC Ex. A, C; Ex. A at 1-10 & Man. Ex. G; Ex. B at 1-2, 4-5.)  And Garrick openly pleads the religious nature of her employment, her status as an "ordained minister," and the tax-favored status she enjoyed because she was engaged in "ministerial service" at Moody.  (*See* FAC ¶¶ 20, 26, 97(d); FAC Ex. A, C; Ex. D-H, J- K.)  Thus, Garrick's claims fall squarely within the ministerial exception and must be dismissed.  *See* 565 U.S. at 191-92; *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655 (7th Cir. 2018) (ADA claims of teacher at Jewish elementary school barred by ministerial exception, even though school did not require teachers to be Jewish; because teacher was involved in shaping the practice of Jewish faith for students, she was a "minister" within the exception).  Nor does it matter that Garrick has alleged that she was terminated not just because of her religious beliefs (a patently protected justification for Moody's decision) but that Moody's religious reasons for her separation were "pretext for its true motives—discrimination and retaliation."  (FAC ¶ 64.)  Pretext is not a permissible inquiry when the ministerial exception applies, because the exception depends on the religious nature of the position, not on the veracity of the stated reason(s) for the employment decision.[9]  *See* 565 U.S. at 194-95.[10]

---

[9] While admitting that she was not in alignment with the Doctrinal Statement, Garrick alleges that in her pre-hire interviews in 2014, she mentioned to some interviewers that she was an "egalitarian Christian." (FAC ¶¶ 22, 61, 64.)  From this she argues that Moody's reason for her termination was "pretextual." (FAC ¶ 64.)  But, as stated, pretext cannot even be explored when a religious employer discharges an employee whose position it considers to be "ministerial."  *See* 565 U.S. at 194-95 (courts cannot proceed to analyze alleged pretext, because that "misses the point of the ministerial exception").  In any event, Garrick's repeated, signed statements that she did fully believe the Doctrinal Statement—signed statements made before and after her interviews—plainly trump her assertion that during her interviews she verbally communicated a position contrary to the Doctrinal Statement.  Her written statements represented that she agreed in full with the Doctrinal Statement without "private reinterpretation, . . . disclaimers, clarification, or personal exceptions." (*See* Ex. D at 2, E-H.)

[10] *See also Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 202-04 (2d Cir. 2017) (the religious employer's given reason for the adverse action is irrelevant if the employee was a "minister" within the meaning of the ministerial exception); *Sterlinski*, 203 F. Supp. 3d at 915 (the religious "employer's alleged reason for the adverse employment action plays no role in the [ministerial] exception's applicability"); *Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d 668, 673 (N.D. Ill. 2012) (the reasons for the religious employer's adverse action are immaterial if the ministerial exception applies).

12359712.3

It makes no difference that Garrick has pleaded her claims alternatively under Title VII and Title IX, and as gender discrimination, gender "harassment," retaliation, and breach of contract (in addition to her religious discrimination and "harassment" claims). The ministerial exception bars all such claims. *See* 565 U.S. at 180-81, 196 (ministerial exception barred ADA retaliation claims by elementary teacher at Lutheran school); *Conlon*, 777 F.3d at 836-37 (affirming 12(b)(6) dismissal of state-law discrimination claims under ministerial exception); *Friedlander v. Port Jewish Ctr.*, 347 Fed. App'x 654, 655 (2d Cir. 2009) (affirming 12(b)(1) dismissal of breach-of-contract claim based on ministerial exception; evaluation of rabbi's job performance "would involve impermissible judicial inquiry into religious matters.").[11]

In addition to being barred by the ministerial exception, Garrick's claims are also barred by the variously described "ecclesiastical abstention," "church-autonomy," and "deference" doctrines. *See Fratello*, 863 F.3d at 197, n.15, 202, n.25, 203 (if religious employer offers a religious reason for the termination, courts may not adjudicate the matter because courts have no

---

[11] *See also Schleicher*, 518 F.3d at 475 (ministerial exception barred claims for minimum wage and overtime violations); *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003) (Hispanic Communications Director's Title VII discrimination claims dismissed under Rule 12(b)(1) based on ministerial exception); *Sterlinski v. Catholic Bishop of Chicago*, 319 F. Supp. 3d 940 (N.D. Ill. 2018) (ministerial exception barred church organist's Title VII and ADEA claims that he was terminated from employment in retaliation for his previous complaints of national origin and age discrimination; even though organist's job duty was simply to play the music assigned to him, his position was still that of a "minister" within the "ministerial exception" because the church viewed his role as central to its religious worship); *Demkovich v. St. Andrew the Apostle Parish*, No. 1:16-cv-11576, ___ F. Supp. 3d ___, 2018 WL 4699767 (N.D. Ill. Sept. 30, 2018) (granting the defendant church's Rule 12(b)(6) motion to dismiss the gay music director's claims of hostile work environment based on sex, sexual orientation, and marital status because such claims were barred by the ministerial exception; the alleged harassment related to the church's position on same-sex relationships and courts must avoid "intrusive discovery on the sincerity of [the articulated religious] belief"); *Yin v. Columbia Int'l Univ.*, 335 F. Supp. 3d 803 (D.S.C. 2018) (dismissing the plaintiff's claims under Title VII for race, sex, and national origin discrimination and retaliation, against the defendant religious university [CIU]; plaintiff's job duties as Director of the Teaching English to Speakers of Other Languages Program showed that she was a "minister" covered by the "ministerial exception" because, among other things, she "required her students to pray together over the course of the semester, integrated biblical materials into her courses, . . . prepared students for ministry roles, . . . [and] regularly encouraged students to 'follow the Lord's calling and live out the faith'" [p. 808]).

authority to evaluate the genuineness of religious reasons or pretext; dismissal of claims brought by Catholic school principal affirmed); *Korte v. Sebelius*, 735 F.3d 654, 677-78 (7th Cir. 2013) (reversing the denial of preliminary injunctions sought under the Religious Freedom Restoration Act; "where it applies, the church-autonomy principle operates as a complete immunity, or very nearly so").[12]  Under such doctrines courts have *no jurisdiction* to adjudicate matters relating to religious doctrine, the termination of employees based on matters of religious belief, the religiously motivated reasons for the termination of a religious organization's employee, or allegations of pretext.[13]  And such doctrines are Rule 12(b)(1) jurisdictional arguments, under which Garrick's complaint is *not* entitled to a presumption of truth and the Court may consider all admissible evidence.  *See Global Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810, 814-15 (6th Cir. 2015); *Crawford v. United States*, 796 F.2d 924, 927 (7th Cir.

---

[12] *See also Tomic*, 442 F.3d at 1038 (affirming religious organizations' right "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine" [internal quotations omitted]); *Lee v. Sixth Mount Zion Baptist Church*, No. 15-1599, 2017 WL 3608140, at *30-35 (W.D. Pa. Aug. 22, 2017) ("deference rule" barred court from considering pastor's claims that he was terminated without "cause" under his employment agreement); *Hubbard v. J Message Group Corp.*, No. 17-763 KK/JHR, 2018 WL 3377706 (D.N.M. July 11, 2018) (granting Rule 12(b)(6) motion and dismissing with prejudice claims for defamation, false light, intentional infliction of emotional distress, conspiracy, and injunctive relief; church-autonomy and ecclesiastical-abstention doctrines barred plaintiff's tort claims, which were based on her wrongful expulsion from the religious group and the religious group leader's defamatory statements about her); *Warnick v. All Saints Episcopal Church*, No. 01539, 2014 WL 11210513, at *10 (Pa. Com. Pl. Apr. 15, 2014) ("deference rule" and ministerial exception barred breach-of-contract claim by pastor over demotion to part-time ministry), *aff'd*, 116 A.3d 684 (Pa. Super. Ct. 2014).

[13] *See Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 Fed. App'x 926, 927-29 (11th Cir. 2018) (former employee's breach-of-contract claim against church denomination for terminated retirement benefits was properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because ecclesiastical abstention doctrine prevented court from evaluating denomination's view of the propriety of plaintiff's conduct); *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241 (S.D.N.Y. 2014) (priest's libel per se claim over press release stating he engaged in sexual abuse as determined by church court dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and 12(b)(6) based on ecclesiastical abstention doctrine; adjudicating claim would require evaluation of church's decisions regarding matter of church discipline; *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 120 (D.D.C. 2007) (dismissing for lack of subject matter jurisdiction missionary's breach-of-contract claim because "[d]etermining whether [religious organization's] termination of [plaintiff] fell within the[] contractually-permitted parameters—or whether, as [plaintiff] alleges, her termination was motivated by other concerns—would involve inquiring into a core matter of ecclesiastical self-governance not subject to interference by a state").

1986). Because the evidence plainly shows that the dispute between Garrick and Moody will involve the Court in the adjudication of issues involving religious doctrine, religious standards, and religious motives, Garrick's claims must be dismissed.

B.      *Garrick's Title VII Claims Are All Barred by Title VII's Exemption for Religious Educational Institutions*

Garrick's Title VII claims are barred by Title VII's exemption for religious educational institutions, which is based on the constitutional principles discussed above and provides:

> This subchapter [i.e., Subchapter VI—Equal Employment Opportunities, 42 U.S.C. § 2000e et seq.] shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a) (the "Religious Exemption").[14] The FAC pleads that Moody is a religious educational institution (*see* FAC ¶ 1; FAC Ex. A, C [Charge at 2]), so it is covered by the Religious Exemption. *See, e.g., Killinger v. Samford Univ.*, 113 F.3d 196, 199-200 (11th Cir. 1997) (Religious Exemption applied to religious educational institution and barred plaintiff's discrimination claim).[15] The Religious Exemption permits Moody to require all of its faculty members to fully subscribe to its religious beliefs. *See Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987) (a religious

---

[14] Title VII contains another religious exemption that also applies to Moody, *see* 42 U.S.C. § 2000e-2(e) (exempting educational institutions that are "in whole or substantial part, owned, supported, controlled, or managed by a particular religion or religious corporation, association, or society"), but the discussion of the aforementioned Religious Exemption is sufficient for purposes of this motion to dismiss.

[15] The *Killinger* case held:

> This case comes down to this situation: Plaintiff is not allowed to teach at the divinity school of a religious educational institution because his religious beliefs—as Plaintiff frankly admits—differ from those of the school's dean, the person selected by the religious educational institution to apply its policy and to lead the faculty at the divinity school. . . . To us, a teaching job in a divinity school of a religious educational institution is at the core of the [Religious] [E]xemption; the inherent purpose of such schools is the study of God and God's attributes. We conclude that the exemption protects Samford [University] in this case."

*Killinger*, 113 F.3d at 200.

employer may require even workers in "secular" positions to share its religious beliefs). Garrick expressly pleads that Moody was enforcing a religious requirement when it decided to terminate her employment and took other actions against her (*see* FAC ¶¶ 61, 124, 136, 139; FAC Ex. C [Charge at 1, 2, 4]), so Garrick's Title VII claims are barred by the Religious Exemption. And it is not just Garrick's *religious* discrimination claim that is barred by the Religious Exemption; all discrimination and retaliation claims under Title VII are barred when the employer is taking action to "employ[] . . . individuals of a particular religion to perform work connected with the carrying on . . . of its activities." 42 U.S.C. § 2000e-1(a). Thus, Garrick's Title VII claims (Counts III-VI) must be dismissed.

       C.     *Garrick's Title IX Claim Is Barred by Title IX's Religious Exemption*

Garrick's Title IX claim is barred by Title IX's religious exemption, under which Title IX does not apply when its application "would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3). As the FAC pleads, the heart of Garrick's Title IX claim is her disagreement with, and opposition to, Moody's application of its biblical views about the role of women in ministry. (FAC ¶¶ 31-33, 35, 40-45, 63, 76.) Applying Title IX to require Moody to retain a faculty member who not only strongly disagreed with, but openly advocated against, Moody's religious views is plainly an application that "would not be consistent with the religious tenets of [Moody]." Thus, Garrick's Title IX claim (Count I) must be dismissed.

       D.     *Garrick's Title IX Claim Is Preempted by Title VII*

Garrick's Title IX claim is also preempted by Title VII. The FAC pleads Title VII claims based on the very same conduct that Garrick contends violated Title IX. (*See* FAC ¶¶ 68, 92, 107, 133.) And Garrick's relationship with Moody was an employment relationship, not that of a student (whose only remedy would be under Title IX, since Title VII does not apply to student-institution relationships). When a plaintiff brings Title VII and Title IX claims based on the

13

same facts, Title VII bars the Title IX claim. *See Slabisak v. Univ. of Tex. Health Sci. Ctr.*, No. 4:17-CV-597, 2018 WL 1072511 at *2-3 (E.D. Tex. Feb. 27, 2018) (Title IX claim was preempted by Title VII claim because the protected activity asserted for retaliation claim was a complaint about hostile environment harassment that was covered by Title VII).[16]  Thus, Count I must be dismissed.

E.    *Garrick's Title VII Claims Are All Time Barred*

A prerequisite to any Title VII claim is the timely filing of an EEOC Charge "within one hundred and eighty days after the alleged unlawful employment practice occurred."  *See* 42 U.S.C. § 2000e–5(e)(1).  Because Garrick filed her Charge on January 5, 2018 (*see* FAC Ex. C), the only unlawful acts on which she may proceed are those that occurred after July 9, 2017.  But all of the adverse actions of which Garrick complains occurred prior to July 2017.  The FAC alleges, "On April 17, 2017, Ms. Garrick was officially terminated" (FAC ¶ 62), and alleges a variety of issues that occurred in 2015-2017, *prior to* Garrick's April 2017 termination (*see, e.g.*, FAC ¶¶ 24-61).  With no adverse actions occurring after July 9, 2017, all of Garrick's Title VII claims (Counts III-VI) are time barred and must be dismissed.

F.    *Garrick's Title VII Retaliation Claim Fails Because She Pleads Retaliation for Assisting a Student With a Title IX Complaint, Which Is Not Protected Conduct Under Title VII*

To state a Title VII retaliation claim, Garrick must allege that Moody took an adverse employment action against her "because [she] has opposed any practice made an unlawful employment practice by this subchapter [i.e., Title VII], or because [she] has made a charge,

---

[16] *See also Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783 (N.D. Ill. 2015) (professor's Title IX gender-bias claim was preempted by Title VII because the adverse actions cited by the professor were employment actions; complaint dismissed with prejudice); *Lakoski v. James*, 66 F.3d 751, 753, 755-58 (5th Cir. 1995) (Title IX claim preempted; "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions"); *Howard v. Board of Educ. of Sycamore Community Unit Sch. Dist. No. 427*, 893 F. Supp. 808 (N.D. Ill. 1995) (teacher's Title IX claims of discrimination and retaliation were entirely preempted by Title VII).

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Garrick has not alleged that she opposed any practice made unlawful by Title VII. Rather, Garrick alleges that she assisted a student with a Title IX complaint regarding female students' eligibility to enroll in Moody's Pastoral Ministry major. (*See* FAC ¶¶ 40-45; FAC Ex. C [Charge at 2].) The eligibility of a student for a particular major at a religious educational institution has nothing to do with *employment* discrimination that is illegal under Title VII. Furthermore, Garrick's complaints were about religiously motivated "discrimination" that was not unlawful under Title VII (see discussion above). Thus, Garrick lacks the "protected activity" necessary to state a Title VII retaliation claim.

G.      *Garrick's Title VII and Title IX Retaliation Claims Fail Because Garrick Does Not Plead a Causal Connection Between Her Alleged Protected Activity and Her Termination Twelve Months Later*

Garrick's Title VII and Title IX retaliation claims fail for yet another reason, namely, she does not allege a causal connection between her alleged protected activity and the nonrenewal of her contract roughly twelve months later. Garrick's retaliation claim is based on her "complain[ts] about discrimination and harassment" and her "assist[ance] [to] a female student in filing and processing a Title IX complaint." (FAC ¶¶ 31-35, 40, 44, 74-75, 112-13.) Garrick pleads that these complaints and this assistance to the complaining student occurred from February 2015 to April 2016. (FAC ¶¶ 30-32, 35-40, 44, 116-20.) Yet Garrick pleads that Moody terminated her on April 17, 2017, twelve and more months later. (FAC ¶¶ 61-62, 124.) Furthermore, all Garrick alleges is *temporal sequence* (i.e., the adverse action occurred after the protected activity); she does not allege that Moody communicated that the nonrenewal was because of her protected activity or provide any other evidentiary connection. (*See* FAC ¶¶ 69-76.) Even a few-month gap between the alleged protected activity and the adverse employment action fails to state a claim, and a twelve-month gap plainly does. *See Clark County Sch. Dist. v.*

15

*Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases rejecting causation based on three-month and four-month periods of time between protected activity and adverse action); *Reid v. Neighborhood Assistance Corp.*, 749 F.3d 581 (7th Cir. 2014) (termination of plaintiffs just days after their protected activity still did not permit inference of causation).[17]

    H.    *Garrick's Breach-of-Contract Claim Must Be Dismissed*

        1.    *The Standards Applicable to, and the Allegations of, Garrick's Contract Claim*

To state a breach-of-contract claim under Illinois law, Garrick must plead: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Roberts v. Columbia Coll. Chicago*, 821 F.3d 855, 863 (7th Cir. 2016) (internal quotations omitted). The alleged breach must be of a term in the contract that is definite and certain. *See Wald v. Chicago Shippers Ass'n*, 175 Ill. App. 3d 607, 617, 529 N.E.2d 1138, 1145 (1st Dist. 1988).

Garrick's breach-of-contract claim, under which she simply contends that she was given inadequate notice of her termination, is based on the following provision in the Faculty Manual:

> If for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, *except for such serious violations of Institute policy which may result in immediate termination.*

(FAC ¶ 85 & Ex. B) (emphasis added) (hereinafter the "Notice Provision").[18] Garrick alleges

---

[17] *See also Smith v. Bray*, 681 F.3d 888, 907 (7th Cir. 2012) (holding that "a gap [of] a few months[] between [the plaintiff's] complaints about discrimination and his termination" could not sustain his claim); *Coleman v. Donahoe*, 667 F.3d 835, 860-61 (7th Cir. 2012) ("temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter," but at a minimum the temporal proximity should be only a matter of weeks or a few months); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval was insufficient to create a material issue regarding causation).

[18] Garrick's FAC incorrectly attaches as Exhibit B a page from an outdated/superseded Faculty Manual, and the provision in the correct Manual reads quite differently from Garrick's outdated version: "If for some reason a faculty member is not to be retained after the spring semester, *effort will be made* to advise the teacher of this no later than December 1 of the fall semester, except for serious violations of

16

that the Notice Provision is contractually binding in light of the following provision in her

Faculty Contract:

> [Moody] and the faculty member mutually agree that this contract will be binding
> except as modified by . . . mutual consent . . . or unless terminated for cause, in
> which case the procedures of termination stated in the current Faculty Manual and
> the Employee Information Guide will be followed by both parties.

(FAC ¶ 84 & Ex. A [2016-17 Faculty Contract].)

### 2. *Garrick's Contract Claim Fails Because Her Allegations Defeat the Application of the Provision She Contends Was Breached*

The initial problem with Garrick's breach-of-contract claim is that the Notice Provision

on which she relies does not apply if Moody's reason for her separation was a "serious

violation[] of Institute policy." (FAC ¶ 85 & Ex. B.) Yet Garrick has conceded that Moody

terminated her employment for failing to hold to its Doctrinal Statement and because of her

contrary religious beliefs, which Garrick's faculty contract plainly stated was a *sine qua non* to

employment at Moody. (*See* FAC ¶¶ 61, 63, 124, 143-44 [admitting that Moody terminated her

for doctrinal nonalignment]; FAC Ex. A.)[19] Thus, Garrick concedes that the reason for her

termination was a "serious violation[] of Institute policy," which makes the Notice Provision

inapplicable. And because contract interpretation is a matter of law for the Court, *see Wald*, 175

Ill. App. 3d at 617-18, 529 N.E.2d at 1145, this Court may apply standard contract law principles

in dismissing Garrick's contract claim pursuant to Rule 12(b)(6).[20]

---

Institute policy which may result in immediate termination" (emphasis added). (Ex. A at 48; Ex. L ¶ 5.)
Garrick plainly has no breach-of-contract claim under this provision. But Garrick does not have a claim
under the outdated provision either, as Moody discusses herein.

[19] The faculty contract, in its brief (nine-sentence) text, included the central requirement that
Garrick "affirm[] that []she agrees with, personally adheres to, and supports each and every statement" in
the Doctrinal Statement. (FAC Ex. A.)

[20] Garrick's claim also fails because the Notice Provision necessarily applies only when Moody
knows (or possibly should have known) in the fall semester that a faculty member "is not to be retained
after the Spring semester" (FAC ¶ 85 & Ex. B), which Garrick does not allege.

      3.      *Garrick's Contract Claim Fails Because Her Complaint Does Not Identify a Bargained-For Exchange or Plead Facts Defeating the Faculty Manual's Disclaimers*

Garrick's breach-of-contract claim fails for another elementary contract-law reason. Contract claims may only be based on terms that the parties have agreed are part of their bargained-for exchange and will give rise to enforcement by the other party. The FAC does not plead any facts showing that the Faculty Manual provision on which Garrick relies was intended to be enforceable as a contractual obligation by either side. And, in fact, the contrary is the case. The cover page of the Manual expressly disclaimed all potential contract rights: "This information or any other document published by MBI *is not, nor is it intended to be, a contract of employment*." (Ex. A at 1 [emphasis added].) Because Garrick alleges nothing that would overcome the Manual's explicit disclaimer, her contract claim must be dismissed.

      4.      *Garrick's Contract Claim Is Barred by the Ministerial Exception*

If Garrick's breach-of-contract claim is not dismissed for the pleading deficiencies above, her claim is necessarily barred by the ministerial exception. This is because a finding that the FAC might state a claim because there is a dispute about whether Garrick's termination was for "a serious violation[] of [Moody] policy" would mean that this Court will be called upon to decide whether Moody believed that Garrick's doctrinal nonalignment was a "serious violation." But this Court is prohibited from adjudicating the "true" reasons for Garrick's discharge or deciding whether Garrick's nonadherence to Moody's Doctrinal Statement was a "serious violation," because such issues will unquestionably result in this Court becoming unconstitutionally entangled in Moody's religious affairs, thus depriving the Court of authority to adjudicate Garrick's contract claim. *See Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113 (3d Cir. 2018) (ministerial exception barred the court from considering the pastor plaintiff's claim that the church breached his written employment agreement, because a component of the

18

analysis would be the church's reason(s) for terminating the pastor's employment and whether such reason(s) amounted to "cause").[21]  As explained in *Lee*:

> [P]arsing the precise reasons for [plaintiff] Lee's termination is akin to determining whether a church's proffered religious-based reason for discharging a church leader is mere pretext, an inquiry the Supreme Court has explicitly said is forbidden by the First Amendment's ministerial exception. *Hosanna-Tabor*, 565 U.S. at 194-95[.] . . .
>
> Our sister circuit courts have *repeatedly dismissed breach of contract claims* asserted by terminated religious leaders against their religious institution employers based on the ministerial exception.  [multiple citations omitted] *Indeed, we are not aware of any court that has ruled on the merits (i.e., not applied the ministerial exception) of a breach of contract claim alleging wrongful termination of a religious leader by a religious institution.* . . . [Here,] the record demonstrates that further inquiry into the Church's reasons for terminating Lee would inappropriately intrude on internal Church doctrine and governance concerning a pastor's fulfillment of his duties. . . .

903 F.3d at 121-22 (emphasis added).  Thus, Garrick's breach-of-contract claim is barred by the ministerial exception. [22, 23]

## IV.  CONCLUSION

For the reasons stated above, Moody asks that Garrick's FAC be dismissed.  And the dismissal should be with prejudice, because the FAC is Garrick's second complaint in this

---

[21] *See also Friedlander v. Port Jewish Ctr.*, 347 Fed. App'x 654, 655 (2d Cir. 2009) (affirming 12(b)(1) dismissal of breach-of-contract claim based on ministerial exception; evaluation of rabbi's job performance "would involve impermissible judicial inquiry into religious matters"); *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 120 (D.D.C. 2007) (dismissing for lack of subject matter jurisdiction missionary's breach-of-contract claim).

[22] Garrick's contract claim is also barred by the ministerial exception in light of the elements that Garrick must allege (and ultimately prove), which include the requirement that she "substantially performed" under the Contract before Moody's alleged breach.  Moody contends that Garrick was in clear breach of her Contract by not being aligned with the Doctrinal Statement, an express requirement of the Contract.  If Garrick were to dispute that she breached the Contract by her nonalignment, here again the Court would necessarily become embroiled in a dispute as to whether Garrick was or was not in alignment with Moody's religious beliefs, an inquiry that this Court is neither qualified nor permitted to handle.

[23] If the Court dismisses Garrick's Title VII and Title IX claims, but is not inclined to dismiss Garrick's breach-of-contract claim on the merits, the Court should dismiss the contract claim for lack of supplemental jurisdiction under 28 U.S.C. § 1367.  (*See* FAC ¶ 17 [asserting only supplemental jurisdiction over the breach-of-contract claim].)

12359712.3

matter, and the FAC failed to remedy the numerous deficiencies that Moody pointed out in its

motion to dismiss Garrick's original Complaint.[24]

Dated:  January 17, 2019                          Respectfully submitted,


                                                  s/  Christian Poland
                                                  One of the Attorneys for Defendant
                                                  Moody Bible Institute

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

---

[24]If this motion to dismiss is not granted in its entirety, the Court should continue to limit the discovery that proceeds to the narrow question of the application of the ministerial exception and Moody's other religious defenses, as this Court ordered under Garrick's original Complaint (Dkt. 35), and as courts regularly and properly require.  *See, e.g., Fratello*, 863 F.3d at 198 (district court appropriately ordered discovery limited to whether employee was a "minister" for purposes of ministerial exception).

12359712.3

<u>CERTIFICATE OF SERVICE</u>

Christian Poland, one of the attorneys for Defendant Moody Bible Institute states that on January 17, 2019, he served a true and correct copy of the foregoing *Defendant Moody Bible Institute's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(1) and 12(b)(6)* upon Plaintiff by causing said document to be delivered to her via email, to which form of service she has consented, addressed as follows:

Janay E. Garrick
P.O. Box 1729
Orlando, FL 32802
janay.garrick@gmail.com


s/ Christian Poland

12359712.3

INDEX TO EXHIBITS TO MOODY'S
MOTION TO DISMISS GARRICK'S FIRST AMENDED COMPLAINT

A       Moody's Faculty Manual and Faculty Manual Ex. G, the "Job Description for Faculty Member" (but not the other Faculty Manual exhibits due to their size and lack of relevance)

B       Moody's Employee Information Guide (the relevant excerpts only; cover page through page 6)

C       Moody's Institutional Positions Related to the Moody Bible Institute Doctrinal Statement (1928) (the "Doctrinal Statement")

D       Garrick's Employment Application

E       Garrick's 2014-2015 Faculty Contract

F       Garrick's 2015-2016 Faculty Contract

G       Garrick's 2015 Signed Acknowledgment of Her Adherence to the Doctrinal Statement

H       Garrick's 2016 Signed Acknowledgment of Her Adherence to the Doctrinal Statement

I       April 17, 2017 Nonrenewal Letter

J       Garrick's May 17, 2017 Grievance (excerpts only)

K       Garrick's 2016 and 2017 Minister Housing Allowance Applications and Certifications

L       Declaration of Larry Davidhizar

M       Declaration of Debbie Zelinski

12359712.3