**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JANAY E. GARRICK,　　　　　　**FILED**　　)

　　　*Plaintiff,*　　　　　NOV - 5 2019　)
　　　　　　　　　　　　　　　　　　　　)　　Case No. 18-cv-00573
　　v.　　　　　　　**THOMAS G. BRUTON** )
　　　　　　**CLERK, U.S. DISTRICT COURT** Judge John Lee
MOODY BIBLE INSTITUTE,　　　　　)　　Magistrate Judge Young Kim
　　　　　　　　　　　　　　　　　　　　)
　　　*Defendant.*　　　　　　　　　　)

## PLAINTIFF'S SECOND AMENDED COMPLAINT

The Plaintiff, Janay E. Garrick, brings this Complaint against defendant Moody Bible Institute for (1) hostile work environment and (2) disparate treatment based on gender (female) in violation of Title VII, 42 U.S.C. § 2000e-2(a); (3) gender discrimination (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and (4) retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).[1]

## THE PARTIES

1.　　Defendant Moody Bible Institute ("MBI" or "Moody") is a post-secondary religious educational institution that offers both undergraduate and graduate courses of study. It is a not-for-profit corporation incorporated in the state of Illinois.

2.　　MBI's primary campus is located in downtown Chicago, IL.

3.　　MBI has accepted federal financial aid funds pursuant to Title IV of the Higher Education Act since at least 2012.

---

[1] Plaintiff brought other religious-based claims in her first Complaint and First Amended Complaint (FAC), but they were dismissed with prejudice. Therefore, those claims are not in this Second Amended Complaint.

4.      As of the date of this filing, MBI has not submitted a request to the Office of Civil Rights of the U.S. Department of Education for a religious exemption to the requirements of Title IX.

5.      Plaintiff Janay E. Garrick ("Ms. Garrick") was employed by MBI at its Chicago campus as an Instructor of Communications from December 1, 2014 until December 31, 2017.

## PROCEDURAL BACKGROUND

6.      The Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on January 5, 2018. See Exhibit A (EEOC Charge).

7.      The Plaintiff's case was timely filed with the Federal Court on January 25, 2018.

8.      On September 24, 2018, the EEOC issued Ms. Garrick her Notice of Rights letter, which states that the Plaintiff must file a lawsuit "WITHIN 90 days of … receipt of this notice."

9.      On September 27, 2018, Plaintiff's counsel withdrew due to the Plaintiff's inability to continue paying out-of-pocket for her legal fees.

10.     After 45 days of trying to secure new counsel, contacting almost 200 law firms, organizations, and law professors, the Plaintiff was unable to do so.

11.     On October 16, 2018, during Ms. Garrick's 45-day period in which Plaintiff was seeking new counsel, the Defendant ("Moody") moved to dismiss, and the court ordered it to re-brief. The Defendant refused because it thought the Plaintiff was amending.

12.     On November 14, 2018, the Plaintiff was forced to proceed representing herself.

13.     Plaintiff has exhausted her remedies with the EEOC. However, prior to issuing Ms. Garrick's right to sue letter, the EEOC investigator assigned to her case communicated to Jamie Franklin, Ms. Garrick's counsel at the time, that the EEOC would like to take this further, but that it was not the right time.

## JURISDICTION AND VENUE

2

14. This Court has federal question jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

15. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

17. The Northern District of Illinois has personal jurisdiction over the defendant because it resides in and/or and maintain offices in this District and/or do business in Illinois.

## FACTS SUPPORTING THE PLAINTIFF'S CLAIMS

18. Ms. Garrick is an ordained minister. She has a Master's Degree in Cross-Cultural Studies and a Bachelor's Degree in Creative Writing and Speech Communications, and now holds a terminal degree in her field — a Master of Fine Arts Degree in Creative Writing completed in 2019. Ms. Garrick has worked in the field of communications for 17 years.

19. Ms. Garrick was hired by MBI on December 1, 2014 as an Instructor of Communications in MBI's Communications Program, which is one of two programs in its Music and Media Arts Division.

20. Ms. Garrick informed MBI during the interview process that she was an "egalitarian Christian" and believed in gender equality in the ministry. MBI hired her with full knowledge of her beliefs and renewed her contract twice with this knowledge.

21. Ms. Garrick's direct supervisor was Brian Kammerzelt, the Communications Program Head. Terry Strandt, Chair of the Music and Media Arts Division, was responsible for her performance reviews. Ms. Garrick also reported to Larry Davidhizar, Vice President and

Associate Provost of Faculty. Other MBI administrators at the time included James Spencer, Vice President and Dean; Junias Venugopal, Provost; Debbie Zelinski, Vice President of Human Resources; Clive Craigen, Faculty Advocate (during the grievance hearing); Tim Arens, Dean of Student Life; and Bryan O'Neal, Dean of the Undergraduate Faculty.

### Campus-Wide Hostility Toward Women

22. Ms. Garrick quickly learned that MBI both tolerated and cultivated an environment that was hostile to female faculty and students.

23. For example, in October 2014, shortly before her campus interview, Ms. Garrick was told by Larry Davidhizar ("Mr. Davidhizar") to remove the reference to being an ordained minister from her resume. Later, it became clear that MBI believed that the office of pastor is reserved exclusively for male candidates and did not want her to represent herself as an ordained minister.

24. Ms. Garrick was disadvantaged by this demand. When she was hired, she was not told by administration that ordained ministers could claim a tax deduction for their housing costs. After a male professor informed her of this, Ms. Garrick took steps to file her ordination license with MBI in order to claim the deduction, but she lost the opportunity to take the deduction for a full year.

25. At the MBI's new employee orientation on December 19, 2014, Jean Jacobsen, MBI Benefits Administrator, informed the new employees that 60 percent of Moody's on-campus dormitory space was allocated for males.

26. Female instructors were confined to certain programs, like the one in which Ms. Garrick was hired, while the more prestigious programs were staffed exclusively by men.

27. In late 2015, Ms. Garrick was asked to assist in forming a committee to address women's concerns on campus, which she did. The group, called Respect for Women Personally and Ministerially, was viewed with suspicion and hostility from the beginning. Ms. Garrick was explicitly told by Provost Junias Venugopal ("Mr. Venugopal") that any changes resulting from the committee's work should be "small and incremental." The group began after four communications faculty, including Ms. Garrick, complained of gender discrimination on Moody's campus. Ms. Garrick and another faculty member, Rosalie de Rosset ("Ms. de Rosset"), took the lead in organizing and calling the group together for its first, and only, meeting on February 17, 2016. The group was comprised of both male and female faculty from at least three different majors. At their first meeting, the following issues, *inter alia*, were discussed: the lack of female speakers at President's chapel and student chapel, some professors in the all-male programs being known to be "overtly discouraging" to females; administration citing "donors" as the reason for the lack of female leadership and participation; and the cancellation of a radio program that had gender inclusive messaging. When the topic of Ms. Garrick's involvement in a student's Title IX gender discrimination complaint was discussed, the meeting ended abruptly and would never reconvene during Ms. Garrick's employment.

28. The faculty workroom that Ms. Garrick used was otherwise all-male, and her male colleagues treated her with antagonism. For example, they ignored her when she spoke to them, left the room abruptly when she entered, and openly ridiculed her. When Ms. Garrick tried to suggest solutions to the problem, she was told by MBI administration to simply avoid the workroom and to get her own printer so that she could work in her office.

29. During the relevant time period, Ms. Garrick and similarly-situated female employees

also were treated differently than coworkers of a different gender. For example, female faculty were subjected to the following acts, *inter alia*…

    (a) denied the opportunity to speak at President's Chapel, and

    (b) excluded from teaching in certain undergraduate programs, while male faculty were permitted to do so.

30.    Ms. Garrick was denied the opportunity to speak at chapel although she twice requested to do so.

31.    Some other specific examples of the discrimination and harassment against Ms. Garrick and similarly-situated female employees include the following acts, *inter alia*…

    (a) two of the three outspoken female faculty members who served on Ms. Garrick's Grievance Committee, and who actively questioned Moody administration's actions concerning Ms. Garrick, were terminated very shortly after Ms. Garrick's termination, while the two male professors on the Grievance Committee were retained;

    (b) Ms. Garrick was subject to peer reviews while similarly-situated male professors in the Communications Program were not;

    (c) Ms. Garrick was disciplined for her "inflammatory rhetoric" at a faculty meeting, and told she needed "to learn how to speak around here" while a male professor (who wrote and presented their *joint* proposal) was not disciplined; and

    (d) Ms. Garrick was not informed by Moody that she could receive a tax exemption for being an ordained minister while her male counterparts were informed of this benefit by Moody and allowed to use this employment/job qualification to claim a tax exemption.

32.    During the relevant time period, Ms. Garrick was denied a reduced teaching load at Moody while she completed a terminal degree in her field, while similarly-situated male faculty

in terminal degree programs did receive reduced teaching loads.

33.     During the relevant time period, Ms. Garrick was required to develop and create complete, from scratch, five new undergraduate courses beyond the scope of her Instructor position requirements while recently hired male Instructors received no similar assignments.

34.     In the presence of Ms. Garrick and the entire Communications Program faculty, Moody's Title IX coordinator stated at a meeting that she would have been able to accomplish certain tasks had she not been occupied with a Title IX complaint.

35.     The Defendant has created a hostile workplace by discriminating against females repeatedly, including the following acts, *inter alia...*

(a) being ignored, avoided, and rejected by male professors in the common workroom and hallways by stopping talking/going silent when Ms. Garrick entered the workroom, putting heads down and avoiding eye contact with Ms. Garrick, quickly leaving/clearing the workroom when Ms. Garrick entered, and/or ignoring Ms. Garrick when Ms. Garrick spoke directly to them;

(b) being told by a male professor how women in Moody's hiring process frequently need to be "walked through" required employment documents;

(c) disparaging comments about Ms. Garrick's dress while she stood at the photocopier ("What are you wearing?" remarked one male theology professor. "I thought you were a student");

(d) disparaging remarks about Ms. Garrick's undergraduate and post-graduate educational institutions for being too liberal and inclusive. After inquiring about Ms. Garrick's educational background, a male professor remarked "they believe anything and everything there," and upon hiring, administrator Larry Davidhizar ("Mr. Davidhizar"), Moody's

Associate Provost of Faculty, referred to Ms. Garrick's undergraduate education as inadequate and offered her the opportunity to take classes at Moody;

(e) being told by Mr. Davidhizar that she did not understand her theological positions even though she held an advanced seminary degree;

(f) being ignored by a male Theology professor after Ms. Garrick spoke and wrote about "white privilege" on Moody's campus and in broader culture.

36. Additionally, during the relevant time period, there were numerous reports of gender harassment and gender-based violence (sexual assault, rape) that went unaddressed or ignored by Moody administration contributing to an unsafe campus environment for female students and faculty to speak up and to report. For example, one female student who alleged physical assault by her partner, a male MBI student, was instructed to remain silent and to *not* file a Title IX complaint.

37.      The environment of pervasive gender discrimination at Moody contributed to a hostile work environment and created a male-dominated workplace culture in which the retaliatory firing of Ms. Garrick would be acceptable and routine.

38.      In 2012, the Higher Learning Commission, an independent accrediting body, critiqued Moody that its faculty looks "white male," and tasked it to diversify. The Defendant has created a hostile workplace by discriminating against females repeatedly, including the following acts, *inter alia…*

(a) male students organized a student "walk out" when a female speaker took the stage at Founder's Week (February 6-10, 2017) which, on information and belief, resulted in no discipline or admonishment from administration. At a February 22, 2017 faculty meeting, a long-term male Bible Program faculty member argued: "I think it's time we addressed

8

the misogyny and sexism at this institution;"

(b) Moody's annual Pastor's Conference had never included female speakers as main session speakers, leading to continued feelings of exclusion and disenfranchisement from females;

(c) there were a disproportionate number of male to female speakers at required student chapels;

(d) some Bible professors were known to be "overtly discouraging" to female students in their classes (this statement was made by a Bible professor at the Women's Concerns meeting);

(e) there were zero female faculty teaching in the Bible Program despite qualified applicants,

(f) there were zero female faculty teaching in the Theology Program despite qualified applicants;

(g) there were a disproportionate number of male to female faculty;

(h) there were zero female administrators despite qualified applicants, and

(i) while Moody purportedly requires faculty to sign and adhere to their contract "without disclaimers, clarifications, or personal exceptions," Moody selectively enforces adherence, and this enforcement disproportionately affects female faculty who do not "align" or "adhere;"

(j) During the relevant time period, there were allegedly key male Moody Radio personnel and male faculty who did not affirm Moody's contract "without disclaimers, clarifications, or personal exceptions" but who remained employed by Moody.

*Advocacy on Behalf of Students*

39.     In February 2015, Ms. Garrick was approached by a lesbian student who was struggling with MBI's hostility toward her sexual orientation. Ms. Garrick brought the student's concerns to Dean Tim Arens. His response was to ask what she said and did in response to the student and to warn her that MBI had "community living standards." The female student was later expelled from MBI.

40.     In October 2015, a female student informed Ms. Garrick that she wanted to enter the Pastoral Ministry program but that it was closed to women. Ms. Garrick was shocked and began to investigate MBI's stance on barring women from access to its programs.

41.     In January 2016, another female student came to Ms. Garrick for help with the same problem. The student wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender.

42.     Ms. Garrick discovered that MBI's website at the time stated that the program was only open to male students. She contacted her own faculty mentor and the head of the program to ask about the exclusion of women, and they confirmed that it was true.

43.     MBI was accepting federal financial aid funds during this time and, on information and belief, was reporting to the Department of Education that it met all the relevant criteria, including the prohibition against discriminating on the basis of sex.

44.     Ms. Garrick helped this student lodge the first Title IX complaint ever brought at MBI.

45.     On February 17, 2016, the first meeting of the Respect for Women Personally and Ministerially group was held. Ms. Garrick was rebuked when she told the participants that she was assisting a student who had been barred from an MBI program because of her sex.

Immediately after the meeting, Ms. Garrick's faculty mentor called her into a closed-door meeting and attacked her further, asking, "How can you have any integrity?"

46.     On February 20, 2016, Ms. de Rosset cancelled the second Respect for Women Personally and Ministerially meeting – the group would never reconvene during Ms. Garrick's tenure, and Ms. de Rosset would go on to slander Ms. Garrick as a liberal progressive in staff meeting.

47.     On February 23, 2016, Ms. Garrick met with Mr. Davidhizar and Bryan O'Neal about the student's complaint and about the hostility Ms. Garrick herself was facing. Rather than seeking solutions to the concerns raised by Ms. Garrick, the administrators suggested she might not be able to continue in the faculty and told her she should voluntarily leave MBI.

48.     Ms. Garrick decided to stay and fight.

49.     Throughout the spring of 2016, Ms. Garrick continued to work with the student to advance her Title IX gender discrimination complaint against MBI.

50.     At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website explicitly limited the degree program to male students. Then MBI tried to convince the student to take courses in another program, presenting her with false and misleading information about its offerings. Ultimately, despite its attempts to muddy the waters, it became clear that MBI had been discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

51.     Despite this admission, MBI denied the student's complaint in writing, stating that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." In its denial letter, MBI

purported to have misunderstood the nature of the student's complaint – which was untrue, as Ms. Garrick and the student had made it clear numerous times.

52.     With Ms. Garrick's help, the student appealed.

53.     After word spread on campus about the Title IX complaint, professors made disparaging comments to the student such as, "Don't you know the image of God is male?" and "What makes you think you have the right to preach?"

54.     The student and Ms. Garrick continued to push MBI to open the program to all women. As a result, on April 20, 2016, MBI announced that it intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women (though it failed to notify the student herself until mid-May 2016, and even then continued to equivocate about its position).

55.     Even after this decision, MBI continued, and, on information and belief, continues to discourage women from applying to the Pastoral Ministry program. At the time of Ms. Garrick's termination there were just three women in a program of approximately 60 students. It is unclear whether MBI has officially opened the program to all women.

56.     Throughout the summer and fall of 2016, Ms. Garrick continued to experience hostility and opposition from MBI's faculty and administration.

57.     Ms. Garrick also assisted a transgender student with her hostile environment concerns, which Ms. Garrick reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

58.     In September 2016, Ms. Garrick spoke out at an all-faculty and administration meeting and told a story about a transgender student who came to Ms. Garrick in tears over feeling shunned and excluded at Moody. Ms. Garrick co-prepared, co-submitted, and co-presented (with a male faculty member) a proposal with an inclusive message.

59.     In response, the next day Mr. Davidhizar pulled Ms. Garrick into his office and told her that the speech was "inflammatory rhetoric" and that she was "not a Moody fit." The male faculty member who co-presented and co-wrote the proposal was never the subject of any verbal harassment or disciplinary treatment.

### *Retaliatory Denial of Promotion and Hostile Work Environment*

60.     On September 29, 2016, at Ms. Garrick's request, she met with James Spencer ("Mr. Spencer"), Vice President and Dean, in order to discuss the intimidating, hostile, and/or offensive work environment she was experiencing. Upon information and belief, Ms. Garrick's complaints were not addressed by Moody administration as the behavior continued during the remainder of her employment.

61.     On November 1, 2016, after two years as an Instructor at MBI, Ms. Garrick submitted a written application for an increase in rank to Assistant Professor.

62.     The position of Instructor is the lowest-paid and lowest-status position at MBI.

63.     To become an Assistant Professor, MBI requires the faculty member to have a Master's Degree or equivalent and a minimum of 12 years of full time experience in a field directly related to his or her primary teaching responsibilities. Once those requirements are met, MBI reviews three sets of criteria to determine whether to issue a promotion to a faculty member: Teaching Performance, Professional/Scholarly Status, and Service within each criterion.

64.     Ms. Garrick's background and performance fully qualified her for a promotion to Assistant Professor under all of MBI's requirements. She had a Master's Degree (and began working on a second advanced degree in 2016). She also had 15 years of experience in the Communications field.

65.     During her two years as an Instructor, Ms. Garrick was required to perform work at the level of an Assistant Professor. Among many other duties, she developed and implemented six courses, including upper-level electives; created institution-wide initiatives like the publication of a new art and theology journal; developed an educational plan for ESL students; fulfilled all of her academic and professional duties; and actively participated in her department and the wider institution. Such duties – particularly the creation of new course curriculum – were beyond the scope of the Instructor rank, based on Moody's own written policies.

66.     Nevertheless, on November 1, 2016 Mr. Davidhizar denied Ms. Garrick's application for rank increase within one hour of receipt, stating that she needed to "improve her fit within the division" – a clear reference to the hostility against Ms. Garrick as a result of her opposition to discrimination at the institution.

67.     MBI's retaliatory denial of Ms. Garrick's promotion application resulted in both a loss of income and the loss of professional development opportunities.

68.     On December 3, 2016, Ms. Garrick received an informal performance review from Mr. Strandt in which he congratulated her on "two years of excellent service" and stated that she was "concise, clear and engaging with the students" during a class he had observed her teaching. Mr. Strandt's glowing review further highlighted the disconnect between Ms. Garrick's excellent performance and MBI's denial of her application for a promotion.

69.     In retaliation for Ms. Garrick's complaints, the Defendant took the following actions, *inter alia…*

  (a) verbally harassed and disciplined her (administrators such as Mr. Davidhizar told her she needed to be more careful about how she spoke around MBI, told her that her rhetoric was inflammatory, warned her against waving the women's rights "flag");

(b) shunned her/gave her the silent treatment (male professors refused to speak to Ms. Garrick when she spoke to them, they avoided eye contact with her, and did not speak to her in the workroom and hallways);

(b) threatened to demote her to teaching General Education courses and to assign her elective courses to another professor;

(c) subjected her to an unfounded negative performance evaluation,

(d) denied her a chance for promotion;

(e) treated her poorly in her final days at Moody including having a security guard follow her as she left campus, clearing out her office; and

(f) terminated her employment.

70.     During the relevant time period, and in the middle of Ms. Garrick's assistance to a female student in filing a Title IX (gender discrimination) complaint, Moody administrators pressured Ms. Garrick to quit her job.

71.     During the relevant time period, Ms. Garrick experienced open hostility from some of the all-male faculty in the Bible and Theology Programs after it became known to them that in January 2016 she began assisting a female student in filing a Title IX complaint (for her exclusion from the all-male Pastoral Ministry undergraduate program).

72.     On February 19, 2016, Ms. Garrick requested a meeting with Debbie Zelinski ("Ms. Zelinski"), Vice President of Human Resources, to discuss the Title IX backlash and hostility she was experiencing from peer faculty. Ms. Zelinski, *inter alia*, suggested that Ms. Garrick avoid the Sweeting 3 workroom and get a printer for her office.

73.    On February 23, 2016, in a meeting in which Ms. Garrick discussed the Title IX backlash and hostility she was experiencing from peer faculty, Mr. Davidhizar and Bryan O'Neal, Dean of Faculty, pressured Ms. Garrick to quit.

74.    At a Communications department meeting on April 18, 2016, faculty member, Ms. de Rosset, attacked Ms. Garrick for being "liberal progressive" and warned that the department did not need to hire any more such faculty. Subsequently, Ms. Garrick was told by Unity Ostercamp, a Moody administrator whom Ms. Garrick had never met, "I heard de Rosset hates you." Ms. Garrick reported this, and complained to her immediate supervisor, Communications Program Head, Brian Kammerzelt ("Mr. Kammerzelt"). Upon information and belief, Mr. Kammerzelt did nothing to address the hostile work environment.

75.    Mr. Davidhizar also instructed Ms. Garrick to remove herself from her role in organizing and co-leading the Respect for Women Professionally and Ministerially group.

76.    Ms. Garrick reported this negative conversation with Mr. Davidhizar to Communications Program Head, Mr. Kammerzelt.

77.    In fact, on numerous occasions, both in-person and in writing, Ms. Garrick reported to Mr. Kammerzelt that she was experiencing an intimidating, hostile, and/or offensive work environment from both her peer faculty and Moody administrators.

78.    In January 2017, at Ms. Garrick's two-year performance review, Mr. Kammerzelt praised her for "doing everything you were hired to do," and informed her that Larry Davidhizar wanted to know if she intended to stay. Ms. Garrick responded yes.

79.    The Defendant has retaliated against Ms. Garrick, including the following acts, *inter alia*…

(a) on December 3, 2016, after two years of employment, Ms. Garrick received a glowing

   review in writing by Mr. Strandt, Chair of the Music and Media Arts Division, after he

   had observed one of her classes, Core Tools: Words:

   > "Dear Janay, Congratulations on your two years of excellent service to
   > MBI. Your Industry and enthusiasm is gratifying and contributing in a huge way
   > to your Program and the whole Division. I enjoyed very much your class on
   > Grant Writing for NGO's. You were concise, clear and engaging with the
   > students. I hope that God blesses you with the same unexpected surprise our
   > family received by finding a long-term home at Moody. Warmly, Terry."

   And just four months later, Mr. Strandt would deliver Ms. Garrick a borderline "Below

   Standards" performance evaluation;

(b) in January 2017, two months prior to Ms. Garrick receiving a negative performance

   evaluation, Mr. Kammerzelt instructed her to add a new course to her teaching schedule

   (Debate) and to develop what would have been her fifth new course (Missions

   Journalism) slated for release in the fall 2017;

(c) on March 2, 2017, Mr. Davidhizar chastises and verbally harasses Ms. Garrick for

   missing her performance evaluation meeting with Mr. Strandt even though Mr. Strandt

   had cancelled the meeting. Mr. Davidhizar then communicated with Ms. Garrick that she

   would not have a contract renewal in her mailbox when she returned from Spring Recess,

   and that if Moody renewed her contract, it would have expectations: "there are

   performance and interpersonal issues";

(d) on March 3, 2017, Mr. Kammerzelt stated that Ms. Garrick had been subjected to reviews

   by her peer Communications professors. He stated further that she would have the

   opportunity to similarly prepare reviews of her peers;

(e) on March 30, 2017, Ms. Garrick received a falsified negative performance evaluation

from Mr. Strandt. Mr. Strandt stated that peer reviews helped form the basis for his

negative evaluation of her. During this meeting, Mr. Strandt stated that he had no

knowledge of Ms. Garrick's work performance and got all his information from Brian

Kammerzelt, Larry Davidhizar, and peer reviews. Additionally, Mr. Strandt is the second

administrator to have informed Ms. Garrick that she had been subjected to peer reviews,

whose existence were later denied by Vice President and Dean, James Spencer, during

Ms. Garrick's grievance procedures.

(f) on April 5, 2017, when Ms. Garrick questioned Mr. Davidhizar about Mr. Strandt's

negative conclusions regarding her work performance as well as his data collection

methods and information sources, Mr. Davidhizar responded:

> "This being his (Terry Strandt's) first time has allowed for pure, unadulterated
> objectivity in all of his reviews. No one has had input into his evaluations of
> anyone including me. My only input back before Spring Break is when he
> mentioned that it would not be a strong review I talked to him about what should
> be included in a 'Performance Improvement Program'"; and

(g) Ms. Garrick was never given any information about the peer reviews even though she

requested to see them. During the grievance procedure, James Spencer, Vice President

and Dean of Moody Bible Institute, stated that there were no peer reviews.

80.     On April 5, 2017, in an email entitled "Performance Evaluation Follow-up Meeting |

April 7 @ 1pm," Moody changed tactics for separating Ms. Garrick from her employment, Mr.

Davidhizar stating that he would like to meet "to discuss (Ms. Garrick's) vocal non-alignment

with the Institute's doctrinal statement as it relates to 'Gender Roles in Ministry.'"

81.     On April 9, 2017, after fighting her negative performance evaluation, Moody raised Ms.

Garrick's score from 2.57 (borderline "Below Standards") to 2.96 ("Meets Standards"). Even

though Ms. Garrick's score was raised, there was never any acknowledgement of the five new courses she created during her first two years of employment at Moody.

### *Retaliatory Discharge*

82.     In early 2017, Ms. Garrick was due to receive her formal two-year performance review. She initially met with Mr. Kammerzelt, who asked her if she wanted to stay at MBI. She responded that she did.

83.     This led to a series of meetings, cancelled meetings, and emails with MBI administrators regarding Ms. Garrick's performance. Mr. Davidhizar told her she had "performance and interpersonal issues," despite a lack of evidence of either. Mr. Kammerzelt told her she had been found to be performing "below standards" by Mr. Strandt, despite his earlier glowing reports. Mr. Kammerzelt also threatened to demote Ms. Garrick to teaching only General Education courses and to shift three of the elective courses she had developed into the hands of another full Communications professor.

84.     Finally, on March 30, 2017, Ms. Garrick met with Mr. Strandt for a final, formal performance review. He handed her a negative written performance evaluation – the first written criticism of her performance she had ever received at MBI – that was filled with inaccuracies and misinformation. There was no mention at this time of Ms. Garrick being non-aligned with the gender provisions of MBI's doctrinal statement.

85.     On April 12, 2017, Ms. Garrick met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told her that she did not fit in and that she was not aligned with MBI's doctrinal statement as it related to gender roles in ministry. Mr. Davidhizar admitted that he heard Ms. Garrick state her egalitarian position during her October 2014 panel interview prior to MBI's decision to hire her.

86.     On April 17, 2017, Ms. Garrick was officially terminated. MBI stated that she was required to continue teaching classes and performing her other job duties until the end of that semester, then stay on as a non-teaching faculty member for the Fall 2017 semester. Her last day of pay was December 31, 2017.

87.     On April 26, 2017, after Ms. Garrick spoke to students and student reporters about her termination, MBI asked her to leave campus early and to turn in her computer and keys, stating that it would close out the semester for her.

88.     Ms. Garrick filed an internal grievance on May 17, 2017 and went through MBI's grievance process in the summer of 2017. In her grievance document, she pointed out that MBI had hired her in 2014, renewed her contract for 2015, and renewed her contract for 2016 – all the while apparently pleased with her performance. It was only after she began advocating for the full inclusion of female students that MBI began to pressure Ms. Garrick to quit, then fired her.

89.     In fact, as alleged above, MBI knew from her resume and interviews that Ms. Garrick held an egalitarian view before it even hired her. On April 18, 2017 MBI officially notified Ms. Garrick of her termination. MBI's decision was pretext for its true motives – discrimination and retaliation.

90.     MBI engaged in a variety of tactics to thwart any chance of Ms. Garrick succeeding in the grievance process. In her grievance document, she fully documented the discrimination and retaliation she had been subjected to. She also presented written testimony from 12 female students who reported violations ranging from sexual assault to harassment in the classroom and on the campus by both faculty members and fellow students. MBI ignored these testimonials and took no action to follow up.

91.     On April 25, 2017, after Ms. Garrick began to speak to students and student journalists about her termination, Ms. Garrick was dismissed from campus (instructed to turn in her keys and computer) before the semester's end.

92.     Following her firing, Ms. Garrick was subjected to an impossible grievance hearing process that was lacking in any manner of reasonable due process. For example, retaliatory acts by the Defendant, *inter alia*…

   (a) on April 18, 2018 when Ms. Garrick was given her notice of termination, Mr. Davidhizar commented that she could file a grievance but that she would not have much time to do so. Mr. Davidhizar stated that summer break would make it all the more difficult to convene a grievance committee as faculty would not be on campus;

   (b) in preparation for the grievance hearing, questions for witnesses had to be approved in advance by Moody, and Moody gave Ms. Garrick less than 24-hour notice about her ability to call witnesses (in the middle of the work week) to testify on her behalf; and

   (c) at the July 7, 2017 grievance hearing, Moody would not allow any underlying discrimination or retaliation facts to be discussed.

93.     At the grievance hearing, Mr. Davidhizar admitted to hearing Ms. Garrick state her egalitarian position on gender roles in ministry during her Chicago campus interviews in October 2014.

94.     MBI denied Ms. Garrick's grievance on July 24, 2017. In the final grievance determination letter written by MBI President Paul Nyquist he remarked that Ms. Garrick "did not possess theological sophistication in [her] views" since she was "trained in communications and not theology."

95.     After Ms. Garrick's termination, MBI also terminated three faculty members who participated in her grievance hearing, and who had challenged MBI during that process:

    (a) Clive Craigen, a male full professor, who had served as Garrick's faculty advocate,

    (b) Maria Mocuta, a female full professor who had served as a committee member, and

    (c) Desiree Hassler, a female assistant professor, who had served as a committee member.

96.     After Ms. Garrick assisted a female student in filing a Title IX complaint, Ms. Garrick was terminated for her stated position/disagreement with Moody's "Gender Roles in Ministry" addendum included in its doctrinal statement, Defendant stating that she could not sign the doctrinal statement based on her holding to an egalitarian position, In contrast, Moody holds a complementarian position that excludes women from certain roles within the church due to their gender.

97.     Moody used a "religious" reason for Ms. Garrick's termination in order to cloak its true motives: discrimination and retaliation.

### COUNT I
### Hostile Work Environment Based on Gender (Female) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)

98.     Ms. Garrick re-alleges each of the paragraphs set forth above.

99.     Ms. Garrick is a member of a protected class by gender. She is female.

100.    Ms. Garrick, in all respects, was performing her job in a manner that was consistent with Moody's legitimate business expectations.

101.    Ms. Garrick suffered adverse employment actions as alleged above in that she was excluded, verbally harassed, and intimidated because of her gender, and that such conduct was condoned or tolerated by those in a position to stop it because of Ms. Garrick's gender.

102.    The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe

or pervasive, detrimentally affected Ms. Garrick, were viewed as subjectively hostile and abusive by Ms. Garrick, and would be viewed as objectively hostile and abusive to a reasonable person.

103.    Ms. Garrick complained numerous times to Moody administrators and supervisors about the intimidating, hostile, and/or offensive work environment, and Moody had actual or constructive knowledge of said environment.

104.    Moody was aware of and was made aware of the above described conduct; yet, Moody failed to take prompt and appropriate remedial action to protect Ms. Garrick from said intimidating, hostile, and/or offensive work environment.

105.    Moody violated Ms. Garrick's rights in that it required Ms. Garrick to work in an intimidating, hostile, and/or offensive work environment and to work under supervisors who allowed these actions to go on without taking steps to prevent them.

106.    As a direct and proximate result of said unlawful employment practices and in disregard of Ms. Garrick's rights and sensibilities, Ms. Garrick has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

## COUNT II
### Disparate Treatment Based on Gender (Female) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)

107.    Ms. Garrick re-alleges each of the paragraphs set forth above.

108.    Ms. Garrick is a member of a protected class by gender. She is female.

109.    Ms. Garrick, in all respects, was performing her job in a manner that was consistent with Moody's legitimate business expectations.

110.    Ms. Garrick suffered adverse employment actions as alleged above in that she was, *inter alia*, instructed to deny her qualifications in order to advance in the employment interview

process, tasked with performing job duties beyond her rank and salary, denied a promotion, denied the opportunity to receive a tax deduction, been subjected to "secret" peer reviews and a falsified negative performance evaluation, and denied a reduced teaching load while pursuing a terminal degree in her field because of her gender.

111.    Upon information and belief, similarly-situated male employees of Moody have not suffered: instructions to deny their qualifications in order to advance in the interview process, being tasked with performing job duties beyond their rank and salary, denied promotions, denied opportunities to receive tax deductions, being subjected to "secret" peer reviews and falsified negative performance evaluations, nor being denied reduced teaching loads while pursuing terminal degrees in their fields.

112.    Defendant Moody's actions in its administrators, supervisors, and employees intentionally engaging in and condoning gender discrimination against Ms. Garrick has caused her great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

## COUNT III
### Gender Discrimination (Female) in Violation of Title VII
### of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

113.    Ms. Garrick re-alleges each of the paragraphs set forth above.

114.    This Count is brought by Plaintiff Ms. Garrick a "Title VII Class Member".

115.    Ms. Garrick filed a timely charge with the EEOC on behalf of herself and others similarly situated.

116.    Moody, an employer of the Title VII Class Member within the meaning of Title VII, has discriminated against Ms. Garrick in violation of Title VII by subjecting her to different treatment

on the basis of her gender, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on her.

117.    Moody has engaged in an intentional, institute-wide and systemic policy, pattern, and/or practice of discrimination against Ms. Garrick, the Title VII Class Member by, among other things: maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; discriminating against the Title VII Class Member in pay and promotions; discriminatorily denying development opportunities; subjecting Ms. Garrick to a hostile work environment; and other forms of discrimination.

118.    These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on the Title VII Class Member with respect to the terms and conditions of Ms. Garrick's employment.

119.    As a result of this disparate treatment and disparate impact discrimination, Moody has treated the Title VII Class Member differently from and less preferentially than similarly-situated male employees with respect to pay and promotions.

120.    Moody has failed to prevent, to respond to, to investigate adequately, and/or to appropriately resolve this gender discrimination.

121.    Moody's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Title VII Class Member, entitling Ms. Garrick to punitive damages.

122.    Because of the continuous nature of Moody's discriminatory conduct, which persisted throughout the employment of the Title VII Class Member, Ms. Garrick is entitled to application of the continuing violations doctrine to all violations alleged herein.

123.    By reason of Moody's discrimination, Ms. Garrick is entitled to all legal and equitable

remedies available for violations of Title VII.

124.     As a result of Moody's conduct alleged in this Complaint, Ms. Garrick has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, including interest.

125.     As a further result of Moody's unlawful conduct, Ms. Garrick has suffered and continues to suffer, *inter alia*, impairment to her name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish. Ms. Garrick is entitled to recover damages for such injuries from Moody under Title VII.

126.     Attorney's fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

### COUNT IV
### Retaliation Against Ms. Garrick for Engaging in Protected Activity in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a)

127.     Ms. Garrick re-alleges each of the paragraphs set forth above.

128.     As alleged above, Ms. Garrick reported gender harassment and an intimidating, hostile and/or offensive work environment resulting from other employees, supervisors, and administrators to her supervisors and administrators at Moody pursuant to her rights under Title VII and under Moody's policies and procedures.

129.     Defendant Moody has retaliated against Ms. Garrick as alleged above for reporting that harassment and an intimidating, hostile and/or offensive work environment based on her gender by, *inter alia*, denying her qualifications in order to advance in the interview process, tasking with performing job duties beyond her rank and salary, denying her a promotion, subjecting her to a falsified negative performance evaluation, and ultimately terminating her.

130.     There was a causal connection between Ms. Garrick's complaints and the materially adverse actions taken against Ms. Garrick by Moody.

131.    The retaliation endured by Ms. Garrick would dissuade a reasonable employee from making complaints of discrimination and harassment.

132.    Moody retaliated against Ms. Garrick for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Janay E Garrick, prays for relief as to all counts of this Complaint as follows:

A.    Enter judgment in favor of Ms. Garrick and against the Defendant for violation of Ms. Garrick's rights under Title VII;

B.    An order enjoining future violations by MBI;

C.    Injunctive relief sufficient to eliminate unlawful and discriminatory policies and procedures at MBI;

D.    Payment of all costs of implementing and monitoring such injunctive relief;

E.    Payment of the Plaintiff's lost past and future wages, benefits, and any other income and/or monetary or monetized benefits of employment that she would have been entitled to absent MBI's unlawful acts;

G.    All other compensatory and consequential damages proven by the Plaintiff;

H.    Punitive damages sufficient to punish MBI for its unlawful behavior and to deter future discriminatory conduct;

I.    Payment of the Plaintiff's attorneys' fees and all costs of litigation (including any expert witness fees);

J.    Pre-and post-judgment interest; and

K.     All other and relief, whether legal or equitable, that the Court may deem appropriate.

## **JURY DEMAND**

The Plaintiff demands a trial by jury on all counts.

Dated: October 31, 2019                    Respectfully submitted,


                                           /s/ Janay E. Garrick


Janay E. Garrick, *Pro Se Litigant*
PO BOX 3851
Tallahassee, FL 32301
(407) 803-3051
Janay.garrick@gmail.com

## **CERTFICATE OF SERVICE**

I, the undersigned, certify that on October 31, 2019, I had the foregoing document served by filing it with the Clerk's Office via USPS. On that day, I also served a true and correct copy of the foregoing *Plaintiff's Second Amended Complaint* upon Defendant by causing said document to be delivered to it via email, to which form of service it has consented, addressed as follows:

Christian Poland
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
christian.poland@bryancave.com

/s/ Janay E. Garrick

Service List:

Christian Poland
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
christian.poland@bryancave.com

# EXHIBIT A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Janay Garrick
c/o Jamie S. Franklin
THE FRANKLIN LAW FIRM LLC
53 W. Jackson Blvd, Suite 803
Chicago, IL 60604

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-02205 | Zachary M. Florent, Investigator | (312) 869-8040 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Julianne Bowman_                    9/24/18

Enclosures(s)
**Julianne Bowman,**                 (Date Mailed)
**District Director**

cc: The Moody Bible Institute of Chicago
c/o Christian M. Poland
Bryan Cave LLP
161 N. Clark Street, #4300
Chicago, IL 60601

*SC0*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA  X  EEOC | 440-2018-02205 |

Illinois Department of Human Rights, Chicago Commission on Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) Ms. Janay Garrick | Home Phone (Incl. Area Code) 407-803-3051 | Date of Birth 04-20-1976 |
|---|---|---|
| Street Address P. O. Box 1729 | City, State and ZIP Code Orlando, FL 32802 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name Moody Bible Institute | No. Employees, Members 100+ Employees | Phone No. (Include Area Code) 800-356-6639 |
|---|---|---|
| Street Address 820 N. LaSalle St. | City, State and ZIP Code Chicago, IL 60610 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION ☐ OTHER (Specify) | Earliest    Latest 2016     12/31/2017 ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

   I am a former faculty member at Moody Bible Institute ("MBI"). I was hired on December 1, 2014 as an Instructor of Communications. I was terminated on April 17, 2017 in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*., because of my gender (female) and my religion (egalitarian Christian). I was also retaliated against in violation of Title VII after I engaged in protected activity by complaining of discrimination. I bring this charge on behalf of myself and all others who are similarly situated.

   Please see the attached additional pages for the particulars.

RECEIVED EEOC

JAN 0 5 2018

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| _____    *Janay Garrick* Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

*EEOC Charge of Janay Garrick*
*Page 2 of 4*

## Introduction

MBI is a private academic institution with a stated mission of training students for the Christian ministry. It offers both undergraduate and graduate degrees. MBI receives federal funding from Title IV federal student loan programs, and it is subject to the requirements of Title IX, which prohibits discrimination on the basis of sex in federally-funded education programs and activities.

I was hired on a year-to-year basis to teach in the Communications Program, which is one of two programs in the Music and Media Arts Division. My direct supervisor was Brian Kammerzelt, the Communications Program Head. Terry Strandt functioned as a higher-level supervisor and the Chair of that Division responsible for performance reviews. I also reported to Larry Davidhizar, the Vice President and Associate Provost of Faculty.

MBI has a doctrinal statement that all faculty members are required to sign. It holds that the role of women in ministry is "complementary" – meaning that they are to be subservient to men and are suited to minister only to other women and children. I made it clear from the beginning of my association with MBI that I did not agree with this view, and that, in fact, I was an egalitarian Christian, meaning that I believe that women are equal to men and should not be excluded from any role in the church (or any other sphere). MBI knew my views when it hired me.

## Pattern of Discrimination and Retaliation

From the beginning of my tenure at MBI, I was treated with hostility by some key members of the administration and faculty. Before my campus interview, I was told to remove the reference to being an ordained minister from my resume. I was not told why. Later it became clear that because I was a woman, MBI did not want me to represent myself as an ordained minister.

Female instructors were confined to certain programs, like mine, while the Bible and Theology Programs were staffed exclusively by men. In late 2015, I was asked to assist in forming a committee to address women's concerns on campus. I was explicitly told that any changes resulting from the committee's work should be small and incremental.

MBI retaliated against me for assisting students who had gender-related and other discrimination complaints at MBI. For example, in January 2016, a black female student came to me for help. She wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender. MBI's website at the time confirmed that the program was only open to male students.

I helped this student lodge the first Title IX complaint ever brought at MBI. At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website at the time stated that the program was strictly for male students. Then MBI tried to convince the student to take courses in another program. Ultimately it became clear that MBI had been

*EEOC Charge of Janay Garrick*
*Page 3 of 4*

discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

MBI then dismissed the student's complaint, stating misleadingly that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." With my help, she appealed. Professors made disparaging comments to her like "don't you know the image of God is male?" and "what makes you think you have the right to preach?"

The student and I continued to push MBI to open the program to all women, and I was open and active in my opposition to MBI's discriminatory practices. As a result, in April 2016, MBI announced that they intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women, after decades of denying them access, though MBI continues to informally discourage women from applying. There are currently just three women in a program that has approximately 60 students enrolled. However, as of the date of the conclusion of my appeal of my termination (June 26, 2017), it is my understanding that MBI still had not removed the gender restrictions from that degree program.

I also assisted a transgender student with her hostile environment concerns, which I reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

As a result of my advocacy, I was retaliated against by MBI. For example, after a meeting of the "Respect for Women Professionally and Ministerially" Committee, in which I stated that denying women access to the ministry program was discriminatory under Title IX, my *faculty* mentor called me into her office. She admonished me by reading me the section of MBI's *doctrinal* statement on gender roles, then asked, "How do you have any integrity working here?"

In February 2016, as a result of open hostility from faculty who were aware of my Title IX complaint assistance, I called a meeting with the supervising Deans and Vice Presidents, Larry Davidhizar and Bryan O'Neal, to talk about the hostile work environment and gender discrimination I was experiencing. I also shared my concerns that other female students and faculty were being treated differently because of their gender. In response, my supervisors treated me with increased hostility and questioned whether I could sign the doctrinal statement again. At the end of the meeting, they began to discuss terminating my employment, telling me I should voluntarily leave MBI. I decided to stay and fight.

In September 2016, one of the theology professors at MBI drafted a proposal that would require all students to sign a statement that they could not be both LGBT and also "love Jesus." I spoke out against this blatant bigotry at an all-faculty and administration meeting and told a story about a student who came to me in tears over being told one could not be gay and "saved." I submitted and co-presented (with a male faculty member) a counter-proposal with an inclusive message. Mr. Davidhizar pulled me into his office the next day and told me my speech was "inflammatory rhetoric." He told me I was "not a Moody fit." The male faculty member who co-presented the proposal was never the subject of any disciplinary treatment.

*EEOC Charge of Janay Garrick*
*Page 4 of 4*

Shortly thereafter, MBI denied my application for a promotion in my rank as a faculty member. I was still ranked as an "instructor" – the lowest category and pay at MBI – despite my extensive experience and many accomplishments at MBI. As a result of this retaliatory denial, I lost both professional status and the additional income that I would have received at a higher rank.

## My Unlawful Termination

In March 2017, at my two-year review, Mr. Davidhizar made it clear that MBI was considering not renewing my contract due to alleged "performance and interpersonal issues." Later that month, Mr. Strandt again threatened to terminate me, and delivered to me a negative performance review – the first written criticism of my performance I had ever received at MBI – prepared by someone unfamiliar with my work and filled with inaccuracies.

On April 12, 2017, I met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told me that I did not fit in and that I was not aligned with the doctrinal statement.

On April 17, 2017, I was officially terminated because of my gender, my form of Christianity, and in clear retaliation for my complaints about my own treatment and my complaints on behalf of female students who were discriminated against.

I filed an internal grievance and went through the grievance process in the summer of 2017. MBI engaged in a variety of tactics to thwart any chance of success. In my grievance document, I presented testimony from 12 women who reported violations ranging from rape to harassment in the classroom and on the campus. My grievance was denied on June 26, 2017 in a document filled with more inaccuracies.

I am now seeking all damages to which I am entitled in law and equity, including reinstatement, back pay, front pay, compensatory damages (including future lost income, emotional distress, mental pain and suffering, inconvenience, and loss of enjoyment of life), attorneys' fees, costs of litigation, and punitive damages.

I bring this charge on behalf of myself and all others similarly situated.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). _**Be sure to include your name, address, phone number and EEOC charge number with your request**_.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

\*      <u>**Before filing a lawsuit,**</u> but within 90 days of your receipt of the Right to Sue, or

\*      <u>**After your lawsuit has been filed.**</u>  **If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court *complaint* (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.**

If you are the _**Respondent**_ you may be granted access to the file _**only after**_ a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, <u>it is recommended that you first review your file</u> to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent <u>in its entirety</u> to the copy service, <u>and you will be responsible for the cost.</u> Payment must be made directly to **Aloha Print Group,** which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with *Disabilities* Act or, *probably*, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your *request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.*

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.