IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>MOODY BIBLE INSTITUTE,<br><br>　　　　　　　　Defendant. | Case No. 1:18-cv-00573<br><br>Judge John Lee<br>Magistrate Judge Young Kim |

**DEFENDANT MOODY BIBLE INSTITUTE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... 1

II. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT .................................... 2

III. ADMINISTRATIVE PROCEEDINGS AND PROCEDURAL HISTORY ..................... 5

IV. ARGUMENT .................................................................................................. 7

    A.    Garrick's Second Amended Complaint Should Be Dismissed in Its Entirety Because It Re-Asserts Claims That This Court Has Already Dismissed and Alleges No Claims that Are Untethered from Religious Issues ............................ 7

    B.    Garrick's Claims Are All Time Barred ................................................................ 8

    C.    Garrick's Claims Are All Barred by Title VII's Exemptions for Religious Educational Institutions ............................................................................ 9

    D.    Garrick's Claims Remain Barred by the Constitutional Principles Protecting Religious Autonomy ................................................................................ 12

    E.    Garrick's Retaliation Claim Fails for Several Ordinary Reasons ......................... 15

    F.    Garrick's Hostile Environment Claim Fails for Several Ordinary Reasons ......... 17

    G.    Garrick's Class Action Gender Discrimination Claim Must Be Dismissed ......... 19

V.  CONCLUSION ............................................................................................. 20

I.      INTRODUCTION

Despite this Court's recent affirmation of the autonomy of Defendant, Moody Bible Institute ("Moody"), to exercise its religious beliefs with regard to employment issues, and despite the Court's strict limitation on the legal claims that Plaintiff, Janay Garrick ("Garrick"), could attempt to re-file, Garrick has brought another over-130-paragraph Complaint against Moody.  In her Second Amended Complaint ( "SAC"), instead of focusing on facts that would be relevant to the only possible claims that she could bring at this point, Garrick continues to flood the Court with several years' worth of complaints and criticisms, including pages of second- and third-hand allegations of supposed concerns held by students and other employees, which Garrick has no standing to assert.

With her new claims comes a new fatal problem.  Her four Title VII claims are all subject to Title VII's statutory prerequisites, including the requirement that she have filed an EEOC Charge of Discrimination raising her claims within 300 days after those events occurred.  But she did not.  Garrick was terminated on April 17, 2017, and did not file her Charge until January 5, 2018, leaving only her final few weeks of employment with Moody as a possible basis for legal claims.  And she alleges no actionable Title VII violations in this narrow time frame, dooming the SAC in full.

Because Garrick asserts no actionable harassment or adverse employment actions within the limitations period, this Court does not even need to reach the statutory exemptions and constitutional protections applicable to Moody as a religious institution.  But if the Court did, those defenses would again defeat Garrick's alleged claims.  As the Court noted in its decision dismissing Garrick's First Amended Complaint ("FAC"), Garrick's constant refrain is that her faculty peers and occasionally Moody's senior leadership treated her in ways that she perceived as negative *because her beliefs and actions were not in line with Moody's conservative religious*

1

*views*. This is neither sex discrimination nor retaliation, but a religiously based disagreement that this Court has no authority to adjudicate (as the Court has already recognized).

Finally, Garrick's new claims also fail to satisfy basic employment law pleading standards in many other respects, and her claims must be dismissed for these reasons as well.

## II. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT[1]

Garrick's SAC is nothing of the "short and plain statement of the claim showing that the pleader is entitled to relief" required by Federal Rule of Civil Procedure 8(a)(1). Nor it is appropriately limited to allegations that are unrelated to Moody's religious beliefs, the only permissible scope of claims under the Court's September 25, 2019 decision, reported as *Garrick v. Moody Bible Institute*, No. 1:18-cv-00573, 2019 WL 4674570 (N.D. Ill. Sept. 25, 2019) ("*Garrick I*"). Rather, the SAC is a laundry list of time-barred and inapposite allegations related to religious and gender issues that Garrick believes have occurred at Moody over the last several years. More specifically, Garrick complains about events that supposedly occurred in 2012 (*see, e.g.*, SAC ¶ 38), even though she was not hired until December 1, 2014 (*see* SAC ¶ 19).[2] She complains about things that allegedly happened to Moody students (*see* SAC ¶¶ 25, 27, 34, 36,

---

[1] This Court may consider the content of Garrick's sworn EEOC Charge, which is Exhibit A to the SAC, in ruling on this motion to dismiss. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Garrick v. Moody Bible Institute*, No. 1:18-cv-00573, 2019 WL 4674570, at *1 n.2 (N.D. Ill. Sept. 25, 2019) ("*Garrick I*") ("In addition to the complaint itself, on a motion to dismiss the Court may consider 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'" [quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)]). SAC Exhibit A is comprised of (1) the EEOC's Dismissal and Notice of Rights as to Garrick's EEOC Charge of Discrimination (Dkt. 97 at 32), (2) Garrick's four-page EEOC Charge of Discrimination (Dkt. 97 at 33-36), and (3) the EEOC Notice of Disclosure of Rights (Dkt. 97 at 37-38). For specificity of reference, the EEOC Charge will be cited herein with reference to its own pagination (pp. 1-4).

This Court may also consider the signed performance review about which Garrick complains in the SAC and which Moody attaches to this motion as Exhibit A. *See Garrick I,* at *1 n.2.

[2] In fact, Garrick complains about events dating back to *1928*. (*See* SAC ¶ 50 ["it became clear that MBI had been discriminating against women [students] by barring them from the Pastoral Ministry program from 1928"].)

38, 39-59 [entire section of SAC on student issues], 88, 96), which issues are completely irrelevant under Title VII (an *employment* discrimination statute).  She raises grievances that she believes other current and former employees, both male and female, may have against Moody (*see* SAC ¶¶ 26, 29, 31, 35(b), 38, 95), which concerns she has no standing to raise.  All such allegations have no bearing on this matter and must be ignored.

When Garrick pleads allegations related to herself, she fails to focus on the very limited temporal scope within the relevant limitations period (i.e., events occurring after March 11, 2017) and instead catalogues her complaints from 2014 through early 2017.  To summarize, Garrick alleges occasions on which she felt that her peer faculty members, both male and female, did not treat her kindly and rejected her views, primarily because those viewpoints were inconsistent with the conservative Christian religious beliefs held by Moody and those other faculty members.  (*See, e.g.,* SAC ¶¶ 35(d), 35(e), 45, 46, 58, 69(a), 71, 74; *see also* SAC Ex. A [Charge at 1, 3].)[3]  Garrick also alleges that various superiors challenged her alignment with Moody's beliefs and mission and discussed with her whether she was a good "fit" at Moody. (*See* SAC ¶¶ 59, 66, 73, 85.)  (For her part, Garrick acknowledges that her beliefs conflicted with Moody's, but says she "decided to stay and fight."  [SAC ¶ 48.])  Garrick also complains that her request for promotion from Instructor to Assistant Professor was denied in November 2016.  (*See*

---

[3] The details are discussed below, but here is a summary of the cited paragraphs:

¶ 35(d) ("disparaging remarks about Ms. Garrick's undergraduate and post-graduate educational institutions for being too liberal and inclusive")

¶ 35(e) (criticisms of Garrick's lack of theological understanding)

¶ 45 (Garrick's female faculty mentor questioned Garrick's integrity in signing Moody's Doctrinal Statement when she openly espoused contrary beliefs) (*see also* Charge at 3 [same])

¶¶ 46, 74 (female faculty member "slander[ed] Ms. Garrick as a liberal progressive")

¶¶ 58, 69(a) (when Garrick spoke out at an all-faculty meeting in support of a transgender student and against Moody's traditional Biblical views on sexuality, Garrick was told that her "speech was 'inflammatory rhetoric'" and that she was "not a Moody fit")

¶ 71 ("open hostility from some of the all-male faculty in the Bible and Theology Program" because she was "assisting a female student in filing a Title IX complaint (for her exclusion from the all-male Pastoral Ministry undergraduate program)").

3

SAC ¶¶ 61-67.)  As discussed below, because none of the above alleges an adverse employment action or gender-based hostility that occurred within the statutory limitations period, the events must be disregarded.

As to events within the limitations period (i.e., between March 11, 2017, and her termination on April 17, 2017), Garrick alleges a singular occurrence, namely, that she received an annual performance evaluation that she did not like.  The initial score she received on that March 30, 2017 evaluation was 2.57, which is in the "Meets Expectations" range,[4] but which Garrick misleadingly calls a "borderline 'Below Standards' performance evaluation."  (SAC ¶¶ 79(a), 79(e), 81.)  Then, just ten days later, Garrick admits that Moody adjusted her review upward from a score of 2.57 to 2.96, which she admits is in the "Meets Standards" range.  (SAC ¶ 81; *see also* Mot. Ex. A.)  Because Garrick pleads no adverse employment consequence flowing from this Meets Standards evaluation (and there was none), it is not actionable.  (*See* SAC ¶¶ 79(a), 79(e), 81, 84.)[5]

As the Court is well-aware from prior proceedings in this matter, Moody is a Christian post-secondary educational institution that has as its stated mission the training of students for Christian ministry.  (*See* SAC ¶ 1; SAC Ex. A [Charge at 2].)  Garrick admitted in prior briefing that as a faculty member she "was teaching and acting to train people to be members of the Christian, Protestant faith."  (Dkt. 72 at 18.)  Faculty members are required to annually sign Moody's Doctrinal Statement, acknowledging their alignment with a variety of religious beliefs,

---

[4] Moody's performance evaluation ratings are Unacceptable (0-1.74), Below Expectations (1.75-2.49), Meets Expectations (2.5-3.49), Exceeds Expectations (3.5-4.24), and Outstanding (4.25-5.0).  (*See* Mot. Ex. A [Garrick's 4/9/17 Performance Evaluation].)

[5] Garrick's SAC continues to include allegations related to the termination of her employment on April 17, 2017 (*see* SAC ¶¶ 85-87, 89, 91, 96, 129), but she correctly admits that this termination was on account her disagreement with Moody's religious beliefs (*see* SAC ¶ 96), and the Court has already ruled that all termination-related claims are barred by Moody's religious defenses.  *See Garrick I*, at *7-10.  Thus, Garrick alleges no adverse employment action within the limitations period.

including Moody's "Gender Roles in Ministry" statement, which communicates Moody's theological/Biblical position that certain pastoral roles are limited to men. (*See* SAC ¶¶ 80, 84, 85, 96; SAC Ex. A [Charge at 2, 4].) Garrick objected to this "complementarian" view and instead espoused an "egalitarian" view under which women are permitted to serve in every pastoral role. (*See* SAC ¶¶ 20, 80, 84, 85, 89, 93, 96; SAC Ex. A at [Charge at 2, 4].) As *Garrick I* held, "Garrick's disagreement with Moody's beliefs on the role of women in the ministry underlies the majority of Garrick's allegations[,] . . . [and] [e]ven her hostile-work-environment claim implicates Moody's doctrine, given that much of the hostility Garrick says she experienced arose out of her views on women in the ministry." *Garrick I*, at *9. Garrick was eventually terminated from her faculty position on April 17, 2017, because her religious views were not aligned with Moody's Doctrinal Statement. (SAC ¶¶ 86, 96; SAC Ex. A [Charge at 4].)

## III. ADMINISTRATIVE PROCEEDINGS AND PROCEDURAL HISTORY

On January 5, 2018, 263 days after her termination, Garrick filed a four-page, sworn Charge of Discrimination with the EEOC (the "Charge"). (SAC Ex. A.) In her Charge, Garrick alleged much of the same content as is contained in her SAC, but also further undermined the Title VII claims she now attempts to bring. For example, she stated (under oath) that Moody discriminated against her because of her "religion (egalitarian Christian)" (and her gender) and confirmed that the retaliation she suffered was because she assisted *students* with complaints they had against Moody (which is not protected activity under Title VII). (SAC Ex. A [Charge at 1-4].) The EEOC investigated the Charge, but found no evidence to establish that Moody violated Title VII and therefore dismissed the Charge on September 24, 2018. (*See* SAC Ex. A [Dkt. 97 at 32].)

5

On January 25, 2018, Garrick filed her initial Complaint in this matter. (*See* Dkt. 1.) Her Complaint alleged no violations of Title VII, but instead brought claims for retaliation under Title IX of the Education Amendments of 1972, retaliatory discharge under state law, and breach of her faculty contract. (*See id.*) Moody moved to dismiss the entire Complaint, but before the Court had ruled on the motion, Garrick filed her FAC. (*See* Dkt. 67.) In her FAC, Garrick alleged a Title IX retaliation claim based on her advocacy for female students, a breach-of-contract claim, Title VII gender discrimination and harassment claims, a Title VII retaliation claim based on her assistance to female students with gender issues, and a Title VII religious discrimination claim based on her "egalitarian" religious views. (*See* Dkt. 67.)

Moody filed a motion to dismiss all of the claims in the FAC, and the Court granted the motion in full. *See Garrick I.* The Court dismissed Garrick's Title IX, breach of contract, and Title VII religious discrimination claims with prejudice. *See id.* at *7-10. The Court dismissed Garrick's Title VII gender discrimination, gender harassment, and retaliation claims without prejudice, granting Garrick "leave to amend her complaint to restate those claims consistent with this order." *Id.* at *8, 10. The Court identified the only possible claims that might have any viability (*id.* at *9):

> But there are strains of Garrick's Title VII claims that may not be tied to Moody's religious beliefs. For instance, Garrick complains of antagonistic treatment by male colleagues and inconsistent treatment of female and male faculty members by the administration with respect to job duties, employment requirements, and performance reviews. To the extent Garrick can state a claim concerning these issues in a way that is untethered from her disagreements with Moody's religious views, she may be able to pursue those claims.

Going well beyond what this Court permitted Garrick to do, the 132-paragraph SAC purports to bring four wide-ranging claims under Title VII, which Garrick labels as follows: "Hostile Work Environment Based on Gender (Female)" (Count I); "Disparate Treatment Based

on Gender (Female)" (Count II); "Gender Discrimination (Female)" (Count III), which she purports to bring as a class action claim; and "Retaliation Against Ms. Garrick for Engaging in Protected Activity" (Count IV). All of these claims must be dismissed, for the reasons discussed below.

IV.     ARGUMENT

      A.     *Garrick's Second Amended Complaint Should Be Dismissed in Its Entirety Because It Re-Asserts Claims That This Court Has Already Dismissed and Alleges No Claims that Are Untethered from Religious Issues*

As noted above, this Court dismissed with prejudice all of Garrick's claims that are related to Moody's religious views and motivations, and only permitted Garrick to re-plead Title VII claims if they were "untethered from her disagreements with Moody's religious views." *Garrick I*, at *9. Garrick's SAC does not plead claims within this narrow scope.

The first hint that the SAC violates *Garrick I* is that it contains 132 paragraphs of allegations, whereas Garrick's FAC asserted two more counts and more diverse claims than the SAC, yet was essentially the same length (140 paragraphs). The SAC would be a fraction of its length if it were focused on the narrow claims permitted by *Garrick I*.

Second, the SAC continues make numerous allegations about Garrick's termination (*see* SAC ¶¶ 69(f), 86, 87, 89, 91, 93(a), 95, 96, 97, 129), when all such claims were definitively rejected by the Court and dismissed with prejudice. *See Garrick I*, at *7-10.

Finally, and most importantly, the SAC plainly shows that Garrick's grievances cannot be disconnected from Moody's religious views and expectations. Issue after issue, Garrick avers that the conduct she seeks to challenge is related to religious issues. (*See* SAC ¶¶ 26, 27, 29(a), 29(b), 30, 35(d), 36, 38(a), 38(b), 38(c), 38(e), 38(f), 41-42, 45-46, 49-55, 57-59, 71, 80, 96-97).[6]

_____

[6] More specifically, Garrick alleges:  she was asked to remove the ordination reference on her resume because it might suggest her religious views conflicted with Moody's about women in ministry

As the Court already held in *Garrick I*, this Court has no authority to analyze what Moody's religious views are, what Moody's "true" motives were, whether Moody "appropriately" applied its religious views to Garrick's situation, or whether Moody's views about women's roles are "legal" under Title VII. Because Garrick has not been able to untether her complaints from religious issues, Garrick's entire SAC must be dismissed.

      B.     *Garrick's Claims Are All Time Barred*

Garrick brings only Title VII claims in her SAC, and a prerequisite to any Title VII claim is the timely filing of an EEOC Charge

> within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice[,] . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . .

42 U.S.C. § 2000e–5(e)(1); *see also Fort Bend County, Texas v. Davis*, __ U.S. __, 139 S. Ct. 1843, 1846 (2019). Because Garrick filed her Charge on January 5, 2018 (*see* SAC ¶ 6 & Ex. A [Charge at 1]), the only unlawful acts on which she may proceed are those that occurred after July 9, 2017 (if the 180-day period applies) or March 11, 2017 (if the 300-day period applies).

Moody believes the 180-day limitations period applies. Garrick's SAC does not allege that she "initially initiated proceedings with [the Illinois Human Rights Department]." (*See* SAC

---

(¶ 36); only men could hold certain pastoral or theology teaching positions because of Moody's view about women holding pastoral positions (¶¶ 26, 29(b), 38(e), 38(f)); there were fewer female speakers at Moody's religious chapels (¶¶ 27, 29(a), 30, 38(c)); Moody cancelled "a radio program that had gender inclusive messaging" (¶ 27); Garrick's educational background and views were disparaged for being too religiously liberal and inclusive (¶¶ 35(d), 46, 74); "male students organized a student 'walk out' when a female speaker took the stage at Founder's Week" (a religious conference) (¶ 38(a)); "Moody's annual Pastor's Conference had never included female speakers as main session speakers" (¶ 38(b)); Garrick advocated for a female student's admission to the Pastoral Ministry major, which was reserved for male students related to Moody's religious beliefs about the roles women could hold in the church (¶¶ 41-42, 45, 49-55, 71); Garrick advocated for positions contrary to Moody's conservative religious views regarding sexuality and was told she was not a good fit at Moody because of it (¶¶ 57-59); and Garrick was repeatedly question about her alignment with Moody's Doctrinal Statement because of what she said and did (¶¶ 80, 96, 97).

¶¶ 6-8.)  And Garrick was put on notice in Moody's last motion to dismiss that a 180-day limitations period applies unless she first initiated an IHRD proceeding (*see* Dkt. 69 at 14; Dkt. 79 at 14-15), so her failure to plead in her SAC that she did so effectively concedes that she did not.  Therefore, because the SAC challenges no events after July 9, 2017 (three months after Garrick's termination), the SAC must be dismissed in its entirety.

But even under a 300-day limitations period, all of Garrick's claims are time barred.  As noted above, the only event that Garrick pleads as having occurred after March 11, 2017 (other than her termination, which is not actionable, as held by *Garrick I*) is a "Meets Expectations" annual performance review that Garrick didn't like.  (*See* SAC ¶¶ 79(a), 79(e), 81, 84.)  A "Meets Expectations" performance evaluation is not actionable, for even a definitively negative performance review is not actionable.  *See Fields v. Bd. of Educ.*, 928 F.3d 622, 626 (7th Cir. 2019) (negative performance reviews and performance improvement plans do not constitute adverse employment actions).[7]  With no adverse employment action that occurred after March 11, 2017, Garrick's claims are barred even under a 300-day limitations period.

C.      *Garrick's Claims Are All Barred by Title VII's Exemptions for Religious Educational Institutions*

Even if Garrick's claims were timely, they would be barred by Title VII's exemptions for religious employers like Moody.  Title VII provides:

> This subchapter [i.e., Subchapter VI—Equal Employment Opportunities, 42 U.S.C. § 2000e et seq.] shall not apply to . . . a religious . . . educational institution . . . with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such . . . educational institution . . . of its activities.

42 U.S.C. § 2000e-1(a).  Title VII further provides:

---

[7] *See also Langenback v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (negative review and performance improvement plan were not actionable as retaliation); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (court notes that "we [have not] discovered[] a single case where adverse performance ratings alone were found to constitute adverse action").

> [I]t shall not be an unlawful employment practice for a . . . college . . . to hire and
> employ employees of a particular religion if such . . . college . . . is, in whole or
> substantial part, owned, supported, controlled, or managed by a particular religion
> or by a particular religious corporation, association, or society, or if the curriculum
> of such . . . college . . . is directed toward the propagation of a particular religion.

42 U.S.C. § 2000e-2(e).  (These two Title VII exemptions will be collectively referred to as the "Religious Organization Exemptions" or "ROE.")  The SAC pleads that Moody is a religious educational institution with a detailed doctrinal statement and with the "stated mission of training students for the Christian ministry" (*see* SAC ¶¶ 1, 45, 80, 84-85, 93, 96; SAC Ex. A [Charge at 2-4]), so Moody is covered by the ROE.  *See, e.g., Killinger v. Samford Univ.*, 113 F.3d 196, 199-200 (11th Cir. 1997) (ROE applied to religious educational institution and barred plaintiff's discrimination claim).  The ROE permits Moody to employ only those faculty members who fully subscribe to its religious beliefs and adhere to its conduct requirements.  *See Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987) (a religious employer may require even workers in "secular" positions to share its religious beliefs).  Garrick expressly and repeatedly pleads that her claims are related to her disagreements with Moody's religious views on gender and sexuality issues (*see* SAC ¶¶ 35(d), 35(e), 45, 46, 58, 59, 66, 69(a), 71, 73, 74, 85;  SAC Ex. A [Charge at 1-4]), and Garrick's Title VII claims thus involve Moody's right to employ persons of "a particular religion" and are barred by the ROE.

That Garrick labels her claims as gender discrimination and gender harassment claims (instead of religious discrimination and religious harassment claims) does not rescue them from the ROE bar.  While it may be the case that a Title VII race or gender discrimination claim is not barred if such claim is unrelated to the "employment of individuals of a particular religion," 42 U.S.C. § 2000e-1(a), where the issues in dispute are related to religious beliefs, speech, doctrine,

or conduct, Title VII permits the religious employer to make decisions about the employment relationship based on its religious views, regardless of what the plaintiff labels her claims. Title VII itself defines "religion" to include beliefs and conduct: "The term 'religion' includes all aspects of religious observance and practice, as well as belief . . . ." 42 U.S.C. § 2000e(j). Thus, a religious organization is exempt from claims related to religious beliefs, regardless of whether the plaintiff views the issue as, or styles her legal claim as, gender discrimination. *See Curay-Cramer v. Ursuline Academy*, 450 F.3d 130, 137-141 (3d Cir. 2006) (Catholic school teacher who, according to her employer, was terminated for her outspoken support of abortion could not pursue Title VII gender discrimination claim, despite teacher's claim that male employees were treated less harshly for expressing similar viewpoints).[8]

Furthermore, the ROE applies not just to disparate treatment claims based on discrete acts, but also to "hostile environment" or "harassment" claims. Thus, Garrick's regular challenges to Moody's conservative religious views on gender roles in ministry, sexual morality, and gender identity do not state a claim under Title VII, even if Garrick considers Moody's and

---

[8] The *Curay-Cramer* court explained its rationale, which applies here: "While it is true that the plaintiff in *Little* [*v. Wuerl*] styled her allegation as one of religious discrimination whereas Curay–Cramer's third Count alleges gender discrimination, we do not believe the difference is significant in terms of whether serious constitutional questions are raised by applying Title VII . . . [because] [c]omparing Curay–Cramer to other Ursuline employees who have committed 'offenses' against Catholic doctrine would require us to engage in just the type of analysis specifically foreclosed by *Little*." 450 F.3d at 139.

Other cases also hold that the ROE is not limited to claims labeled as religious discrimination. *See, e.g., Aparicio v. Christian Union, Inc.*, No. 18-CV-0592, 2019 WL 1437618 (S.D.N.Y. Mar. 29, 2019) (plaintiff's Title VII retaliation claim was barred by the ROE and therefore dismissed on employer's Rule 12(b)(6) motion; plaintiff asserted that he was fired in retaliation for his opposition to his religious employer's "sexually discriminatory" "complementarian policy that denies women leadership positions in the organization," but "Title VII's anti-retaliation provision does not apply when the basis for the alleged retaliation are an employee's objections to his or her employer's religious discrimination"); *Little v. Wuerl*, 929 F.2d 944, 950-51 (3d Cir. 1991) (protestant teacher fired by catholic school for remarrying without first obtaining Catholic annulment had no Title VII claim; "with sensitivity to the constitutional concerns that would be raised by a contrary interpretation, we read the [Title VII religious organization] exemption broadly . . . [and] conclude that the permission to employ persons 'of a particular religion' includes permission to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts").

her faculty peers' responses to be "harassment" based on gender, sexual orientation, or gender identity. *See*, *e.g.*, *Garcia v. Salvation Army*, 918 F.3d 997, 1004-06 (9th Cir. 2019) (ROE barred Title VII claims alleging hostile work environment and retaliation; although the plaintiff "maintains that she has not pleaded a cause of action labeled 'religious discrimination[,]' . . . the complaint centers around religious discrimination" and the ROE therefore barred her claims).[9, 10]

In sum, Title VII's ROE bars Garrick's claims because they are inextricably intertwined with Moody's religious beliefs and Garrick's contrary views.

> D.   *Garrick's Claims Remain Barred by the Constitutional Principles Protecting Religious Autonomy*

In *Garrick I*, this Court correctly recognized the strong constitutional protections enjoyed by Moody in carrying out its religious mission. Title VII may not impose secular directives on Moody's religious operations, and courts may not even attempt to adjudicate Title VII claims if evaluation of the issues would involve entanglement with matters of religious belief and autonomy. "[O]verarching principle[s] of religious autonomy . . . may require dismissal where a religious employer offers a religious justification for the adverse action or where the claim will otherwise pose too much intrusion into the religious employer's Free Exercise and Establishment

---

[9] *See also Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192-94 (4th Cir. 2011) (ROE bars claims for religious harassment and retaliation; Congress "painted with a broader brush, exempting religious organizations from the entire subchapter of Title VII with respect to the employment of persons of a particular religion" [internal quotation marks omitted]).

[10] For reasons similar to those for which Title VII's REO was adopted, and as stated in *Garrick I* (p. *9), the courts have repeatedly held that hostile work environment claims are also barred by the ministerial exception. *See Demkovich v. St. Andrew the Apostle Parish*, 343 F. Supp. 3d 772, 782, 785 (N.D. Ill. 2018) (granting the defendant church's Rule 12(b)(6) motion to dismiss the gay music director's claims of hostile work environment based on sex, sexual orientation, and marital status because such claims were barred by the ministerial exception; the alleged harassment related to the church's position on same-sex relationships, and courts must avoid "intrusive discovery on the sincerity of [the articulated religious] belief"), *interlocutory appeal pending*, No. 19-2142 (7th Cir.) (argued Nov. 5, 2019); *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 702-03 (7th Cir. 2003) (claim for hostile work environment based on race and gender was barred by the ministerial exception; "To rule otherwise would enmesh the court in endless inquiries as to whether each discriminatory act was based in Church doctrine or simply secular animus"; affirming dismissal under Rule 12(b)(1) based on ministerial exception).

12

Clause rights." *Garrick I,* at *8 (internal quotation marks and citations omitted). These

constitutional principles are variously described as the "ecclesiastical abstention," "church-

autonomy," and "deference" doctrines. *See, e.g., Fratello v. Archdiocese of New York*, 863 F.3d

190, 197, n.15, 202, n.25, 203 (2d Cir. 2017) (if religious employer offers a religious reason for

the employment decision, courts may not adjudicate the matter because courts have no authority

to evaluate the genuineness of religious reasons or pretext; dismissal of claims brought by

Catholic school principal affirmed); *Korte v. Sebelius*, 735 F.3d 654, 677-78 (7th Cir. 2013)

(reversing the denial of preliminary injunctions sought under the Religious Freedom Restoration

Act; "where it applies, the church-autonomy principle operates as a complete immunity, or very

nearly so").[11] Under such doctrines courts have no authority—in fact, no jurisdiction—to

adjudicate matters relating to religious doctrine, a religious organization's management of

matters of religious conduct or belief, the religiously motivated reasons for the treatment of a

religious organization's employee, or claims by an employee that the religious organization's

stated reasons are mere pretext to mask illegal reasons.[12]

---

[11] *See also Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. ___, 138 S. Ct. 1719 (2018) ("The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths" [quoting *Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015)] [p. 1727]; "In this country, the place of secular officials isn't to sit in judgment of religious beliefs, but only to protect their free exercise" [p. 1737] [Gorsuch, J., concurring]); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1038 (7th Cir. 2006) (affirming religious organizations' right "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine" [internal quotations omitted]); *Lee v. Sixth Mount Zion Baptist Church*, No. 15-1599, 2017 WL 3608140, at *30-35 (W.D. Pa. Aug. 22, 2017) ("deference rule" barred court from considering pastor's claims that he was terminated without "cause" under his employment agreement); *Hubbard v. J Message Group Corp.*, No. 17-763 KK/JHR, 2018 WL 3377706 (D.N.M. July 11, 2018) (granting Rule 12(b)(6) motion and dismissing with prejudice claims for defamation, false light, intentional infliction of emotional distress, conspiracy, and injunctive relief; church-autonomy and ecclesiastical-abstention doctrines barred plaintiff's tort claims, which were based on her wrongful expulsion from the religious group and the religious group leader's defamatory statements about her).

[12] *See Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 Fed. App'x 926, 927-29 (11th Cir. 2018) (former employee's breach-of-contract claim against

Just as held in *Garrick I*, the above constitutional principles bar Garrick's latest round of claims. Garrick's SAC contains nearly the same set of detailed factual allegations as the FAC, and while the SAC focuses less on Garrick's termination and restyles the legal theories and counts being asserted, all of the same religious entanglement remains present. As *Garrick I* already held, "Garrick's disagreement with Moody's beliefs on the role of women in the ministry underlies the majority of Garrick's allegations. . . . Under these circumstances, if the Court were to delve into the disputes posed by Garrick, it would impermissibly inject the auspices of government into religious doctrine and governance." *Garrick I*, at *9. In fact, "[e]ven [Garrick's] hostile-work-environment claim implicates Moody's doctrine, given that much of the hostility Garrick says she experienced arose out of her views on women in the ministry." *Id.* at *9.[13] Permitting this case to proceed would be to disregard Moody's constitutionally protected religious freedom and well-settled Supreme Court and Seventh Circuit law.

---

church denomination for terminated retirement benefits was properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because ecclesiastical abstention doctrine prevented court from evaluating denomination's view of the propriety of plaintiff's conduct); *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241 (S.D.N.Y. 2014) (priest's libel per se claim over press release stating he engaged in sexual abuse as determined by church court dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and 12(b)(6) based on ecclesiastical abstention doctrine; adjudicating claim would require evaluation of church's decisions regarding matter of church discipline); *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 120 (D.D.C. 2007) (dismissing for lack of subject matter jurisdiction missionary's breach-of-contract claim because "[d]etermining whether [religious organization's] termination of [plaintiff] fell within the[] contractually-permitted parameters—or whether, as [plaintiff] alleges, her termination was motivated by other concerns—would involve inquiring into a core matter of ecclesiastical self-governance not subject to interference by a state").

[13] This Court went on to cite legal authorities that were directly on point and remain on point (*Garrick I*, at *9):

> For instance, in *Demkovich*, the court concluded that a hostile-work-environment claim pertaining to the plaintiff's sexual orientation and marital status could not proceed where the harassment was rooted in the Catholic church's doctrinal opposition to same-sex marriage. 343 F. Supp. 3d at 786–87. The Tenth Circuit reached a similar decision in *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 657–59 (10th Cir. 2002), concluding that neither a minister nor her lay partner could bring sexual-harassment claims challenging the church's ecclesiastical discussions about homosexuality.

14

Garrick's SAC makes no attempt to thread the needle in the only respect that this Court permitted after *Garrick I*. This Court generously noted that perhaps Garrick could disconnect from religious issues her claims "of antagonistic treatment by male colleagues and inconsistent treatment of female and male faculty members by the administration with respect to job duties, employment requirements, and performance reviews." *Garrick I*, at *9. Garrick's failure in her SAC to plead "religion-neutral" claims is a concession that either she cannot untangle her claims from the underlying religious disputes or that she has no interest in doing so. Either way, her claims as stated cannot proceed because they are interwoven with issues that this Court has acknowledged it may not adjudicate.[14]

### E.  Garrick's Retaliation Claim Fails for Several Ordinary Reasons

Even if Garrick's claims were not barred for all of the reasons stated above, her retaliation claim (Count IV) would fail for still other reasons. First, Garrick has not pleaded that she engaged in protected activity sufficient to support a Title VII claim. She pleads in her SAC and asserts in her sworn Charge that the retaliation she faced was because she assisted *students*

---

[14] Moody continues to believe that the constitutionally required "ministerial exception" also bars all of Garrick's claims, for all of the reasons it argued in its motion to dismiss Garrick's FAC. (*See* Dkt. 69 at 7-12, 18-19; Dkt. 79 at 3-10, 17-20.) And since the time Moody filed its motion to dismiss Garrick's FAC, courts have continued to dismiss, and affirm the dismissal of, claims similar to Garrick's under the ministerial exception. *See, e.g.*, *Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568, 570 (7th Cir. 2019) (affirming the dismissal of church organist's Title VII national origin and retaliation claims; if the religious organization deems the position to be "serving a religious function," the ministerial exception applies to bar the claims because "it is precisely to avoid such judicial entanglement in, and second-guessing of, religious matters that the Justices established the rule of *Hosanna-Tabor*"); *Hutson v. Concord Christian Sch., LLC*, No. 3:18-cv-48, 2019 WL 5699235 (E.D. Tenn. Nov. 4, 2019) (Title VII claims of terminated female elementary teacher who became pregnant out of wedlock in violation of Christian school's religiously based code of conduct were all barred by the ministerial exception; two of *Hosanna-Tabor*'s factors for applying the ministerial exception applied, which was sufficient to bar the plaintiff's claims); *see generally Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655 (7th Cir. 2018) (ADA claims of teacher at Jewish elementary school were barred by ministerial exception, even though school did not require teachers to be Jewish; because teacher was involved in shaping the practice of Jewish faith for students, she was a "minister" within the exception). But since this Court rejected Moody's ministerial-exception arguments as not permissibly brought as a Rule 12(b)(6) argument (*see Garrick I* at *8), Moody reserves such arguments for later proceedings, if any.

15

with concerns they allegedly had and because she raised *Title IX* issues. (*See* SAC ¶¶ 25, 27, 34, 36, 38, 39-59 [entire section of SAC on student issues], 70, 88, 96.)[15] Title VII, however, is an *employment* discrimination statute, and protected activity for purposes of a Title VII retaliation claim is only opposition to "unlawful *employment* practices." 42 U.S.C. § 2000e-3(a) (emphasis added).[16] Second, Garrick pleads only one possible materially adverse employment action ("MAEA") arising out of her allegedly protected activity, namely that her request for promotion from Instructor to Assistant Professor was denied on November 1, 2016. (SAC ¶ 61-67, 69(a).)[17] But this act is time-barred because it occurred 430 days before the filing of her Charge on January 5, 2018. (*See* Part II.B *supra*.) Third, Garrick has not pleaded any actionable retaliation within the limitations period, because even the non-MAEA events that Garrick alleges occurred

[15] For example, Garrick pleads that on February 19, 2016, Garrick met with the Vice President of Human Resources "to discuss the *Title IX* backlash and hostility she was experiencing from peer faculty." (SAC ¶ 72 [emphasis added].) Similarly, Garrick stated under oath in her Charge that the retaliation was "as a result of open hostility from faculty who were aware of my *Title IX* complaint assistance." (Charge at 3 [emphasis added].)

[16] *See also Sitar v. Indiana*, 344 F.3d 720, 727 (7th Cir. 2003) (employee's complaint must be about a violation of Title VII to constitute protected activity for purposes of a Title VII retaliation claim); *Curay-Cramer v. Ursuline Academy*, 450 F.3d 130, 136-37 (3d Cir. 2006) (Catholic school teacher's public abortion advocacy in contravention of Catholic teachings was not protected activity under Title VII because it was not opposition to any unlawful employment action under Title VII; dismissal under Rule 12(b)(6) affirmed); *Lamb–Bowman v. Delaware State Univ.*, 152 F. Supp. 2d 553, 560 (D. Del. 2001) (female basketball coach did not engage in protected opposition activity under Title VII by complaining that her university employer violated Title IX in providing disparate levels of funding to men's and women's sports programs; employee's protest against unfair treatment of female student athletes did not involve unlawful gender discrimination in employment under Title VII).

[17] The nonrenewal of Garrick's faculty contract would be a MAEA, but this Court has already dismissed Garrick's termination claim with prejudice. *See Garrick I* at *9-10. Garrick's remaining complaints had no tangible effect on her employment and therefore were not MAEAs. She asserts that she was "pressured to quit her job," her faculty peers treated her with antagonism and called her a "liberal progressive," an administrator said her proposal to liberalize Moody's sexual standards was "inflammatory rhetoric," she was subject to peer reviews, and she received a "Meets Expectations" performance review. (SAC ¶¶ 27, 28, 31(b)-(c), 35(a), 47, 58, 69(a)-(b), 72-74, 79(a), 79(c), 79(d), 81, 84.) Because none of these issues had a definitive or tangible effect on her employment, they are not actionable as retaliation. *See, e.g., Fields v. Bd. of Educ.*, 928 F.3d 622, 626 (7th Cir. 2019) (retaliation claim failed because plaintiff alleged only events that did not rise to the level of a MAEA, such as a warning that she might be disciplined, a negative performance review, and a mediation she was required to attend).

16

prior to March 11, 2017. (*See* SAC ¶¶ 27 ["late 2015"], 46 [2/20/16], 56 ["summer and fall of 2016"], 72 [complaint about retaliation on 2/19/16], 73 [complaint about retaliation on 2/23/16], 74 [4/18/16], 58-59 [Sept. 2016], 79(d) [pre-3/3/17].) Fourth, even if Garrick had alleged a retaliatory MAEA that occurred after March 11, 2017, her retaliation claim would then fail for lack of temporal proximity between the alleged protected activity, the last of which occurred in April 2016 (*see* SAC ¶¶ 49, 54), and the post-March 2017 consequence. This 12-month temporal gap cannot establish a causal connection because even a gap of a few months shows no causation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases rejecting causation based on three-month and four-month periods of time between protected activity and adverse action).[18] Fifth, the retaliatory acts alleged by Garrick are mostly remarks by her faculty *peers* (*see* SAC ¶¶ 27, 28, 35(a), 35(d), 45-46, 69(b), 74), for which Moody cannot be responsible without evidence that her peers were somehow acting with the authority of Moody's administration. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017). Accordingly, Garrick's retaliation count (Count IV) states no claim.

### F.     *Garrick's Hostile Environment Claim Fails for Several Ordinary Reasons*

Even if Garrick's hostile environment claim (Count I) did not fail for the reasons stated above, it would have to be dismissed because it does not meet the standards for an actionable

---

[18] *See also LaRiviere v. Board of Trustees of S. Ill. Univ.*, 926 F.3d 356 (7th Cir. 2019) (ten-month gap defeated claim of causal connection; "We've repeatedly held that similar [ten-month] intervals between the protected activity and adverse action are too long to suggest a causal nexus without additional evidence."); *Smith v. Bray*, 681 F.3d 888, 907 (7th Cir. 2012) (holding that "a gap [of] a few months[] between [the plaintiff's] complaints about discrimination and his termination" could not sustain his claim); *Coleman v. Donahoe*, 667 F.3d 835, 860-61 (7th Cir. 2012) ("temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter," but at a minimum the temporal proximity should be only a matter of weeks or a few months); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval was insufficient to create a material issue regarding causation).

17

harassment claim.[19]  To begin, the events that possibly qualify for such a claim must be extracted

from Garrick's many non-qualifying events.  None of the "hostility" that Garrick contends she

received on account of her assistance to students, in retaliation for raising *Title IX* issues, or

because she proposed a new, "inclusive" sexual conduct policy for students is eligible for

consideration under Garrick's Title VII hostile environment claim because it is not gender-based

harassment made unlawful by Title VII.  *See Smith v. Illinois Dept. of Transp.*, 936 F. 3d 554,

560 (7th Cir. 2019) (the plaintiff's hostile environment claim failed because "the majority of the

harassment he identifies was unconnected to his [protected classification].")  Garrick is therefore

left with her allegations that at points during the period of late 2014 to early 2017 she was told to

remove the reference to her ordination on her resume (late 2014), that she was not immediately

told of the ministerial housing allowance under federal tax law (late 2014), that some male

professors ignored her in the common faculty workroom or in the hallway, that a male professor

commented that based on Garrick's attire he thought she was a student, that a female faculty peer

called her a "liberal progressive" (April 2016), that a faculty peer made a disparaging remark

about her "liberal" educational background, and that, upon her hiring, an administrator invited

Garrick to supplement her educational background with additional theology classes at Moody

(late 2014).  (*See* SAC ¶¶ 22, 24, 31(d), 35(a), 35(c), 35(d), 35(e), 74.)  The above conduct does

---

[19] The requirements of a Title VII hostile work environment claim are familiar to the Court.  To prevail on such a claim, an employee must show that (1) she was subject to unwelcome harassment, (2) the harassment was based on a protected characteristic, (3) the harassment was so severe or pervasive as to alter the conditions of the employee's environment and create a hostile or abusive working environment, and (4) there is a basis for employer liability.  *See Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015).  "[A]lthough a workplace need not be 'hellish' to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are altered."  *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (citations and quotations omitted).  In determining whether a hostile work environment exists, the court considers the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  *Id.* at 549-50.

not come close to stating an actionable gender-based hostile environment claim because: (1) there was nothing physically threatening or humiliating to Garrick; (2) none of the comments demeaned Garrick's gender or were sexually offensive; (3) some of the incidents described are plainly not related to gender but to the conflict between Moody's and Garrick's religious views and Garrick's liberal background;[20] (4) the events occurred infrequently, and over a period of roughly two years; (5) the comments were made primarily by Garrick's peers, not by anyone in authority over Garrick; (6) none of the incidents was severe; (7) the "harassment" was not pervasive; (8) Garrick alleges no debilitating effect on her work as a professor; and (9) Garrick does not allege a basis for Moody to be liable for the occasional remarks of other faculty members. Thus, Garrick has stated no gender-based hostile work environment claim. *See Swyear v. Fare Foods Corp.*, 911 F. 3d 874, 880-83 (7th Cir. 2018) (multiple instances of gender-based comments by supervisors and co-workers did not establish a hostile work environment).

G.     *Garrick's Class Action Gender Discrimination Claim Must Be Dismissed*

Count III of Garrick's SAC attempts to bring a class action gender discrimination claim. (*See* SAC ¶¶ 114-22.) But other than conclusory allegations, which are disregarded on a motion to dismiss, *see Doe v. Columbia College Chicago*, 933 F. 3d 849, 854 (7th Cir. 2019), Garrick provides the Court with nothing that could sustain a class action claim. She pleads no facts showing any of the required elements under Federal Rule of Civil Procedure 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of

---

[20] As this Court noted in *Garrick I*, "Even [Garrick's] hostile-work-environment claim implicates Moody's doctrine, given that much of the hostility Garrick says she experienced arose out of her views on women in the ministry." *Garrick I*, at*9.

the class." Fed. R. Civ. P. 23(a). Garrick further fails to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, she fails to allege that she has class legal counsel who is competent to handle the matter, as required by Fed. R. Civ. P. 23(g); in fact, the SAC pleads that after "trying to secure new [legal] counsel, contacting almost 200 law firms, organizations, and law professors, [Garrick] was unable to do so." (SAC ¶ 10.) Because Garrick fails to allege facts supporting the requirements for a class action, Count III must be dismissed. *See Wal-Mart Stores v. Dukes*, 564 U.S. 2011 (2011) (party seeking class certification must affirmatively demonstrate compliance with all requirements of Rule 23); *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (a pro se litigant is not qualified to bring a class action).[21]

## V.      CONCLUSION

For the reasons stated above, Moody asks that Garrick's SAC be dismissed. And the dismissal should be with prejudice because the SAC is Garrick's third complaint in this matter and it fails plead actionable claims within the scope of *Garrick I.*

Dated:  December 4, 2019                                     Respectfully submitted,

                                                            s/  Christian Poland
                                                            One of the Attorneys for Defendant
                                                            The Moody Bible Institute of Chicago

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

---

[21] If all of this were not enough, there would be additional timeliness and scope-of-the-Charge issues with Garrick's proposed class action.

601297280.3

<u>CERTIFICATE OF SERVICE</u>

Christian Poland, one of the attorneys for Defendant, The Moody Bible Institute of

Chicago, states that on December 4, 2019, he served a true and correct copy of the foregoing

document upon Plaintiff by causing said document to be delivered to her via the Court's ECF

system, addressed as follows:

Janay E. Garrick
P.O. Box 3851
Tallahassee, FL 32315
janay.garrick@gmail.com

s/ Christian Poland

21

601297280.3