IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK,<br><br>                        Plaintiff,<br><br>    v.<br><br>MOODY BIBLE INSTITUTE,<br><br>                        Defendant. | Case No. 1:18-cv-00573<br><br>Judge John Lee<br>Magistrate Judge Young Kim |

**DEFENDANT MOODY BIBLE INSTITUTE'S
MOTION FOR LEAVE TO CITE ADDITIONAL AUTHORITY
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant, The Moody Bible Institute of Chicago ("Moody"), moves this Court for leave to cite an additional authority in support of its pending motion to dismiss all claims brought by Plaintiff, Janay Garrick ("Garrick"), in her Second Amended Complaint. The recently decided case of *Our Lady of Guadalupe School v. Morrissey-Berru*, No. 19-267, ___ U.S. ___, 2020 WL 3808420 (U.S. July 8, 2020), is directly supportive of Moody's motion to dismiss. Although *Our Lady* primarily involves the "ministerial exception," and Moody has not based its motion to dismiss on the "ministerial exception" because in a previous ruling this Court held that Moody could not permissibly raise the ministerial exception in a Rule 12(b)(6) motion,[1] the principles adopted in *Our Lady* support Moody's arguments that, regardless of the labels Garrick has

---

[1] *See Garrick v. Moody Bible Institute*, No. 1:18-cv-00573, 2019 WL 4674570, at *8 (N.D. Ill. Sept. 25, 2019) ("*Garrick I*") (declining Moody's request to decide Moody's motion to dismiss Garrick's First Amended Complaint on the basis of the ministerial exception because the ministerial exception is an affirmative defense and the facts to establish it were not apparent from the face of Plaintiff's Complaint); *see also* Dkt. 103 at n.14 (Moody's brief in support of its motion to dismiss Plaintiff's Second Amended Complaint, explaining that its motion is not based on the ministerial exception because of the Court's ruling in *Garrick I*, but noting why Moody contends that the ministerial exception bars Garrick's claims).

1

applied to her claims, all of her claims are barred by the constitutional principles protecting religious autonomy.

In *Our Lady* (which consolidated two similar cases), two Catholic elementary school teachers were fired for what the employers said were job performance issues (not specifically religious issues), and the teachers filed suit, contending their firings were actually the product of age discrimination and retaliation for requesting medical leave. *Our Lady*, 2020 WL 3808420 at *3-7. The schools contended that because the teachers each served important religious functions in the school's religious mission, they fell within the ministerial extension and the schools were not subject to the teachers' employment law claims. *Id*. The trial courts agreed, and granted summary judgment to the schools, but the Ninth Circuit reversed. *Id*.

The schools challenged the Ninth Circuit's decisions, and the Supreme Court reversed. The Ninth Circuit had essentially held that the four considerations the Supreme Court identified in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012), as relevant to the ministerial exception were not just considerations but were instead required factors that needed to be present before the ministerial exception could apply. *See Our Lady*, 2020 WL at *12-13. The Court rejected the Ninth Circuit's view. *See id*. The Court reiterated that "a variety of factors may be important" but what matters most is "what an employee does." *Id*. at *10. Because both schools viewed the teachers at issue "as playing a vital part in carrying out the mission of the church" and because in both cases, the teachers' duties showed that they performed certain religious duties, the Court held, "When a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow." *Id*. at *12, 14. And it did not matter what particular reasons the schools gave for the employment decisions or, alternatively,

2

what the teachers claimed was the "real" reason for their discharge; courts are prohibited by both the Free Exercise Clause and the Establishment Clause from second-guessing religious employers' employment decisions as to employees who are entrusted with carrying out the organizations' religious mission and goals. *Id*. at *7.

These principles directly apply to Moody's motion to dismiss. Moody has argued at length that constitutionally derived religious-autonomy doctrines bar Garrick's claims because they are too intertwined with religious issues and Moody's decisions related to religious issues. (*See* Dkt. 103 at 12-15; Dkt. 113 at 6-8.) This Court has already recognized the applicable legal doctrines: "[O]verarching principle[s] of religious autonomy . . . may require dismissal where a religious employer offers a religious justification for the adverse action or where the claim will otherwise pose too much intrusion into the religious employer's Free Exercise and Establishment Clause rights." *Garrick I,* at *8 (internal quotation marks and citations omitted). The Supreme Court in *Our Lady* expressly affirmed this constitutionally protected religious autonomy:

> The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Among other things, the Religion Clauses protect the right of churches and other religious institutions to decide matters "'of faith and doctrine'" without government intrusion. *Hosanna-Tabor*, 565 U.S., at 186, 132 S. Ct. 694 . . . . State interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion. The First Amendment outlaws such intrusion.
>     The independence of religious institutions in matters of "faith and doctrine" is closely linked to independence in what we have termed "'matters of church government.'" 565 U.S., at 186, 132 S. Ct. 694. This does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission. And a component of this autonomy is the selection of the individuals who play certain key roles.

*Our Lady*, 2020 WL 3808420 at *7.

*Our Lady* further reinforced these principles, in Moody's very educational context:

3

> The religious education and formation of students is the very reason for the existence of most private religious schools, and therefore the selection and supervision of the teachers upon whom the schools rely to do this work lie at the core of their mission. Judicial review of the way in which religious schools discharge those responsibilities would undermine the independence of religious institutions in a way that the First Amendment does not tolerate.
>
> . . . .
>
> [I]mplicit in our decision in *Hosanna-Tabor* was a recognition that educating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school. As we put it, Perich [the teacher in *Hosanna-Tabor*] had been entrusted with the responsibility of "transmitting the Lutheran faith to the next generation." 565 U. S., at 192. One of the concurrences made the same point, concluding that the exception should include "any 'employee' who leads a religious organization, conducts worship services or important religious ceremonies or rituals, or serves as a messenger or *teacher of its faith*." *Id*., at 199 (opinion of Alito, J.) (emphasis added).

*Our Lady*, 2020 WL 3808420 at *3, 10.

*Our Lady* also emphasizes that the religious organization's view of whether the employee serves a religious role in its ministry—especially when the religious employer offers a religious reason for the employment decision it made—is entitled to deference, and a court may not subject the employer to discovery or trial to "second guess" such religious matters, because that would involve impermissible judicial entanglement. "A religious institution's explanation of the role of such employees in the life of the religion in question is important." *Id*. at *12. "[T]he Religion Clauses require civil courts to defer to religious organizations' good-faith claims that a certain employee's position is 'ministerial.'" *Id*. at *14 (Thomas, J., joined by Gorsuch, J., concurring). "[W]e should defer to these groups' good-faith understandings of which individuals are charged with carrying out the organizations' religious missions." *Id*. at *16.

Under these principles, all of Garrick's claims are barred by the constitutionally mandated religious-autonomy doctrines, and Moody's motion to dismiss should be granted.

4

602166786.2

5

Wherefore, Defendant, The Moody Bible Institute of Chicago, requests leave to cite the above-referenced authority in support of its pending motion to dismiss Garrick's Second Amended Complaint (Dkt. 101, 103, and 113).

Dated:  July 13, 2020                                    Respectfully submitted,


                                                s/  Christian Poland
                                                One of the Attorneys for Defendant
                                                The Moody Bible Institute of Chicago


Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

CERTIFICATE OF SERVICE

  Christian Poland, one of the attorneys for Defendant The Moody Bible Institute of Chicago states that on July 13, 2020, he served a true and correct copy of the foregoing *Defendant Moody Bible Institute's Motion for Leave to Cite Additional Authority in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint* upon Plaintiff by causing said document to be delivered to her via the Court's ECF system, addressed as follows:

> Janay E. Garrick
> 627 South Jefferson Upper
> Moscow, Idaho 83843
> janay.garrick@gmail.com

              s/ Christian Poland

6

602166786.2