IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANAY E. GARRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 573 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| MOODY BIBLE INSTITUTE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Moody Bible Institute ("Moody"), a religious educational institution, hired Janay Garrick to teach courses in secular subjects. During her tenure at Moody, Garrick encountered what she viewed as rampant gender discrimination and harassment. When Garrick complained, Moody fired her, claiming that she was a bad fit because she disagreed with certain aspects of its faith.

Believing that Moody invoked religious differences as a pretext for terminating her, Garrick brought this *pro se* action under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. 2000e *et seq*. In particular, Garrick accuses Moody of nurturing a hostile work environment (Count I), engaging in gender discrimination (Counts II and III), and retaliating against her (Count IV). Moody has moved to dismiss, relying upon the applicable statute of limitations as well the rights to religious autonomy enshrined in the First Amendment. For the reasons below, the Court concludes that the statute of limitations does not bar Garrick's claims at this stage. As for the First Amendment, the Court holds that Garrick's claims—which turn, in

large part, on whether the religious reasons that Moody gave for Garrick's termination were pretextual—do not impermissibly intrude upon Moody's religious rights. Even so, the Court also finds that Garrick fails to plead a hostile work environment. Accordingly, Moody's motion is granted in part and denied in part.

### I. Background[1]

This factual and procedural summary assumes familiarity with the Court's prior orders, especially the September 25, 2019, Memorandum Opinion and Order dismissing Garrick's first amended complaint. *See* ECF No. 91 (the "September 25 Order"). To review, Moody is a post-secondary religious educational institution that accepts federal aid. 2d Am. Compl. ("SAC") ¶¶ 1, 3, ECF No. 98. Moody subscribes to a "complementarian" doctrine that forbids women from acting as religious leaders. *Id.* ¶¶ 80, 85.

Garrick holds a Master's degree in cross-cultural studies and a Bachelor's degree in creative writing and speech communications. *Id.* ¶ 18. She identifies as an "egalitarian Christian" and believes in gender equality in the ministry. *Id.* ¶ 20. Between 2014 and 2017, Garrick worked at Moody as an Instructor of Communications. *Id.* ¶ 19. Garrick advised Moody about her egalitarian beliefs before it hired her. *Id.* ¶ 20.

Throughout her time at Moody, Garrick experienced what she characterizes as

---

[1] In analyzing a motion to dismiss, the court "accept[s] as true all well-pleaded factual allegations and draw[s] all reasonable inferences in favor of the plaintiff." *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

2

pervasive gender discrimination. Garrick's thirty-page complaint catalogs dozens of allegedly discriminatory acts. For example, Moody adhered to its complementarian creed by barring Garrick from speaking during religious services. *Id.* ¶ 30. And, although Garrick has been ordained as a minister, Moody instructed her to remove that designation from her resume because "the office of pastor is reserved exclusively for male candidates." *Id.* ¶ 25.

Garrick also reports that Moody subjected women who taught secular courses to worse treatment than their male counterparts. For one thing, Moody staffed prestigious academic departments with men, leaving women to fill less valued roles. *Id.* ¶ 26. For another, Moody expected Garrick to teach more courses and undergo more searching performance reviews than similarly-situated men. *Id.* ¶¶ 31(b)–(c), 33.

The administrators were not the only ones who treated women differently at Moody. When Garrick entered the faculty workroom, male professors would avoid making eye contact with her and then leave the room. *Id.* ¶ 35(a). On one occasion, her male colleagues suggested that women are unable to understand basic employment documents. *Id.* ¶ 35(b). On another, a male professor criticized Garrick's clothes, saying that she looked like a student. *Id.* ¶ 35(c). Based on these and other incidents, Garrick repeatedly complained to her supervisor that she faced a hostile work environment. *Id.* ¶ 77.

Two years after she was hired, Moody informed Garrick that it was unlikely to

renew her contract as a result of "performance and interpersonal issues." *Id.* ¶ 79(c). Moody fired Garrick a few weeks later. *Id.* ¶¶ 85, 86. In doing so, it claimed that she was "not aligned with [its] doctrinal statement as it related to gender roles in ministry." *Id.* ¶¶ 85, 96. Garrick believes that this explanation is "pretext," and that Moody actually fired her because she is a woman who raised concerns about gender discrimination. *Id.* ¶¶ 89, 96–97.

Soon after Garrick initiated this lawsuit, her counsel withdrew. *See* 10/3/18 Order, ECF No. 44. Proceeding *pro se*, Garrick filed an amended complaint asserting that Moody's conduct violated Title VII, Title IX, and the parties' employment agreement. *See* Am. Compl., ECF No. 66. Upon motion by Moody, this Court dismissed the Title IX and breach of contract claims with prejudice, but permitted Garrick to replead the Title VII claims. *See* September 25 Order at 21. Now before the Court is Moody's motion to dismiss Garrick's second amended complaint asserting Title VII claims anew.

## II. **Legal Standards**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all

4

well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts also construe *pro se* complaints liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. Analysis

Moody contends that the complaint should be dismissed in its entirety on three grounds: (1) the statute of limitations, (2) Title VII's exemption for religious organizations, and (3) the First Amendment principles protecting religious autonomy. In the alternative, Moody submits that Garrick has failed to adequately plead her retaliation, hostile work environment, and class action claims.[2] The Court begins by

---

[2] Although Moody also believes that the ministerial exception requires dismissal of Garrick's claims, the Court previously rejected that argument, *see* September 25 Order at 15–16, and Moody does not repeat it here, *see* Def.'s Mot. Dismiss at 15 n.14, ECF No. 103; Def.'s Opp. Mot. Stay at 2, ECF No. 106 ("[T]he ministerial exception does not affect any issue presently before the Court."). The Supreme Court's recent decision in *Our Lady of Guadalupe School v. Morrissey-Berru*, which interpreted the scope of the ministerial exception, is thus not relevant here. 140 S. Ct. 2049 (2020). Contrary to Moody's suggestion, *Morrissey-Berru* did not introduce a new understanding of any other aspect of the religious autonomy doctrine. Instead, as Moody implicitly acknowledges, the Supreme Court reiterated principles it had previously elaborated in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012). *See* Def.'s Mot. File Supp. Auth. at 3, ECF No. 121.

5

analyzing Moody's objections to Garrick's Title VII claims as a whole, and then turns to its arguments challenging each of the specific Title VII claims.

A.  The Statute of Limitations

Moody first argues that all of Garrick's Title VII claims are time-barred. To pursue a Title VII claim, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") soon after the allegedly discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e)(1). If the employee "initially instituted proceedings with a state or local agency," a 300-day limitations period applies to that charge. *Id.* Otherwise, the claimant must contact the EEOC within 180 days. *Id.*

At this stage, the Court cannot determine from the record whether the 180-day or 300-day limit should govern this case. Because Garrick's complaint and response brief make no mention of proceedings before a state or local agency, Moody says that she has implicitly conceded that the shorter period applies. But the statute of limitations only justifies dismissal when a complaint "unambiguously establish[es] all elements of th[at] [affirmative] defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). And, especially considering Garrick's *pro se* status, her silence cannot be construed as an unambiguous admission that the 180-day limit controls. Thus, at the pleading stage, the Court will allow Garrick to raise allegations of discriminatory conduct that occurred after March 11, 2017 (300 days before she filed a charge with the EEOC). SAC ¶ 6.

That constrains the scope of Garrick's claims, but does not foreclose them

altogether.  To be sure, many of the employment actions detailed in the complaint took place before March 11, 2017.  But Garrick's firing took place thereafter, on April 17, and thus well within the 300-day period.[3]  SAC ¶ 86.  Accordingly, to the extent that Garrick wishes to pursue gender discrimination and retaliation claims premised upon her termination, Defendant's motion to dismiss those claims based upon the statute of limitations is denied.[4]

Garrick's hostile work environment claim survives Moody's statute of limitations argument for different reasons.  Unlike other types of Title VII claims, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)).  So, if "an[y] act contributing to the [hostile work environment] claim occurs within the filing period," then "the entire time period of the hostile environment may be considered."  *Id*.

Here, rather than attributing the alleged harassment to a particular event on a particular date, Garrick depicts an ongoing course of conduct.  *See, e.g.*, SAC ¶ 28

---

[3]  Though Moody presented Garrick with a lackluster performance review on March 30, SAC ¶ 84, that does not qualify as an adverse action, see *Fields v. Bd. of Educ. of City of Chi.*, 928 F.3d 622, 626 (7th Cir. 2019).

[4]  Moody protests that "the Court has already ruled that all termination-related claims are barred by Moody's religious defenses."  Def.'s Mot. Dismiss at 4 n.5.  But that assertion rests on a misreading of the September 25 Order.  While the Court dismissed with prejudice Garrick's breach of contract and Title IX claims, it allowed her to amend her Title VII claims.  *See* September 25 Order at 19–22.

7

(recounting repeated instances of "ridicule" by male colleagues). Taking that allegation as true, a reasonable inference can be made that at least one act of harassment happened within the filing period. Accordingly, Garrick's hostile work environment claim also survives for the time being.

**B.     Title VII's Religious Organization Exemption**

The next question is whether the statutory exemption in Title VII for religious employers shields Moody from Garrick's claims. As a general matter, Title VII does "not apply to . . . a religious . . . educational institution . . . with respect to the employment of individuals of a particular religion." 42 U.S.C. § 2000e-1(a). But, as the Court previously recognized, "Title VII's exemptions are limited specifically to claims of discrimination premised upon [an employee's] religious preferences." September 25 Order at 14 (citing *Herx v. Diocese of Ft. Wayne-South Bend Inc.*, 48 F. Supp. 3d 1168, 1175 (N.D. Ind. 2014)). Because Garrick pleads that Moody fired her as a result of her gender, and not her religious beliefs, *see* SAC ¶¶ 97, 101, 111–12, 116–17, her claims falls outside the scope of the religious organization exemption.

None of the authorities Moody cites persuades the Court to depart from its previous reading of Title VII. If anything, those cases confirm that the statute only precludes claims predicated on discrimination based on one's religious beliefs and practices. For example, in *Aparicio v. Christian Union, Inc.*, the court held that the exemption governs "when the basis for the alleged retaliation are an employee's objections to his or her employer's religious discrimination." No. 18-cv-0592, 2019

8

WL 1437618, at *9 (S.D.N.Y. Mar. 29, 2019). Along the same lines, in *Garcia v. Salvation Army*, the Ninth Circuit applied the exemption where a plaintiff pleaded that her employer practiced "discrimination based on religion." 918 F.3d 997, 1005 (9th Cir. 2019). Accordingly, Title VII's religious organization exemption does not justify dismissal of Garrick's claims.

## C. The First Amendment Right to Religious Autonomy

Turning from statutory exemptions to constitutional entitlements, Moody maintains that permitting Garrick's claims to proceed would interfere with its right to religious autonomy enshrined in the First Amendment.[5] Under the religious autonomy doctrine, courts "respect[] the authority of churches to select their own leaders, define their own doctrines, resolve their own disputes, and run their own institutions." September 25 Order at 10–11 (citing *Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013)); *see Morrissey-Berru*, 140 S. Ct. at *2055 ("The First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." (cleaned up)).

That is why this Court dismissed the previous complaint. What proved fatal

---

[5] Moody also asserts that Garrick waived opposition to this argument by failing to explicitly address it in her response brief. But Garrick repeatedly maintains that her Title VII claims center on gender discrimination, not religious differences. *See, e.g.*, Pl.'s Resp. at 4, 6, 10, ECF No. 111. That is sufficient to avoid waiver given Garrick's *pro se* status. *See Erickson*, 551 U.S. at 94 (explaining that *pro se* litigants must be "held to less stringent standards" than parties who are represented by counsel).

9

to that pleading was Garrick's allegation that "she was actually fired because of her advocacy in favor of female students joining the Pastoral Ministry Program." *Id.* at 18 (citing Am. Compl. ¶¶ 124–29). Since that rationale was "rooted firmly in [Moody]'s religious beliefs," adjudicating Garrick's claims "would [have] impermissibly inject[ed] the auspices of the government into religious doctrine." *Id.* at 19. Even so, this Court recognized that "strains of [Garrick's] Title VII claims" may "not be tied to Moody's religious beliefs" and allowed her to replead on that basis. *Id.*

This time around, Garrick has crafted her Title VII claims to steer clear of the religious freedoms guaranteed by the First Amendment. Whereas the previous complaint had cast Garrick's objections to Moody's complementarian creed as the real reason for her firing, the present complaint portrays Moody's religious justification as a *pretext* for gender discrimination. *See* SAC ¶¶ 107, 127–32. Put differently, rather than questioning the reasonableness or legitimacy of Moody's religious beliefs, Garrick disputes whether those beliefs actually prompted her firing.

That distinction makes the difference. When an employee "challenge[s] the validity or plausibility of the religious doctrine said to support her dismissal," the First Amendment generally bars her Title VII claims. *Curay-Cramer*, 450 F.3d 130, 139 (3d Cir. 2006). But when a plaintiff "only question[s] whether [religion] was the actual motivation" for an adverse action, the employer's religious autonomy is not threatened. *Id.*; *accord DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 172 (2d Cir.

10

1993); *see also Redhead v. Conference of Seventh-Day Adventists*, 566 F. Supp. 2d 125, 134 (E.D.N.Y. 2008) ("[A]n employer's simple assertion of a religious motive usually will not prevent a reviewing court from asking whether that motive was in fact pretext within the meaning of *McDonnell Douglas*." (cleaned up)).[6]

To see why the current iteration of Garrick's complaint does not imperil religious autonomy, it is helpful to review what she will need to show to survive a motion for summary judgment. At that point, Garrick will have to demonstrate that a reasonable factfinder could disbelieve Moody's stated reason for firing her. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013). For example, Garrick may identify disparaging comments Moody's supervisors made about women or spotlight male instructors who disagreed with Moody's complementarian doctrine yet retained their positions.

In examining that evidence, this Court will ask whether Garrick "raise[es] a genuine issue about the honesty, not the accuracy, of [Moody's] stated reason." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 465 (7th Cir. 2014). That means the Court will not sit in judgment as to what Moody's complementarian doctrine entails

---

[6] *Fratello v. Archdiocese of New York* does not suggest otherwise. 863 F.3d 190 (2d Cir. 2017). According to Moody, that case stands for the proposition that "if [a] religious employer offers a religious reason for an employment decision, courts may not adjudicate the matter." Mot. Dismiss at 12, ECF No. 103 (citing *Fratello*, 863 F.3d at 190, 197, 202, 203). But *Fratello* says nothing of the kind. Indeed, "[t]he sole question" *Fratello* analyzed "is whether [the plaintiff] [wa]s a 'minister' within the meaning of the exception." *Id.* at 192. Here, by contrast, the Court has already concluded that "the allegations of the complaint do not conclusively demonstrate that Garrick falls within the ministerial exception," and Moody does not contest that determination at this stage. September 25 Order at 16–17.

11

or whether it represents a reasonable basis for firing Garrick. Rather, the Court will need only determine (and the parties will need only investigate during discovery) whether Moody terminated her because of its religious beliefs or whether its invocation of its religious beliefs was, in fact, a cover to discriminate against Garrick because of her gender.

A recent Seventh Circuit case construing the First Amendment's ministerial exception supports this approach. In *Sterlinski v. Catholic Bishop of Chicago*, the court sought to chart a middle course between engaging in constitutionally forbidden "judicial resolution of ecclesiastical issues" and taking "a completely hands-off approach" to Title VII claims against religious employers. 934 F.3d 568, 571 (7th Cir. 2019). "The answer," the court decided, "lies in separating pretextual justifications from honest ones." *Id.* "[N]ormal title VII litigation," the court emphasized, hinges on whether an employer's "reason is honest . . . [not] whether the reason is *correct*." *Id.* In this way, analyzing pretext preserves religious autonomy without "abnegat[ing]" the judicial role. *Id.* The same logic explains why the First Amendment does not dictate dismissal of Garrick's claims here.

Moody counters that while Garrick "styles her legal claims as . . . gender discrimination," she actually describes discrimination based on religious beliefs. Def.'s Reply at 11, ECF No. 11. It is true that the religious autonomy doctrine turns on the substance of a plaintiff's claims, not the label she chooses to attach to them. *See Curay-Cramer*, 450 F.3d at 139. And parts of the complaint undoubtedly object

12

to Moody's complementarian creed. Most notably, Garrick faults Moody for prohibiting women from training as ministers or speaking at chapel. *See* SAC ¶ 23, 27, 29, 38(b), 50. To the extent that Garrick continues to challenge those policies, this Court has rejected her arguments once and reaffirms that conclusion again here. *See* September 25 Order at 18–19.

But not all of Garrick's allegations "are inextricably related to Moody's religious beliefs." Def.'s Reply at 6 n.4, ECF No. 113. By all accounts, the complementarian doctrine focuses on excluding women from serving *as ministers*. *See* SAC ¶ 96; Mot. Dismiss at 5. It does not follow that Moody's faith requires unequal treatment of women who work in *secular* roles. Here, for example, Garrick alleges that Moody expected female teachers of secular subjects to perform more demanding duties and submit to more onerous performance reviews than similarly situated male teachers. *See id.* ¶¶ 31(b)–(c), 33, 38(h)–(j). Under those circumstances, a reasonable inference can be made from the allegations that Moody fired Garrick because it held female teachers to higher standards than their male counterparts, not because it disapproved of her egalitarian religious views.[7]

---

[7] Without saying so explicitly, Moody seems to suggest that because Garrick's breach of contract claim was dismissed with prejudice, her Title VII termination claim should be too. But the former claim presents a greater threat to religious autonomy than the latter. To decide if Moody breached the employment agreement, the Court would need to analyze whether Garrick's rejection of the complementarian doctrine counts as a "serious violation of Institute policy." September 25 Order at 20–21 (citing Am. Compl. ¶ 85). The Court cannot answer that question without defining Moody's beliefs and weighing their importance. By contrast, Garrick's Title VII termination claim hinges on whether Moody "believe[s] its own reason" for firing Garrick, not "whether th[at] reason is *correct*." *Sterlinski*, 934 F.3d at 571.

Moody's reliance upon *Demkovich v. St. Andrew the Apostle Parish* is especially misplaced in light of the Seventh Circuit's decision on appeal. 343 F. Supp. 3d 772 (N.D. Ill. 2018), *aff'd in part, rev'd in part*, 2020 U.S. App. LEXIS 27653, 973 F.3d 718 (7th Cir. Aug. 31, 2020). There, a gay musician employed by a Catholic organization claimed that his supervisor created a hostile work environment by calling him a "bitch[]" and a "fag." 343 F. Supp. at 776–77 (internal quotation marks omitted). But unlike Garrick, the musician did not allege that the organization's religious justification for the derogatory remarks was pretextual. *See id.* at 786–87. Moreover, while the district court dismissed the claim under the Free Exercise Clause based on distinct, case-specific factors, *see id.*, the Seventh Circuit reversed that decision, holding that the First Amendment does *not* categorically bar hostile work environment claims not premised on tangible employment actions, *see* 2020 U.S. App. LEXIS 27653, at *1–3, *40. *Demkovich* is thus of no help to Moody here.

To sum up, neither the statute of limitations, Title VII's exemption of religious employers, nor the First Amendment entirely forecloses Garrick's claims. The Court now turns to Moody's claim-specific arguments.

**D.    Count I: Hostile Work Environment Claim**

Moody first questions whether Garrick has plausibly alleged that she encountered a hostile work environment. To do so, Garrick must show that she faced "objectively" severe or pervasive harassment. *Smith v. Northeastern, Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (cleaned up). "[P]etty workplace slights," by contrast,

14

"are not actionable." *Duminie v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 17-cv-3030, 2020 WL 1288876, at *6 (N.D. Ill. Mar. 18, 2020) (cleaned up). In *Adam v. Obama for America*, for instance, the court dismissed a hostile work environment claim when an intern's coworkers repeatedly "laughed at" her, "excluded her from group activities," and "pulled [her] hair." 210 F. Supp. 3d 979, 983–84, 991 (N.D. Ill. 2016).

Measured against that standard, the behavior Garrick recounts does not rise to the level of objectively severe or pervasive harassment. According to the complaint, Garrick's colleagues "ridiculed her," SAC ¶ 28, disparaged her intelligence, *id.* ¶ 35(b), and once told her that her clothes made her look like a student, *id.* ¶ 35(c). While such comments and actions were undoubtedly callous, ignorant, and unpleasant, "rude or impolite interactions with co-workers," without more, are insufficient to support a hostile work environment claim. *Adam*, 210 F. Supp. 3d at 991 (citing *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002)). Given that the Court has granted Garrick several chances to amend her complaint, this claim is dismissed with prejudice.

### E. Count IV: Retaliation Claim

Garrick's next claim is a different story. A successful Title VII retaliation claimant must "allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). Although Moody levels two different

15

attacks on Garrick's retaliation claim, neither prevails.[8]

First, Moody insists that Garrick failed to engage in any form of "statutorily protected activity." *Id.* To qualify as protected, an activity must involve "some step in opposition to a form of discrimination that the statute prohibits." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011). That said, "[t]he plaintiff need not show that the practice [s]he opposed was in fact a violation of the statute; [s]he may be mistaken in that regard and still claim protection." *Id.* (cleaned up). Because Garrick repeatedly warned her supervisor about what she perceived as a hostile work environment, the complaint satisfies this element. SAC ¶¶ 77, 128.

Second, Moody posits that too much time passed between Garrick's protected activity and the allegedly retaliatory conduct for the former to be causally related to the latter. *See, e.g.*, *LaRiviere v. Bd. of Trustees of S. Ill. Univ.*, 926 F. 3d 356, 360 (7th Cir. 2019) (finding a ten-month interval "between the protected activity and adverse action too long to suggest a causal nexus"). But Garrick asserts that she repeatedly told her supervisor that she faced a hostile work environment, making it reasonable to infer—at least for now—that Garrick continued to object until shortly before her termination. SAC ¶ 77. Accordingly, Garrick's retaliation claim may proceed at this stage.

---

[8] Repeating an earlier argument, Moody also maintains that Garrick makes no mention of any retaliatory action that occurred within the limitations period. To the contrary, Garrick alleges that one of the ways Moody retaliated against her was by "terminat[ing] her." SAC ¶¶ 129, 130.

F.  Class Claims

At times, Garrick describes herself as a "Title VII class member." SAC ¶¶ 114–22. Based on that language, Moody construes the complaint as attempting to initiate a class action. But the complaint and response brief are bereft of any other indications that Garrick meant to raise class claims. In any event, it is well-settled that a *pro se* litigant "cannot adequately represent [a] putative class." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000); *see* 7A Wright, Miller & Kane, Federal Practice and Procedure § 1769.1 (2d ed. 1986) ("[C]lass representatives cannot appear pro se."). So, to the extent that Garrick intended to bring claims on behalf of a putative class, those claims are dismissed with prejudice.

## IV.  Conclusion

For the reasons given above, Moody's motion to dismiss is granted in part and denied in part. Garrick's disparate treatment and retaliation claims (Counts II to IV) may proceed, but her hostile work environment (Count I) and class claims (to the extent that Garrick intended to raise such claims) cannot. A telephone status hearing is set for 10/22/20 at 9:15 a.m. to discuss the scope and timing of discovery.

IT IS SO ORDERED.                    ENTERED: 10/13/20

                                     _____
                                     **JOHN Z. LEE**
                                     **United States District Judge**

17