IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK,<br><br>        Plaintiff,<br><br> v.<br><br>MOODY BIBLE INSTITUTE,<br><br>        Defendant. | Case No. 1:18-cv-00573<br><br>Judge John Lee<br>Magistrate Judge Young Kim |

**DEFENDANT MOODY BIBLE INSTITUTE'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO RECONSIDER
THIS COURT'S DENIAL OF MOODY'S MOTION TO DISMISS
AS TO THE TERMINATION CLAIMS IN
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

602588815.3

TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 1

    A. Garrick Does Not Respond to, Much Less Rebut, the Factual Support Moody Provides for Its Motion, Thereby Conceding the Accuracy of the Foundation for Moody's Motion and Justifying the Dismissal of Her Termination Claims........... 1

    B. Moody's Motion Satisfies the Standards for a Motion to Reconsider Because the Motion Identifies Misapprehensions of Fact and Errors of Law in Garrick II ....... 2

    C. Garrick Fails to Rebut Moody's Showing that Pretext Cannot Be Adjudicated in this Case Without Impermissibly Entangling the Court in Religious Questions and Without Impermissibly Sitting in Judgment of Religious Motives ........................ 5

    D. The First Amendment Religion Clauses Prohibit Courts from Adjudicating Whether a Religious Employer's Religious Reason for Terminating an Employee with Religious Obligations Is Pretextual ............................................................... 8

    E. The Seventh Circuit's Recent Decision in Demkovich v. St. Andrew the Apostle Parish, on which Garrick II Relied, Has Been Vacated, Pending En Banc Review ................................................................................................................................ 11

    F. Certification for Interlocutory Appeal Is Warranted If this Court Decides that this Case Will Proceed on the Basis that Pretext May Be Adjudicated........................ 12

III. CONCLUSION................................................................................................................ 13

I.   INTRODUCTION

Garrick's response to Moody's Motion for Reconsideration (the "Motion") offers little substantive rebuttal. First, Garrick does not even address the bulk of Moody's Motion, thereby conceding numerous factual and legal points supporting reconsideration—and requiring the dismissal of her termination claims. Second, Garrick contends that Moody has not met the standard for a motion for reconsideration, but fails to recognize that the Motion identifies errors of law, points out misapprehensions of fact, and is supported by Supreme Court precedent decided after Moody's motion to dismiss was filed. Third, Garrick's limited substantive response misses the mark significantly, citing Ninth Circuit law instead of controlling law, relying on cases that actually support Moody's Motion, and misapplying Seventh Circuit law. Finally, Garrick opposes certification for interlocutory appeal on the sole basis that discovery would assist the court of appeals, when discovery is unnecessary to the legal question Moody seeks to have certified and when discovery is the very irreparable harm that the religious autonomy doctrines bar in this instance. Therefore, Moody asks that its Motion be granted, and that Garrick's remaining termination claims be dismissed.

II.  ARGUMENT

   A.   *Garrick Does Not Respond to, Much Less Rebut, the Factual Support Moody Provides for Its Motion, Thereby Conceding the Accuracy of the Foundation for Moody's Motion and Justifying the Dismissal of Her Termination Claims*

Most noteworthy in Garrick's response to Moody's Motion is what she does not contest. Moody's Motion supplied a complete factual context, with record citations, for the Motion. Garrick offered no response, much less any rebuttal, thereby admitting the following factual background of, and support for, Moody's Motion:

> In *Garrick v. Moody Bible Institute*, 412 F. Supp. 3d 859 (N.D. Ill. 2019) (Dkt. 91) ("*Garrick I*"), this Court dismissed Garrick's Title VII termination claims in her First

1

> Amended Complaint ("FAC") because such claims were barred by well-settled religious autonomy doctrines. (Mot. at 3-5.)
>
> The allegations in Garrick's Second Amended Complaint ("SAC") as to her termination were not materially different from the termination allegations in the FAC. (Mot. at 4-6.)
>
> Garrick was required, as a condition of her employment, to agree with Moody's Doctrinal Statement, including its theological position on the role of women in ministry. (Mot. at 5.)
>
> Garrick became vocal about her disagreement with Moody's Doctrinal Statement on the role of women in ministry. (Mot. at 2-3, 5.)
>
> In April 2017, Moody communicated to Garrick, orally and in writing, that Moody did not renew Garrick's faculty contract because of her nonalignment with its Doctrinal Statement. (Mot. at 1-2, 5 & Ex. A.)
>
> Moody is a religious educational institution protected by the religious autonomy doctrines discussed in Moody's motion to dismiss and the Motion. (Mot. at 2.)
>
> Adjudicating the question of pretext in this case could require inquiry into a number of religious questions and religious motives, which this Court is neither qualified nor permitted to decide. (Mot. at 10 & n.8.)

With these facts unrebutted, the Court may proceed directly to consideration of Moody's legal arguments. First, however, Moody will dispense with the procedural argument Garrick makes.

> B.   *Moody's Motion Satisfies the Standards for a Motion to Reconsider Because the Motion Identifies Misapprehensions of Fact and Errors of Law in* Garrick II

Garrick argues that Moody has not satisfied the standard for a motion for reconsideration as to the Court's ruling in *Garrick II,*[1] but she relies on the wrong standard in so arguing. Five times she cites "Local Rule 7-18" (Resp. at 2, 5), which is a local rule in the U.S. District Court for the Central District of California and has no application here. Additionally, most of the cases Garrick cites either have no relevance or instead support Moody's position. Two of the cases

---

[1] The Court's October 13, 2020 decision (Dkt. 126), which Moody is asking this Court to reconsider, will be referred to herein as *Garrick II*, consistent with Moody's opening brief. The Court's decision is now reported on Westlaw at 2020 WL 6044292, and Moody therefore cites to Westlaw's pagination of the Court's decision.

2

(*Kona Enterprises* and *Scottsdale Insurance*) are non-binding decisions from the Ninth Circuit and the Central District of California and involved post-judgment motions to "reconsider" under Rule 59(c) and Rule 60(b), which are not the issues here. *See* 229 F.3d at 890-91; 389 F. Supp. 3d at 834-839. The case of *GHSC Assocs. Ltd. P'ship v. Wal-Mart Stores, Inc.*, 29 Fed. App'x 382 (7th Cir. 2002), is at least from the Seventh Circuit, but it also involved a motion seeking reconsideration of a final judgment, which the Seventh Circuit held had to be treated as a Rule 60(b) motion. *See id*. at 384-87. Moody's Motion is neither a post-judgment motion nor a Rule 60 motion. Next, rather than support any argument made by Garrick, the Seventh Circuit decision in *Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012), actually supports Moody's position. *Galvan* affirmed the district court's granting of a motion to reconsider, in the course of which the court stated, "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider a [pre-judgment] motion." *Id*. at 587 n.3.

Garrick comes the closest to relevant authority when she cites *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990). That case identified several situations in which a motion to reconsider would be warranted, a few of which are present here:

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Id*. at 1191 (internal quotation marks omitted). Other authorities reiterate the availability and value of motions to reconsider. *See* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment"); *Moses H. Cone*

3

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.").[2]

This Court is already familiar with the standards applicable to motions to reconsider, so Moody need not dwell on them. *See Bless v. Cook County Sheriff's Office*, No. 13C4271, 2019 WL 434337, at *2 (N.D. Ill. Sept. 12, 2019) (Lee, J.) (granting motion to reconsider; "[d]istrict courts have discretion to entertain motions to reconsider prior decisions" including to "correct[] manifest errors of law or fact"). In fact, this Court previously granted Moody's only prior motion to reconsider in this case. *See* Dkt. 35 (granting Moody's motion to reconsider the Court's decision to proceed with full discovery and ordering that discovery would be limited "to the issue of whether the ministerial exception should apply in this case").

Moody's Motion is plainly appropriate. It is based on allegations in the SAC that the Court appears to have overlooked or misapprehended. It is based on manifest errors of law that require correction. It is supported by binding Supreme Court precedent (i.e., *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020)) that was not available at the time Moody's motion to dismiss was briefed. And it raises key constitutional questions as to whether this case may proceed. These points are more than enough to justify the filing of—and granting of—Moody's motion for reconsideration.

---

[2] *See also Vesley v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (a motion for reconsideration is appropriate to correct manifest errors of law or fact); *U.S. v. Ligas*, 549 F. 3d 497, 501 (7th Cir. 2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.")

4

  C. *Garrick Fails to Rebut Moody's Showing that Pretext Cannot Be Adjudicated in this Case Without Impermissibly Entangling the Court in Religious Questions and Without Impermissibly Sitting in Judgment of Religious Motives*

Garrick attempts to make four points in responding to Moody's primary argument that adjudicating pretext in this matter will violate both the Free Exercise Clause and the Establishment Clause. None succeeds.

Garrick first argues (Resp. at 3) that "Moody implies that Garrick was a minister and therefore the ministerial exception applies." (Resp. at 3.) Not so. Not only does Garrick fail to point to any instance in which the Motion "implies" (or states) that Garrick is a minister or that the ministerial exception applies, the Motion for reconsideration rests solely on larger and broader principles of religious autonomy, distinct from the ministerial exception itself.[3] Of course, given that the ministerial exception is derived from the First Amendment Religion Clauses and that the ministerial exception is one of several religious autonomy doctrines,[4] it is not surprising that Moody (and this Court, and Garrick) cite cases in which the ministerial exception is discussed.[5]

---

[3] Moody continues to believe that the ministerial exception bars Garrick's claims, but in *Garrick I* this Court ruled that it could not hold, on a Rule 12(b)(6) motion to dismiss, that Garrick's claims were barred by the ministerial exception. *See Garrick I*, 412 F. Supp. 3d at 869-71. Thus, Moody has reserved such arguments for future motions.

[4] *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020) ("The constitutional foundation for our holding [in *Hosanna-Tabor* adopting the ministerial exception] was the general principle of church autonomy to which we have already referred: independence in matters of faith and doctrine and in closely linked matters of internal government.")

[5] As a reminder, Moody has also cited cases that support its position and do not involve the ministerial exception. *See, e.g.*, *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 653, 657-59 (10th Cir. 2002) (holding that church employee and her same-sex partner could not bring sexual harassment claims based on allegedly anti-gay statements made by church leadership in letters and at church meetings because the church autonomy doctrine, rooted in the Free Exercise Clause and Establishment Clause, gives the church the right "to engage freely in ecclesiastical discussions").

Second, Garrick argues (Resp. at 4) that it is misleading for Moody to argue that the Supreme Court's recent decision in *Our Lady*, which was decided after Moody's motion to dismiss was fully briefed, "affirmed the principle that pretext is off limits." But Moody discussed at length (Mot. at 7-8) how *Our Lady* built upon the religious autonomy principles in *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 194-95 (2012), and expressly held that "the selection and supervision of the teachers upon whom [religious] schools rely to [provide religious education] lie at the core of their mission" and that "[j]udicial review of the way in which religious schools discharge those responsibilities would undermine the independence of religious institutions in a way that the First Amendment does not tolerate." (Mot. at 8 [quoting *Our Lady*, 140 S. Ct. at 2055].) If, as *Our Lady* held, judicial review of *any* aspect of a religious school's termination of a teacher is not tolerated by the Religion Clauses, judicial adjudication of pretext specifically, which goes to the heart of the school's religious motives and decisionmaking process, is *a fortiori* off limits.

Garrick next complains that Moody "only partially quotes *Rweyemamu v. Cote*, 520 F.3d 198, 207 (2d Cir. 2008)." (Resp. at 4.) But Moody quoted only a portion of *Rweyemamu* (*see* Mot. at 12) because Moody was discussing *Fratello*'s reliance on *Rweyemamu*, and *Fratello itself* quoted only a portion of *Rweyemamu*:

> We further noted that "even when we permit suits by lay employees, we will not subject to examination the genuineness of a proffered religious reason for an employment action." *Rweyemamu*, 520 F.3d at 207.

*Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 202 n.25 (2d Cir. 2017). Thus, Moody can hardly be faulted for not quoting more of *Rweyemamu*. Furthermore, Garrick's expanded quotation of *Rweyemamu* is not on point. Garrick wants to rely on *Rweyemamu*'s comment in summarizing what it described as the Second Circuit's "limited precedent" at the time that, up to that point in

6

time, the Second Circuit had "permit[ted] lay employees—but perhaps not religious employees—to bring discrimination suits against their religious employers." 520 F.3d at 207. But *Rweyemamu*'s general statement about what law had developed to that point carries little weight. *Rweyemamu*'s very next comment dramatically limited the scope of its general statement: "even when we permit suits by lay employees, we will not subject to examination the genuineness of a proffered religious reason for an employment action." *Id*. *Rweyemamu* reinforced this point—which is the point that Moody has been consistently making—by quoting with approval the Second Circuit's earlier decision in *Catholic High School Ass'n of the Archdiocese v. Culvert*, 753 F.2d 1161 (2d Cir. 1985): "the First Amendment prohibits . . . [the courts] from inquiring into an asserted religious motive to determine whether it is pretextual." 520 F.3d at 207 (quoting 753 F.3d at 1167). Thus, even though *Rweyemamu* pre-dates *Hosanna-Tabor* and *Our Lady*, *Rweyemamu* accurately foreshadowed the Supreme Court's protection of religious autonomy, ruling that it would be unconstitutional for a secular court to test of the genuineness or honesty of a religious employer's stated religious reasons. *Rweyemamu* concluded with the very holding that Moody asks this Court to adopt: "[I]n order to prevail on [her] Title VII claim, [the plaintiff] must argue that the decision of [the defendant] was not only erroneous, but also pretextual. Such an argument cannot be heard by us without impermissible entanglement with religious doctrine." 520 F.3d at 209 (affirming the Rule 12 dismissal of the plaintiff's Title VII discrimination claim).

Fourth, Garrick argues that "*Sterlinski* [*v. Catholic Bishop of Chi.*, 934 F.3d 568 (7th Cir. 2019)], holds that the question of pretext in labeling an employee as a minister is viable in employment cases." (Resp. at 5.) As Moody discussed in its Motion (Mot. at 12-13), *Sterlinski*'s passing reference to pretext does not apply here. "Labeling an employee as a

7

minister" is not the issue here, and that was *Sterlinski*'s only point of mention, postulating that an employer who dishonestly labeled all of its bus drivers "ministers" to try to invoke the protection of the ministerial exception "would invite a finding of pretext." 934 F.3d at 571. By contrast, the pretext issue that Moody contends is off limits under the holdings of *Our Lady*, *Hosanna-Tabor*, and numerous circuit court decisions is whether Moody honestly believes that Garrick's nonalignment with its Doctrinal Statement warranted the nonrenewal of her faculty contract. (As discussed in the Motion and below, courts have no authority to adjudicate the honesty of a religious employer's religiously motivated rationales.)

In sum, Garrick's only substantive responses to Moody's Motion provide no basis for denying it, and in fact support Moody's Motion.

> D. *The First Amendment Religion Clauses Prohibit Courts from Adjudicating Whether a Religious Employer's Religious Reason for Terminating an Employee with Religious Obligations Is Pretextual*

Garrick's response offers no rebuttal to Moody's central point that the First Amendment Religion Clauses prohibit courts from adjudicating whether a religious reason for a religious employer's termination of an employee with religious obligations is pretextual. All Garrick provides is a reiteration of *Garrick II*'s holding (*see* Resp. at 3-5), which is the holding that Moody is asking this Court to reconsider, and which must be supported by legal authority outside of itself.

Moody wants to be (and believes it has been) crystal clear about what it is—and is not—arguing. This case involves the following key factual components, taken straight from Garrick's Second Amended Complaint:

1. An unequivocally religious educational institution
2. A faculty member who was required to agree with the institution's statement of its religious beliefs, as set forth in its Doctrinal Statement
3. A faculty member who vocally disagreed with the institution's Doctrinal Statement

8

    4.      A termination decision that the religious institution says was motivated by, and taken because of, the faculty member's nonalignment with its Doctrinal Statement

    5.      A faculty member who admits that the institution's stated reason for its termination decision was her nonalignment with its Doctrinal Statement

Thus, this is *not* a case in which (1) there is a dispute about whether the defendant employer is a religious employer, (2) the employer had no religious requirements of the plaintiff, (3) the plaintiff was simply a janitor or bus driver (*cf. Sterlinski*) with no religious obligations or duties,[6] (4) the reason given for the adverse action had nothing to do with the employer's religious expectations of the plaintiff, or (5) the plaintiff disputes that the employer's stated reason for the adverse employment action was a religious reason.

Despite the pervasively religious components to this case, *Garrick II* held that Garrick's mere allegation that she believes that Moody's stated religious reason for her termination was a pretextual reason is sufficient to send this case through summary judgment, and possibly trial. If such is the case, it is difficult to conceive of a factual scenario in which religious autonomy defenses would ever provide protection from the travails of litigation, because only an incompetent lawyer, or uninformed pro se plaintiff, would fail to allege the common employment-discrimination element of pretext.[7]

---

[6] Moody is not suggesting that religious employers may not enforce religious expectations or requirements in lower-level positions, because they may. *See, e.g., Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987) (religious non-profit permissibly fired its building engineer for failing to demonstrate that he was a member of the Mormon Church; Title VII's religious employer exemption applied to all of the employer's positions, not just ones that had specifically religious duties).

[7] Viewed from another angle, it appears that under *Garrick II* the only ways in which a religious employer could prevail on a motion to dismiss based on religious autonomy principles would be if the plaintiff affirmatively pleads in her complaint either (1) that the employer's stated religious reason for her termination was in fact the real reason for her termination, or (2) that the employer's stated religious reason was actually pretext for a *different* religious reason that is also protected by religious autonomy doctrines. Such severe limitations on the scope of the protection offered by the First Amendment negates the purpose and substance of the Religion Clauses and the religious autonomy doctrines derived therefrom.

Additionally, given the central religious facts in this case, adjudication of pretext would unequivocally and unavoidably be an adjudication of religious issues. Moody gave a religious reason for Garrick's termination. If this Court is going to evaluate Moody's "honesty," Moody's religious motives, and similarly situated employees (as *Garrick II* says will be the inquiry, *see* 2020 WL 6044292 at *5-6), this Court will apparently be questioning (and discovery will apparently entail) religious inquiries such as the following:

> What other motives, religious and nonreligious, might Moody's decisionmakers have had?
> What religious and nonreligious support did Moody's decisionmakers have for the motives they held?
> On what doctrinal point(s) were allegedly similarly-situated male employees not in alignment?
> How did Moody view such male employee's nonalignment?
> Where did the various disputed doctrinal issues rank in the hierarchy of Moody's theological beliefs?
> What biblical or theological support did the male employee have for his stated position and was his position in fact contrary to Moody's Doctrinal Statement?
> How vocal was the male employee's nonalignment and was that a religious consideration?
> Which doctrinal disagreements are considered by Moody to be terminable nonalignment, which are not, and why?
> Are Moody's doctrinal views sincerely held?
> Has Moody consistently enforced its doctrinal views?
> Are there religious grounds for inconsistent enforcement, if any, of Moody's doctrinal views?

Inquiries such as these are the very reasons why the Supreme Court and the federal courts of appeal have held that adjudication of employment discrimination cases is impermissible when religious employers fire employees subject to religious requirements for religious reasons. *See Hosanna-Tabor*, 565 U.S. at 205 (Alito, J., concurring) ("For civil courts to engage in the pretext inquiry that respondent and the Solicitor General urge us to sanction would dangerously undermine the religious autonomy that lower court case law has now protected for nearly four decades."); *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 702-03 (7th Cir. 2003)

10

(race and gender claims were barred by the ministerial exception; "To rule otherwise would enmesh the court in endless inquiries as to whether each discriminatory act was based in Church doctrine or simply secular animus"); Mot. at 6-14 (citing numerous cases and discussing the issues at length).

Therefore, *Garrick II*'s holding that this Court may proceed with this case because Garrick's Second Amended Complaint alleged pretext—and may proceed with this case specifically for the purpose of adjudicating whether Moody's stated religious motives were pretextual—is a gravely erroneous interpretation of the Religion Clauses and must be reconsidered and vacated. Proceeding with this case will subject Moody to the travails of litigation, from which it is constitutionally immune. *See Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568, 569-72 (7th Cir. 2019) (the ministerial exception is not just a defense to liability, but also a limitation on discovery, because the ministerial exception exists "precisely to avoid . . . judicial entanglement in, and second-guessing of, religious matters," including by "subjecting religious doctrine to discovery"); *Korte v. Sebelius*, 735 F.3d 654, 677-78 (7th Cir. 2013) ("where it applies, the church-autonomy principle operates as a complete immunity, or very nearly so"); *McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013) (the harm of court intrusion into religious affairs is irreparable).

      E.    *The Seventh Circuit's Recent Decision in* Demkovich v. St. Andrew the Apostle Parish*, on which* Garrick II *Relied, Has Been Vacated, Pending En Banc Review*

*Garrick II* discussed and relied on the Seventh Circuit's most recent decision involving the ministerial exception, *Demkovich v. St. Andrew the Apostle Parish*, 973 F.3d 718 (7th Cir. 2020). *See Garrick II*, 2020 WL 6044292, at *6. In response, Moody's Motion pointed out that, as *Garrick II* acknowledged, *Demkovich* only involved hostile environment claims, which are no longer pending in this case, so *Demkovich* has little relevance. (*See* Mot. at 13.) Moody's

11

Motion also noted that the conclusion *Garrick II* drew from *Demkovich* regarding the issue of pretext was misplaced. (*Id*. at 13 n.6.) In any event, just days ago, the Seventh Circuit voted to rehear the *Demkovich* case *en banc*, and vacated the Seventh Circuit panel's decision. *See Demkovich v. St. Andrew the Apostle Parish*, No. 19-2142, Dkt. 85 (7th Cir. Dec. 9, 2020) (Order attached as Exhibit B). Thus, *Demkovich*, having been vacated, does not provide any support for *Garrick II*'s decision to permit Garrick's termination claims to proceed.[8]

> F.   Certification for Interlocutory Appeal Is Warranted If this Court Decides that this Case Will Proceed on the Basis that Pretext May Be Adjudicated

Although Garrick includes a section in her response that purports to address certification for interlocutory appeal, that section merely recites some inapplicable Ninth Circuit law and makes the single argument that interlocutory appeal should not be permitted because "[d]iscovery will help clarify the factual issues" and that "discovery is valuable for the circuit [court] being able to weigh in on the religious defense." (Resp. at 6-7.) Garrick's argument is misdirected. Moody has requested that this Court certify for interlocutory appeal a threshold legal issue that needs no factual discovery because the factual context is adequately framed by the pleadings and the question presented is a controlling question of law. (*See* Mot. at 14-15.) Furthermore, proceeding with discovery is the very irreparable harm that an interlocutory appeal would be aimed at preventing, as Moody's Motion discussed. (*See id*. at 14.) This Court

---

[8] In fact, the district court's decision in *Demkovich* (343 F. Supp. 3d 772 (N.D. Ill. 2018)) is presently the law in that case, and thus, this Court's reliance on the district court decision in *Garrick I* (*see* 412 F. Supp. 3d at 871-72) and Moody's citations to the district court decision in its motion to dismiss (*see* Dkt. 103 at 12 n.10, 14 n.13; Dkt. 113 at 13 n.10), supports the dismissal of Garrick's termination claims. As *Garrick I* held, this Court, like the district court in *Demkovich*, could not adjudicate the pending claims because the claims were related to the parties' doctrinal differences and, as to Garrick's claims specifically, "if the Court were to delve into the disputes posed by Garrick, it would impermissibly inject the auspices of government into religious doctrine and governance. *See* . . . *Demkovich*, 343 F. Supp. 3d at 786–87 . . . ." *Garrick I*, 412 F. Supp. 3d at 772.

12

previously acknowledged this important issue: "Because one of the purposes of the ministerial exception is to avoid unnecessary interference in religious affairs, a number of courts in employment-discrimination suits brought against religious entities have limited discovery initially to facts necessary to determine the applicability of the ministerial-exception affirmative defense." (Dkt. 35 at 1 [citing cases and barring discovery beyond that necessary to decide the applicability of the ministerial exception to Garrick's employment discrimination claim].) Thus, Garrick has provided no basis on which to deny Moody's request to certify its stated question for interlocutory appeal, if the Court is inclined to proceed with adjudication of pretext in this case, and this Court should so certify. *See Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1088 (7th Cir. 2014) (suggesting that the religious employer defendant should have asked the district court to certify its order denying application of certain religious-employer exemptions for immediate appeal under 28 U.S.C. § 1292(b)); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191 (4th Cir. 2011) (approving the district court's § 1292(b) certification of a legal question about the scope of Title VII's religious-employer exemptions). [9]

### III. CONCLUSION

For the reasons stated in Moody's Motion and above, Moody asks that this Court reconsider its decision denying Moody's motion to dismiss as to Garrick's termination claims (Dkt. 126), vacate its decision, and dismiss all of Garrick's claims.[10]

Dated: December 11, 2020          Respectfully submitted,

---

[9] Of course, if this Court does determine that this case (and discovery) should proceed, discovery should proceed only on the basis of this Court's prior order, which, for the constitutional reasons Moody has consistently raised, held: "Discovery with respect to Garrick's employment discrimination claim . . . will be limited, as an initial matter, to the issue of whether the ministerial exception should apply in this case." (Dkt. 35 at 1.)

[10] In its Motion, Moody requests that its deadline to Answer the SAC be suspended, pending decision on this Motion and any interlocutory appeal taken. Garrick did not oppose Moody's request, so Moody asks that the Court so order.

               <u>s/ Christian Poland</u>
               One of the Attorneys for Defendant,
               The Moody Bible Institute of Chicago

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com

CERTIFICATE OF SERVICE

Christian Poland, one of the attorneys for Defendant, The Moody Bible Institute of Chicago, states that on December 11, 2020, he served a true and correct copy of the foregoing document upon Plaintiff by causing said document to be delivered to her via the Court's ECF system, addressed as follows:

>Janay E. Garrick
>P.O. Box 8633
>Moscow, ID 83843
>407-803-3051
>janay.garrick@gmail.com

>>s/ Christian Poland

602588815.3

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

December 9, 2020

*By the Court*[*]:

No. 19-2142

| | |
|---|---|
| SANDOR DEMKOVICH,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ST. ANDREW THE APOSTLE PARISH,<br>CALUMET CITY, and THE ARCHDIOCESE<br>OF CHICAGO,<br>*Defendants-Appellants*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 1:16-cv-11576<br><br>**Edmond E. Chang**,<br>*Judge*. |

**O R D E R**

Defendants-Appellants' petition for rehearing en banc is **GRANTED**. The panel's opinion and judgment issued August 31, 2020 are **VACATED**. By separate order, the court will set a date for oral argument en banc.

---

[*] Circuit Judge Michael Y. Scudder did not participate in the consideration of this petition for rehearing en banc.

**EXHIBIT B**