UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANAY E. GARRICK, ) | |
| ) | No. 18 CV 573 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| MOODY BIBLE INSTITUTE, ) | |
| ) | November 5, 2021 |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

In this employment discrimination action Professor Janay Garrick has filed against Moody Bible Institute ("Moody"), a post-secondary Christian educational institution, Moody moves to stay discovery on the ministerial exception issue. For the following reasons, the motion is granted:

**Background**[1]

This action concerns Professor Garrick's employment with Moody as an instructor of secular courses. Moody adheres to a "complementarian" doctrine that forbids women from acting as religious leaders, while Professor Garrick subscribes to "egalitarian Christian" beliefs regarding gender equality in the ministry. (R. 98, Sec. Am. Compl. ¶¶ 20, 80, 85.) In the most recent iteration of her complaint, Professor Garrick alleges that she suffered pervasive sex discrimination during her

---

[1] Additional background facts are set forth in the court's September 25, 2019 and October 13, 2020 memorandum opinion and orders granting in part and denying in part Moody's motions to dismiss the complaint, (R. 91; R. 126), and in the August 12, 2021 order denying Moody's motion to reconsider the partial denial of the motion to dismiss, (R. 134).

employment, and that Moody ultimately fired her because of her sex, but under the guise that she was "not aligned with [Moody's] doctrinal statement as it related to gender roles in ministry." (Id. ¶¶ 85, 86.)

But while the facts giving rise to this case are relatively straightforward, the procedural history is not. In her initial complaint, Professor Garrick alleged retaliatory discharge and breach of contract under Illinois law, and retaliation under Title IX. (R. 1, Pl.'s Compl.) Moody moved to dismiss, (R. 18), prompting Professor Garrick to amend her complaint. (R. 67, Am. Compl.)

Professor Garrick asserted in the amended complaint claims for sex discrimination, retaliation, and religious discrimination under Title VII, and hostile work environment under both Titles VII and IX. (R. 67, Am. Compl.) Moody again moved to dismiss, arguing (among other things) that principles of "church autonomy" precluded these claims. (R. 68; R. 69.) According to Moody, Professor Garrick's claims were barred because she qualified as a "minister" within the meaning of the ministerial exception under *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012). (R. 69 at 9-14.) In that case, the Supreme Court recognized that religious organizations are "free [under the First Amendment] to hire and fire their ministerial leaders without governmental interference," including via the application of federal discrimination laws. *Grusgott v. Milwaukee Jewish Day Sch.*, 882 F.3d 655, 657 (7th Cir. 2018) (citing *Hosanna-Tabor*, 565 U.S. at 188-89). Moody also argued that even if Professor Garrick was

2

not a "minister," her complaint invited excessive entanglement into religious matters, and should be dismissed for that reason. (R. 69 at 9-14.)

The court rejected Moody's ministerial exception argument pointing out that: (1) the exception was an affirmative defense; and (2) the facts Moody relied upon to make the argument came from Moody's submissions, not the complaint. (R. 91 at 15-17.) But the court agreed that Professor Garrick's claims as plead arose from her advocacy for women in ministry positions in contravention of Moody's doctrinal views, and as such intruded into Moody's Free Exercise and Establishment Clause rights. (Id. at 17-19.) Nevertheless, the court noted that there were "strains of Garrick's Title VII claims that may not be tied to Moody's religious beliefs," including complaints about antagonistic treatment by male colleagues and preferential treatment of male faculty members with respect to job duties and performance. As such, the court granted Professor Garrick leave to replead any Title VII claims that were "untethered from her disagreements with Moody's religious views." (Id. at 19.)

Professor Garrick attempted to do so in her second amended complaint, alleging hostile work environment, retaliation, and two counts of sex discrimination under Title VII. (R. 98, Sec. Am. Compl.) Moody again moved to dismiss, once more arguing religious autonomy, and that the second amended complaint failed to state a claim for hostile work environment. (R. 101.) The court dismissed Professor Garrick's hostile work environment claim with prejudice, but otherwise denied Moody's motion, reasoning that "[t]his time around, Garrick has crafted her Title

3

VII claims to steer clear of the religious freedoms guaranteed by the First Amendment" by "portray[ing] Moody's religious justification as a *pretext* for gender discrimination." (R. 126 at 10, 14-15 (emphasis in original).)

Moody then moved for reconsideration of the partial denial, arguing in relevant part that any inquiry into whether a religious reason for an adverse employment action is pretextual ran afoul of the First Amendment's religious freedoms under *Hosanna-Tabor*. *See generally* R. 128. But the court rejected this argument, reasoning that: (1) *Hosanna-Tabor* dealt with the ministerial exception; (2) the court already concluded in dismissing Professor Garrick's first amended complaint that her allegations did not trigger that exception; (3) Moody did not ask the court to reconsider that conclusion or raise the argument in its most recent motion to dismiss; and (4) Moody failed to convince it that *Hosanna-Tabor* should be applied to someone in a secular position, like Professor Garrick. (Id. at 6 (citing *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020)).) In other words, the religious autonomy doctrine did not prevent courts from adjudicating the issue of pretext when the ministerial exception did *not* apply. (Id. (collecting cases).)

The court also denied Moody's alternative request that it certify an interlocutory appeal, reasoning that Moody had not demonstrated a "substantial ground for difference of opinion" or cited "a single decision indicating that the First Amendment bars any inquiry into whether a religious employer's proffered

4

doctrinal reason for an adverse employment action was the actual reason." (R. 134 at 10.)

At a status hearing on September 1, 2021, the court set a discovery schedule on the threshold matter of whether the ministerial exception applies here, recognizing that discovery as to the merits would proceed only if the initial phase demonstrated that it does not. (R. 137; R. 146 at 2-6.) At the same hearing, the court referred the case to this court for a settlement conference, (R. 146 at 8; R. 137), and Moody advised that it was contemplating an interlocutory appeal from the court's denial of its motion to reconsider, (R. 146 at 9).

At the September 10, 2021 preliminary settlement discussion hearing, this court scheduled a settlement conference to take place on November 16, 2021, and struck the discovery schedule with the parties' agreement in light of the impending settlement discussions. (R. 140.) Three days later, Moody filed its notice of interlocutory appeal from: (1) the partial denial of Moody's motion to dismiss the second amended complaint; and (2) the denial of Moody's motion to reconsider that same ruling. (R. 142.) In response, the Seventh Circuit ordered Moody to file a jurisdictional brief and directed Professor Garrick to respond to it. (R. 148 at 2-3.) Professor Garrick then moved this court to reinstate the ministerial exception discovery, arguing that her Seventh Circuit-ordered response required it, because Moody's jurisdictional brief was "[i]n essence, . . . its opening appellate brief," going "far beyond the question of . . . jurisdiction," and "weav[ing] in all of [Moody's] arguments about the core issue in this case: whether Ms. Garrick can conduct

5

discovery and ultimately go to trial regarding Moody's reason for terminating her." (R. 148). Noting that it saw no benefit to the parties "expending more resources on discovery prior to completing settlement discussions merely because Plaintiff has to now file a brief with the Seventh Circuit," this court ordered Professor Garrick to explain "the upside" to reinstating such discovery. (R. 150.) In her supplemental brief, Professor Garrick argued that "if Moody is allowed to postpone discovery, it has, in essence, 'won' its appeal before even convincing the Seventh Circuit that there is a basis for jurisdiction," because "the avoidance of any and all discovery, even that limited to the ministerial exception," is "*the very result it seeks in its appeal.*" (R. 151 at 2-3 (emphasis in original).). This court ultimately granted Professor Garrick's motion without a response from Moody, reasoning that she "no longer agree[d] to the stay." (R. 152.)

Four days later on October 8, 2021, Moody moved to stay discovery pending the outcome of the parties' settlement conference and Moody's Seventh Circuit appeal. (R. 153.) Professor Garrick opposes the motion. (R. 154.) This court entered and continued the motion pending the results of the settlement conference, indicating in so doing that Moody need not respond to Professor Garrick's already served written discovery requests until further order of the court. (R. 157.) Professor Garrick has since withdrawn her request for a settlement conference, (R. 158), so the sole issue before this court now is whether a discovery stay is appropriate pending a ruling on Moody's appeal.

6

**Standard**

Courts have broad discretion in guiding the course of discovery. *See* Fed. R. Civ. P. 26(b); *see also James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013). The decision whether to grant a stay is no different. Indeed, that decision is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering a motion to stay discovery, courts analyze and balance several competing interests, including: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer, Inc. v. Apotex, Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). These factors, "although not necessarily binding, help provide guideposts for the exercise of discretion." *Witz v. Great Lakes Educ. Loan Servs., Inc.*, No. 19 CV 6715, 2020 WL 8254382, at *1 (N.D. Ill. Jul. 30, 2020). This court considers each in turn below, and notes that its analysis is also premised on the overarching directive to "construe[ ], administer[ ], and employ[ ]" the Federal Rules of Civil Procedure in a manner that "secure[s] the just, speedy, and inexpensive determination" of each action that comes before it. Fed. R. Civ. P. 1.

**Analysis**

Regarding the prejudice factor, the only argument Professor Garrick offers in support is that her case has been delayed for years already and would be delayed

7

further still if discovery is stayed pending the outcome of the appeal and/or any petition for certiorari to the Supreme Court. (R. 146, Sept. 1, 2021 transcript at 4-5; R. 154, Pl.'s Resp. at 2.) In response, Moody posits that "speculating about the outcome of [its] Seventh Circuit appeal is premature," and suggests that if the court is unwilling to stay discovery indefinitely, it could either: (1) "stay discovery for four months, and require the parties to provide an update on the progress of the appeal at that time;" (2) obtain the parties' agreement not to seek extensions of Seventh Circuit deadlines (noting that Professor Garrick has already sought one such extension); or (3) ask the parties to seek expedited review of the appeal. (R. 155, Def.'s Reply at 1-2.) But the first option simply asks this court to put off what it could decide today, and the second and third provide no certainty either.

In any case, this court finds that the prejudice factor favors a stay. Although there has not been any discovery since the case was filed over three and a half years ago, Professor Garrick alleges no tactical disadvantage or injury resulting from that or any stay, nor does she otherwise argue that a continued delay would harm her ability to litigate this case. *See Witz*, 2020 WL 8254382, at *1 (concluding that the prejudice factor favored a stay because the plaintiff had not "made a showing that any potentially discoverable documents in Defendant's possession [were] likely to be lost or inadvertently destroyed" or "explained how a stay of discovery would increase the expense of litigation"). Simply put, "[d]elay, in and of itself, does not constitute undue prejudice." *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15 CV 1067, 2015 WL 13650951, at *2 (N.D. Ill. May 5, 2015); *see also Mac*

*Naughton v. Asher Ventures, LLC*, No. 17 CV 4050, 2018 WL 11361070, at *2 (N.D. Ill. Feb. 27, 2018) (rejecting plaintiff's argument that staying discovery "accomplishes nothing other than to drag it out for no reason," where there was "no evidence that delaying discovery [would] negatively impact [the plaintiff's] ability to litigate his claims). Yet that is all Professor Garrick argues here.[2] Furthermore, the delay she complains of was primarily occasioned by her having to perfect a complaint that was acceptable.

The simplification factor also favors a stay. The court declines to prejudge the merits of Moody's interlocutory appeal. As discussed, the appeal argues that the court wrongfully allowed Professor Garrick's Title VII claims to proceed because they allege that Moody's stated religious reason for her termination was really a pretext for sex discrimination. There can be no doubt that a favorable ruling for Moody may resolve the entire case, rendering any discovery taken to that point meaningless and wasted. A stay of discovery would allow the parties to focus on their arguments before the Seventh Circuit, and Professor Garrick has not shown that discovery at this point would further them.

Lastly, the burden factor likewise tips in favor of a stay. Staying discovery would preserve the parties' resources if Moody's appeal proves successful. Moreover, Professor Garrick's written discovery requests far exceed the scope the court authorized because they seek merits-related information rather than focusing

---

[2] Moreover, Moody correctly points out that Professor Garrick herself has asked the court to stay proceedings, belying her claim that she would be unduly prejudiced by a stay here. *See* R. 105 (Plaintiff's motion to stay proceedings pending resolution of a case before the Supreme Court).

9

on the job duties and responsibilities associated with her teaching position. By way of example, Professor Garrick's written discovery requests seek "[c]omplete, dated copies of all faculty manuals, handbooks, policies, rules, guides, and/or other documents containing information for faculty members that were distributed by Moody to its faculty from 2010 to the present," and asks Moody to identify "all current or former Instructors who were terminated as a result of . . . performance related issues not involving 'ministerial' reasons, from 2010 to present, and identify all documents which describe the personnel action and basis therefore." (R. 153, Def.'s Mtn. at 5.) In other words, Professor Garrick appears to be skipping over the court's two-pronged discovery approach, ignoring that merits-based discovery may not be warranted at all. This factor thus also counsels in favor of a stay. Ultimately, the discovery contemplated would not "secure the just, speedy, and inexpensive determination" of this action at this time. Fed. R. Civ. P. 1.

## Conclusion

For the foregoing reasons, Moody's motion to stay discovery is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

10